

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: May 28, 2025.**

_____
**SHAD M. ROBINSON**
**UNITED STATES BANKRUPTCY JUDGE**

---

### UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SHOREVIEW HOLDING LLC, *et al.*,[1] | ) | Case No. 25-10566 |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## AGREED FINAL ORDER (I) AUTHORIZING POSTPETITION USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO THE SECURED LENDER, AND (III) GRANTING RELATED RELIEF

On April 28, 2025, the above-captioned debtors and debtors-in-possession (the "Debtors")

in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), filed *Debtors' Emergency*

*Motion for Entry of Interim and Final Orders (I) Authorizing Postpetition Use of Cash Collateral,*

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: Shoreview Holding LLC (8428), PLF Shoreview LLC (7602), MDW Shoreview LLC (8649), Shoreview Apartments LLC (6780), PLF Shoreview Mezz LLC (1270), and MDW Shoreview Mezz LLC (3408).  The notice address for the Debtors is 9050 N. Capital of Texas Hwy., Bldg. 3, Suite 320, Austin, TX 78759.

*(II) Granting Adequate Protection to the Secured Lender, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* (the "Motion").[2] In the Motion, the Debtors requested, *inter alia*, entry of this final order (this "Final Order") pursuant to Sections 105, 361, and 363 of title 11 of the United States Code, 11 U.S.C.§§ 101, et seq. (the "Bankruptcy Code"), and in accordance with Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors' use of Cash Collateral (as hereinafter defined), as set forth herein.  The Court, having considered the Motion, having held an interim hearing on the Motion on April 30, 2025, having entered the *Agreed Interim Order (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to the Secured Lender, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* dated May 6, 2025 [ECF No. 44] (the "Interim Order," and together with this Final Order, the "Cash Collateral Orders"), having held a final hearing on the Motion on May 28, 2025 (the "Final Hearing"), and having considered the evidence presented or proffered and the statements and representations of the parties on the record at the Final Hearing, and all objections, if any, to the entry of this Final Order having been resolved by agreement or order of the Court or overruled; and after due deliberation and consideration and sufficient cause appearing therefor:

### Recitals

1.      The Chapter 11 Cases.  On April 24, 2025 (the "Petition Date"), the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief in the United States Bankruptcy Court for the Western District of Texas (this "Court").

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Interim Order, as applicable.

314143248v.3

2.      <u>Debtors-in-Possession</u>.   The Debtors continue to operate and manage their businesses as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

3.      To date, no trustee or examiner has been appointed in these Chapter 11 Cases.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

4.      <u>Jurisdiction and Venue</u>.  The Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334.  Consideration of the Motion is a core proceeding under 28 U.S.C. §157(b).  Venue of the Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105, 361, 362, and 363 of the Bankruptcy Code, Bankruptcy Rule 4001, and the Local Rules of this Court (the "<u>Local Rules</u>").

5.      <u>Committee Formation</u>.   To date, no official committee of unsecured creditors, equity interest holders, or committees of other parties in interest has been appointed in these Chapter 11 Cases.

6.      <u>Notice</u>.  The Debtors provided notice of the Motion, the Cash Collateral Orders, and of the Final Hearing to all creditors and parties in interest entitled to such notice in compliance with Bankruptcy Rules 2002, 4001, and 9014, the Local Rules, and the Interim Order, including (i) the Office of the United States Trustee for this District, (ii) those creditors holding the twenty (20) largest unsecured claims against the Debtors' estates, (iii) the Secured Lender (as hereinafter defined), (iv) the Mezzanine Lender, and (v) all other parties that have filed a notice of appearance in these Chapter 11 Cases.

7.      <u>Immediate Need for Use of Cash Collateral</u>.   An immediate need exists for the Debtors to obtain funds in order to continue the operation of their business.  The Debtors urgently

needs the ability to use Cash Collateral to maintain the Property for the benefit of their residents and to mitigate potential losses to their estates. The Debtors also need to pay utilities that are critical to the Debtors' operation of the Property for the benefit of the residents. The Debtors pay for gas, electricity, and water in the ordinary course, and some of those amounts are paid to the service providers on a monthly basis. The Debtors also pay for property management, including employee wages, maintenance, sanitation, make-ready costs upon tenant departures, and security services that are integral to the operation of the Property. Interruption of the Debtors' operations and services could have a severe impact on the habitability of the Property.

8.      <u>Conditional Consent to Use of Cash Collateral</u>. The Debtors seek authorization to use Cash Collateral to fund the Debtors' working capital needs, for general corporate purposes, and to pay the administrative costs and expenses incurred in these Chapter 11 Cases, subject to the terms hereof and in accordance with a 13-week budget in form and substance reasonably acceptable to the Secured Lender (the "<u>Budget</u>"), including during the period from the date hereof through and including June 23, 2025 or the Termination Date (as hereinafter defined), whichever shall occur first (such period, the "<u>Final Period</u>"). The Secured Lender has consented to the use of Cash Collateral during the Final Period. The Budget is attached hereto as **<u>Exhibit A</u>**. For the avoidance of doubt, the Budget is integral to, and forms a part of, this Final Order. The Budget is binding on the parties and subject to further revision solely upon prior written approval from the Secured Lender, such approval to be given or withheld in its sole discretion.

9.      <u>Good Cause/Fair and Reasonable Terms</u>. Good cause has been shown for the entry of this Final Order. Among other things, entry of this Final Order will minimize disruption of the business and operations of the Debtors and permit the Debtors to maintain the value of the estates. The use of Cash Collateral authorized hereunder is necessary, essential, and appropriate and is in

4

the best interest of, and will benefit, the Debtors, creditors, and the Debtors' estates as it will, among things, provide the Debtors with the necessary liquidity to avoid immediate and irreparable harm to the Debtors and their estates. The terms and conditions of the use of Cash Collateral and the liens and rights granted to the Secured Lender hereunder are fair and appropriate under the circumstances.

10.     <u>Stipulations</u>.  Subject to and without prejudice to the rights of parties in interest solely as set forth in paragraph 16 of this Final Order, the Debtors represent, admit, stipulate, and agree as follows:

a)     Shoreview Holding, LLC, PLF Shoreview, LLC, and MDW Shoreview, LLC (collectively, the "<u>Mortgage Debtors</u>") and Prime Finance Short Duration Holding Company VII, LLC ("<u>Prime</u>") executed, among other documents, that certain Loan Agreement dated as of December 15, 2021 (as amended, modified, restated, consolidated, replaced or supplemented from time to time, the "<u>Loan Agreement</u>").  Pursuant to the Loan Agreement, Prime agreed to make a secured loan to the Mortgage Debtors in the original principal amount of $51.1 million (the "<u>Loan</u>");

b)     Prime and PFP VII SUB VIII, LLC (as successor in interest to Prime, the "<u>Secured Lender</u>") executed that certain Assignment and Assumption Agreement dated December 17, 2021 (the "<u>Assignment</u>"), pursuant to which Secured Lender accepted all of Prime's rights, title and interest in, to and under the Loan Documents (as hereinafter defined), and assumed and agreed to be bound by and to perform, all of the obligations, covenants and agreements of Prime as lender under the Loan Documents, arising after the date of the Assignment with respect to the period from and after the date of the Assignment;

5

c)       The Loan is evidenced by that certain promissory note (as amended, modified, restated, consolidated, replaced or supplemented from time to time, the "Note") dated December 15, 2021, executed by the Mortgage Debtors in favor of the Secured Lender, and is secured by, among other things, that certain: (i) Mortgage, Assignment of Leases and Rents and Security Agreement dated as of December 15, 2021 (as amended, modified, restated, consolidated, replaced or supplemented from time to time, the "Mortgage"), made by the Mortgage Debtors for the benefit of the Secured Lender covering that certain property known as Shoreview, located in Bradenton, Florida (the "Property"); (ii) Assignment of Leases and Rents dated as of December 15, 2021 (as amended, modified, restated, consolidated, replaced or supplemented from time to time, the "AOLR"), made by the Mortgage Debtors to the Secured Lender; and (iv) Assignment of Agreements, Licenses, Permits and Contracts dated December 15, 2021 (as amended, modified, restated, consolidated, replaced or supplemented from time to time and together with the Loan Agreement, the Note, the Mortgage, the AOLR, the Assignment, the Cash Management Agreement (as hereinafter defined), and all other documents evidencing or securing the obligations under the Note and the Loan Agreement, the "Loan Documents"), made by the Mortgage Debtors to the Secured Lender;

d)       The Mortgage Debtors, the Secured Lender, and Wells Fargo Bank, National Association executed that certain Cash Management Agreement dated as of December 15, 2021 (the "Cash Management Agreement"), pursuant to which the Secured Lender swept funds from the Debtors' operating account into the Cash Management Account (as hereinafter defined) for the benefit of Secured Lender.  As of the Petition Date, the Cash Management Account held approximately $1.69 million in cash and, as a result of the occurrence prepetition of an Event of Default (as defined in the Cash Management Agreement), the Secured Lender asserts that the

6

Debtors have no right, title, or interest, express or implied, in the Cash Management Account or any Subaccounts (as defined in the Cash Management Agreement) and that such amounts do not constitute Cash Collateral;

e)      As of the Petition Date, the Mortgage Debtors are justly and lawfully indebted and liable under the Loan Documents, without defense, counterclaim, reduction or offset of any kind, in the aggregate principal amount of not less than $51,100,000.00 plus accrued and unpaid contract interest, fees, costs and expenses (including counsel, financial advisors, consultants, accountants, to the extent applicable, chargeable or reimbursable under the Loan Documents) in an amount not less than an additional $1,691,241.33 as of the Petition Date, with respect to each of the foregoing (the "Agreed Loan Obligations");

f)      Secured Lender and the Debtors each reserve and preserve all rights concerning the accrual of, and Secured Lender's entitlement to collect, default rate interest and late fees and charges that may be due under the Loan Documents, with respect to each of the foregoing (the "Disputed Loan Obligations," and together with the Agreed Loan Obligations and such other amounts that may accrue under the Loan Documents after the Petition Date, the "Loan Obligations") and agree that any resolution of the Disputed Loan Obligations solely as between the Debtors and the Secured Lender (and no other party in interest) shall not be subject to the Challenge Period (defined below);

g)      Pursuant to the Loan Documents, the Loan Obligations to the Secured Lender are secured by a valid, perfected, and enforceable first-priority lien on and security interest in the Property;

h)      Pursuant to the Loan Documents, the Secured Lender also holds a valid, perfected and enforceable first priority lien on and security interest in and to substantially all assets

7

of the Mortgage Debtors, including, without limitation, the rents, receipts, profits, and other amounts arising from the lease, sale or operation of the Property together with any proceeds thereof, contracts, equipment, general intangibles, goods, and instruments and such other assets and property as further described in the Loan Documents (together with the Property, the "Prepetition Collateral");

   i)  The liens and security interests securing the Loan Obligations (the "Prepetition Liens") are (a) valid, binding, perfected, duly recorded and enforceable liens on, and security interests in, all of the Mortgage Debtors' rights, title, and interests in, and to, the Prepetition Collateral, and (b) not subject to, pursuant to the Bankruptcy Code or other applicable law (foreign or domestic), avoidance, disallowance, reduction, recharacterization, recovery, subordination (whether equitable, contractual, or otherwise), attachment, counterclaim, defense, "claim" (as defined in the Bankruptcy Code), impairment, or any other challenge of any kind by any person or entity;

   j)  Subject to the reservations contained in subparagraph f) above with respect to the Disputed Loan Obligations, the Debtors irrevocably release and waive, for themselves and their estates, any right to challenge or contest in any way the perfection, priority, avoidability or enforceability of the Prepetition Liens, or the validity or enforceability of the Loan Documents, or the validity, enforceability, or priority of payment of the Loan Obligations;

   k)  Except as to the approximately $1.69 million in cash in the Cash Management Account for which the Debtors and the Secured Lender reserve all rights as to its status, the Debtors' cash and proceeds, rents, receipts, profits, and other amounts realized from the Prepetition Collateral constitute the Secured Lender's Cash Collateral and shall be treated by the Debtors in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the

Local Rules, and any other applicable statute, rule, provision and/or guideline governing a debtor's use of cash collateral under the Bankruptcy Code; and

l)    The Secured Lender has valid, first-priority perfected liens and security interests in the Cash Collateral, regardless of whether such liens and security interests existed as of the Petition Date or arise thereafter, pursuant to, the applicable provisions of the Loan Documents, Bankruptcy Code sections 361, 363(a), and 552(b), and the Cash Collateral Orders, and the Debtors irrevocably release and waive, for themselves and their estates, any rights to challenge or contest in any way the perfection, priority, avoidability or enforceability of such liens on and security interests in the Cash Collateral.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

11.    <u>Incorporation of Recitals</u>.  The foregoing recitals in paragraphs 1 through and including 10 are hereby incorporated by reference and made part of this Final Order.

12.    <u>Motion Granted</u>. The Motion is hereby granted on a final basis as set forth herein. Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Final Order shall be immediately effective and enforceable upon its entry.

13.    The requirements of Bankruptcy Rule 6003(b) have been satisfied.

14.    Notice of the Motion is adequate under Bankruptcy Rule 6004(a) and the Local Rules.

15.    <u>Final Order</u>.  This Final Order shall be considered a final cash collateral order and shall be binding upon all parties and upon all subsequently appointed court officers, including any trustee or examiner appointed in these Chapter 11 Cases under Chapter 7 or Chapter 11 of the Bankruptcy Code.

9

16.     <u>Effect of Stipulations on Third Parties</u>.

a)      The Debtors' stipulations, admissions, agreements, and releases contained in paragraph 10 of this Final Order shall be binding upon the Debtors in all circumstances and for all purposes.

b)      The Debtors' stipulations, admissions, agreements, and releases contained in paragraph 10 of this Final Order shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in these cases and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any Chapter 7 or Chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes, unless: (A) such statutory or non-statutory committee or other party in interest with requisite standing has timely filed an adversary proceeding or initiated a contested matter (subject to the limitations contained herein, a "<u>Challenge Motion</u>") by no later than: (i) June 9, 2025; and (ii)  any such later date as has been agreed to in writing (which may be by email) by the Secured Lender or has been ordered by the Court for cause (the time period established by the foregoing clauses (i)-(ii), the "<u>Challenge Period</u>"), including (y) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Loan Obligations or the Prepetition Liens, or (z) asserting or prosecuting any avoidance action or any other claims, counterclaims or causes of action, objections, contests or defenses (clause (y) and (z) collectively, the "<u>Challenges</u>") against the Secured Lender, Prime, or any of their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (collectively, the "<u>Representatives</u>") in connection with or related to the Loan

10

Documents, the Loan Obligations, the Prepetition Liens, the Prepetition Collateral, or the Cash Collateral; and (B) there is a final non-appealable order in favor of the plaintiff/challenger sustaining any such Challenge; provided, however, that any pleadings filed in connection with a Challenge shall comply with the Bankruptcy Rules and the Local Rules and set forth with specificity the basis for such Challenge and any Challenges not so raised prior to the expiration of the Challenge Period shall be deemed forever waived, released and barred.

       c)      If no Challenge is timely and properly filed during the Challenge Period or a final non-appealable order is not entered in favor of the plaintiff/challenger in any such Challenge, then: (i) the Debtors' stipulations, admissions, agreements and releases contained in the Cash Collateral Orders shall be binding on all parties in interest in these Chapter 11 Cases; (ii) the Loan Obligations shall constitute allowed claims not subject to defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity for all purposes in these Chapter 11 Cases and any Successor Cases (as hereinafter defined), subject to the Debtors' reservations above concerning the Disputed Loan Obligations; and (iii) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity, including any statutory or non-statutory committees appointed or formed in these cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any Chapter 7 or Chapter 11 trustee or

11

examiner, and any defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any statutory or non-statutory committees appointed or formed in these cases or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any Chapter 7 or Chapter 11 trustee or examiner, whether arising under the Bankruptcy Code or otherwise, against the Secured Lender and/or its Representatives shall be deemed forever waived, released and barred.

d)      If any Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in the Cash Collateral Orders shall nonetheless remain binding and preclusive on each Person or Entity (each as defined in the Bankruptcy Code), except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction. Nothing in this Final Order vests or confers on any Person or Entity, including any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, any Challenges with respect to the Loan Documents, the Loan Obligations, or the Prepetition Liens, and any ruling on standing, if appealed, shall not stay or otherwise delay confirmation of any plan of reorganization in these cases or the Debtors' satisfaction of their pre- and post-petition obligations under the Loan Documents to the Secured Lender. For the avoidance of doubt, any Chapter 7 or Chapter 11 trustee shall, until the expiration of the Challenge Period, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by the Chapter 7 or

Chapter 11 trustee or any other party in interest on behalf of the Debtors' estates), be deemed to be a party (other than the Debtors) in such adversary proceeding or contested matter and shall not, for purposes of such adversary proceeding or contested matter, be bound by the stipulations, admissions, agreements, and releases made by the Debtors in the Cash Collateral Orders.

e)      Nothing in this Final Order shall limit any challenge, claim, or other action the Debtors may assert against the Mezzanine Lender.

17.      <u>Limitation on Charging Expenses Against Collateral</u>.  Except to the extent of the Carve-Out (as hereinafter defined), no costs or expenses of administration of these Chapter 11 Cases or any Successor Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceeding under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral (including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Secured Lender (to be given or withheld in its sole discretion), and no consent shall be implied from any action, inaction or acquiescence by the Secured Lender, and nothing contained in this Final Order shall be deemed to be a consent by the Secured Lender to any charge, lien, assessment or claims against the Prepetition Collateral (including Cash Collateral) under section 506(c) of the Bankruptcy Code or otherwise. Further, in no event shall the "equities of the case" exception under section 552(b) of the Bankruptcy Code apply to the Secured Lender.

18.      <u>Operating Account</u>.

a)      The Debtors shall utilize the operating account (account no. *6881) maintained at Bank of America, N.A. (the "<u>Operating Account</u>"), which account shall contain all operating revenues and any other source of cash constituting Cash Collateral, which is (or has been) generated by and is attributable to the Debtors' business postpetition.  All cash generated by

13

the Debtors or from the Debtors' business or assets as of the Petition Date, including any cash or cash equivalents held in any of the Debtors' prepetition bank accounts, other than the Cash Management Account, shall be immediately transferred to the Operating Account. Solely from and after the Petition Date, any postpetition Cash Collateral swept to the account maintained at Wells Fargo Bank, National Association (account no. *7313) in the name of Debtor Shoreview Holding LLC (the "Cash Management Account") shall be transferred at the end of every business day to the Operating Account. The Debtors, the Secured Lender and the Cash Management Banks (as defined in the Cash Management Motion[3]) are authorized, but not directed, from and after the Petition Date, to take all necessary steps to facilitate the sweeping of cash or cash equivalents from the Depository Account (as defined in the Cash Management Motion) directly to the Operating Account at the end of each business day.[4] For the avoidance of doubt, postpetition cash and cash equivalents held in the Depository Account are not required to be swept to the Cash Management Account. Cash and cash equivalents either deposited into the Depository Account or swept into the Cash Management Account between the Petition Date and entry of this Final Order, solely to the extent not already done so pursuant to the Interim Order, shall be moved into the Operating Account as soon as is reasonably practicable following entry of this Final Order.

b) The Debtors shall pay the monthly Adequate Protection Payment (as hereinafter defined) due to the Secured Lender, as set forth in the Budget and in the Cash Collateral Orders, from funds maintained in the Operating Account. All Cash Collateral held in the Cash

---

[3] Cash Management Motion means *Debtors' Emergency Motion for Entry of Interim and Final Orders Authorizing the Debtor to (I) Continue to Operate their Cash Management System and Maintain Existing Bank Accounts and (II) Maintain Existing Business Forms and Books and Records* [ECF No. 8].

[4] On May 7, 2025, the Secured Lender instructed the Depository Account bank to transfer all funds received directly to the Operating Account.

14

Management Account as of the day prior to the Petition Date shall remain in place, unless otherwise agreed in writing by the Secured Lender, to be given or withheld in its sole discretion, or the Court orders otherwise. The Debtors may withdraw funds from the Operating Account as needed, but shall be prohibited from withdrawing or using Cash Collateral funds from the Operating Account, except as provided for in the Budget or the Cash Collateral Orders or pursuant to express written consent from the Secured Lender (to be given or withheld in its sole discretion) or further order of the Court.

19.     <u>Terms of Cash Collateral Use</u>.

a)     The Debtors are hereby authorized to use Cash Collateral solely in accordance with the terms and conditions of the Cash Collateral Orders and the Budget from the Petition Date through and including June 23, 2025 (or such later date as the Secured Lender may agree upon, to be given or withheld in the Secured Lender's sole discretion) or the Termination Date (as hereinafter defined), whichever date shall occur first, and to use the Cash Collateral up to the respective aggregate amount of disbursements set forth in the Budget for any week during such Final Period. The Debtors shall not use, sell, or expend, directly or indirectly, the Cash Collateral, except pursuant to, and in the amounts set forth in, the Budget and upon the terms and conditions set forth in the Cash Collateral Orders, without prior written consent from the Secured Lender (to be given or withheld in its sole discretion) or further order from the Court.

b)     Before any Professional Person (as hereinafter defined) may be paid from the Cash Collateral, the Debtors shall be required to: (i) obtain approval from the Court under Bankruptcy Code sections 327 or 328, as applicable, to retain such Professional Person; and (ii) such Professional Person shall have filed a fee application with the Court under Bankruptcy Code sections 330 or 331, as applicable, which fee application shall have been approved pursuant

15

to an order entered by the Court. Payment from Cash Collateral to Professional Persons is subject to the Carve-Out (as hereinafter defined) and may occur on an interim or single and final basis but shall not in the aggregate exceed the total amount of professional fees and expenses provided for in the Carve-Out. For the avoidance of doubt, the Secured Lender is not required in any manner whatsoever to consent to the Debtors' use of cash, the Prepetition Collateral, and/or the Cash Collateral after the Final Period and, additionally, the Secured Lender shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases. Nothing in the Cash Collateral Orders or otherwise shall be construed to obligate the Secured Lender, in any way, to pay compensation to, or to reimburse the expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

c) Notwithstanding anything herein or in any other order by the Court to the contrary, except up to $25,000 of the Carve-Out, none of the Prepetition Collateral or the Adequate Protection Collateral (as hereinafter defined) may be used for professional fees and expenses incurred for (i) any litigation or threatened litigation (whether by contested matter, adversary proceeding, or otherwise, including any investigation in connection with litigation or threatened litigation), including without limitation a Challenge against the Secured Lender or for the purpose of objecting to or challenging (x) the Secured Lender's entitlement to payment on account of all or any portion of the Disputed Loan Obligations, (y) the Secured Lender's entitlement to the cash held in the Cash Management Account as of the Petition Date, and (z) the validity, perfection, enforceability, extent, or priority of any claim (including all claims under the Loan Documents), lien, or security interest held or asserted by the Secured Lender or (ii) asserting any defense, claim, cause of action, counterclaim, offset, setoff, right of recoupment, challenge, or objection against

16

the Secured Lender, Prime, or any of their Representatives  with respect to the Loan Obligations (including, without limitation for lender liability or pursuant to sections 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise);

d)      Notwithstanding anything herein or in any other order by the Court to the contrary, none of the Prepetition Collateral or the Adequate Protection Collateral may be used (a) to prevent, hinder, or otherwise delay the Secured Lender's assertion, enforcement, or realization on the Prepetition Collateral and/or the Adequate Protection Collateral in accordance with the Loan Documents or the Cash Collateral Orders, as applicable, provided, however, that the Carve-Out may be used to seek a determination that an Event of Default (as hereinafter defined) has not occurred or is not continuing, (b) to seek to modify any of the rights granted to the Secured Lender under the Cash Collateral Orders or the Loan Documents, in each of the foregoing cases without such parties' prior written consent, which may be given or withheld by such party in the exercise of its respective sole discretion, and (c) to pay any amount on account of any claims arising prior to the Petition Date not specified in the Budget, unless the Secured Lender provides prior written consent (to be given or withheld in its sole discretion) for the Debtors to make such payments and such payments are approved by an order of the Court. No lien or interest avoided and preserved for the benefit of the estates pursuant to Bankruptcy Code section 551 shall be made *pari passu* with or senior to the Prepetition Liens or Adequate Protection Liens;

e)      Beginning the second Thursday at 5:00 p.m. prevailing Central Time following entry of the Interim Order and continuing every two weeks thereafter by the same deadline, the Debtors shall deliver to the Secured Lender or its counsel an updated, proposed 13-week budget.  Each proposed budget provided to the Secured Lender or its counsel shall be of no force and effect unless and until it is approved, in writing, which may be by e-mail, by the Secured

17

Lender or the Secured Lender's counsel.  Upon approval in writing of such updated budget by the Secured Lender or its counsel, such budget shall become the Budget.  If no approval is provided by the Secured Lender or its counsel within seven (7) calendar days from delivery of such updated proposed 13-week budget, and no informal written objection is provided by the Secured Lender or its counsel to the Debtors during that seven (7) calendar day period, then such updated, proposed 13-week budget shall become the Budget, effective on the seventh (7th) calendar day from delivery to the Secured Lender or its counsel of such Budget.

f)      Beginning the second Thursday at 5:00 p.m. prevailing Central Time following entry of the Interim Order and continuing every two weeks thereafter by the same deadline (each such date, a "Testing Date"), the Debtors shall deliver to the Secured Lender a variance report setting forth the Debtors' actual cash flow for the rolling cumulative four-week period ending the day prior (each a "Testing Period") compared to the Budget.  For purposes of the Cash Collateral Orders, commencing with the Testing Date occurring on Thursday, May 15, 2025, and on each Testing Date occurring thereafter, the Debtors shall not permit: (i) the sum of the actual aggregate cash receipts of the Debtors for the Test Period ending immediately prior to such Testing Date to be less than 80% of the aggregate amount set forth for the line item in the Budget entitled "Expected Revenue" for such Testing Period; or (ii) the sum of the actual aggregate operating disbursements/expenses of the Debtors for each line item in the Budget under "Expenses" for the Testing Period ending immediately prior to such Testing Date to be greater than 115% of the aggregate amount set forth for each such line item in the Budget for such Testing Period (inclusive of professional fees and expenses and the Adequate Protection Payments), (each of the variances described in subparts (i) and (ii), a "Non-Permitted Variance").

18

20. <u>Further Authorization</u>. Subject to and pursuant to the terms of the Cash Collateral Orders, the Debtors are hereby authorized to enter into all agreements necessary to allow the Debtors to use Cash Collateral in the amounts and for the expenses set forth in the Budget, including any agreements to escrow certain escrow items as may be identified in the Budget. The Debtors are authorized to collect and receive all accounts receivable and other operating revenues and immediately deposit the same amounts into the Operating Account.

21. <u>Taxes and Insurance</u>. Nothing in the Cash Collateral Orders shall be construed to grant the Secured Lender liens that are senior to pre-and postpetition statutory ad valorem real property tax liens on the Prepetition Collateral and/or the Adequate Protection Collateral. The Debtors shall be entitled to escrow amounts for taxes and insurance pursuant to the Cash Collateral Orders in any amounts that are or may be provided for in the Budget.

22. <u>Post-petition Financing</u>. The Debtors are entitled to seek and obtain post-petition financing, subject to further order of the Court; provided, however, that such financing may not adversely affect the rights and protections granted to the Secured Lender pursuant to the Cash Collateral Orders, unless the Secured Lender consents (to be given or withheld in its sole discretion) in writing to such treatment. Nothing contained in the Cash Collateral Orders shall constitute consent by the Secured Lender to any such post-petition financing and the Secured Lender's rights to oppose such financing are fully preserved.

23. <u>Adequate Protection Claims and Liens</u>. Pursuant to Bankruptcy Code sections 361, 363(c)(2), and 363(e), the Secured Lender is entitled to receive adequate protection in respect of its interest in and the Debtors' use of the Prepetition Collateral (including Cash Collateral) and any decline in the value thereof, resulting from (a) the use of the Cash Collateral, (b) the use, sale, lease, or depreciation or other diminution in value of the Prepetition Collateral, or (c) as a result

19

of the imposition of the automatic stay under Bankruptcy Code section 362(a) from and after the Petition Date (the amount of any such diminution in value being referred to hereinafter as the "Adequate Protection Obligations").  As adequate protection for, and to secure payment of an amount equal to the Adequate Protection Obligations, and as an inducement to the Secured Lender to permit the Debtors' use of the Cash Collateral as provided for in the Cash Collateral Orders, the Debtors hereby grant to the Secured Lender, among other things, the following Adequate Protection Claims and Adequate Protection Liens:

a)       *Adequate Protection Claims*.  The Secured Lender is granted, as and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code and in an amount equal to the Adequate Protection Obligations, an allowed superpriority administrative claim against the Debtors with priority over any and all other administrative claims against the Debtors now existing or hereafter arising in the Chapter 11 Cases, including all claims of the kind specified in or ordered under sections 105, 326, 328, 330, 331, 364, 365, 503, 506, 507, 546, 726 (to the extent permitted by law), 1113, and 1114 of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever, (the "Adequate Protection Claims"), which Adequate Protection Claims shall have recourse to and be payable from all prepetition and postpetition property of the Debtors; *provided, however,* that the Adequate Protection Claims shall be subordinate solely to the Carve-Out.

b)       *Adequate Protection Liens*.  Effective as of the Petition Date and in each case perfected without the necessity of the execution by the Debtors or the Secured Lender (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or by possession or control, and in

20

each case subject and subordinate only to (A) any valid, perfected, non-avoidable, and enforceable liens in existence on or as of the Petition Date, (B) any valid and unavoidable liens in existence for amounts outstanding as of the Petition Date that is perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and (C) the Carve-Out, the Debtors grant to the Secured Lender valid, perfected, and enforceable liens on and first priority postpetition security interests (the "Adequate Protection Liens") securing the Adequate Protection Obligations in all of the Debtors' now owned or hereafter acquired real and personal property, tangible and intangible assets, and rights of any kind or nature, wherever located, including, without limitation, (i) all Prepetition Collateral, (ii) all accounts and accounts receivable, inventory, chattel paper, equipment, fixtures, machinery, commercial tort claims, deposit accounts, instruments, documents, cash and cash equivalents (other than cash that may be provided to the Debtors pursuant to any Court approved post-petition financing), investment property, books and records, rights, rebates, refunds, other claims under and with respect to insurance policies, tax refunds, deposits, rebates, contract rights and other general intangibles, security deposits, money and intercompany claims or receivables (whether or not evidenced by notes) at any time owing to the Debtors, all real property, leaseholds, rents and profits and proceeds thereof, all causes of action whether pursuant to federal or applicable state law, and the proceeds thereof and property received thereby whether by judgment, settlement, or otherwise, and as to all of the foregoing, all rents, issues, products, proceeds (including insurance policies), and profits of, from, or generated by any of the foregoing, whether existing on or as of the Petition Date or thereafter acquired, and (iii) proceeds or property recovered in respect of any avoidance claims and causes of action brought by the Debtors under Bankruptcy Code sections 544, 545, 547, 548, 549 or 550 ((i), (ii), and (iii)

21

of the foregoing shall be referred to hereafter collectively as, the "Adequate Protection Collateral").

24.     Additional Adequate Protection.

a)     *Milestones*.  As additional adequate protection for the Debtors' use of Cash Collateral, subject to extensions pursuant to prior written consent from the Secured Lender, which may be granted or withheld in its sole discretion, the Debtors shall meet timely the following milestones (the "Milestones"):

i.     No later than May 30, 2025, the Court shall have entered this Final Order; and

ii.     No later than June 9, 2025, the Debtors shall have secured and shared with the Secured Lender binding written commitments, which commitments are in form and substance reasonably satisfactory to the Secured Lender, for loans, equity contributions, or a combination thereof, that would generate, in the aggregate (and when combined with the approximately $1.69 million in cash in the Cash Management Account and any other amounts held by the Secured Lender in capital expenditure, tax and insurance reserves), proceeds sufficient to satisfy the Loan Obligations in full, provided, however, that the foregoing shall not prejudice the Debtors' rights to challenge the Disputed Loan Obligations; and

iii.     No later than June 23, 2025, the Loan Obligations shall be funded and paid.

b)     *Consultation Rights*.  The Debtors shall consult with counsel to the Secured Lender in connection with any material filing in these Chapter 11 Cases at least three (3) business days before such filing, if practical.  Such material filing shall include without limitation any

22

motion to incur debt, any motion to sell any or all of the Debtors' assets, any proposed amendment to the Budget, any motion to extend imposition of the automatic stay, and any filing related to the request for approval of a disclosure statement and/or confirmation of a plan of reorganization or liquidation.

c)  *Adequate Protection Payments*.  For the period from the Petition Date through and including May 23, 2025, on or before May 24, 2025, the Debtors shall pay to the Secured Lender by wire transfer a sum equal to 3.75% of the outstanding principal amount due under the Loan Documents as of the Petition Date, such outstanding principal as of the Petition Date totaling $51,100,000.00, and shall pay the same amount monthly thereafter on or before the twenty-fourth (24th) day of each consecutive succeeding month (each, an "Adequate Protection Payment" and collectively, the "Adequate Protection Payments"). The Adequate Protection Payments made pursuant to the Cash Collateral Orders shall not be subject to any offsets, setoffs, recoupments, challenges, objections, defenses, claims, counterclaims, or causes of action of any kind or nature in the Chapter 11 Cases or any Successor Cases (other than that the payment has actually been made), including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law.  For the avoidance of doubt, from and after the Petition Date, interest shall accrue on the outstanding principal balance of the Loan pursuant to the governing provisions of the Loan Documents, with the Debtors and Secured Lender reserving and preserving all rights with respect to the Secured Lender's entitlement to collect postpetition interest calculated at the Default Rate (as defined in the Loan Agreement).

d)  *Treatment of the Cash Management Account*.  The Debtors shall not draw, transfer or cause to be drawn or transferred, absent prior written consent from the Secured Lender

23

(to be given or withheld in its sole discretion), those funds maintained in the Cash Management Account as of the Petition Date, which were in the amount of approximately $1.69 million.

e)      *Treatment of Critical Vendor Payments*.  Absent prior written consent from the Secured Lender, which consent shall be given or withheld in its sole discretion, or an order of the Court, the Debtors shall not make any payments to creditors on account of such creditors' prepetition claims in any amounts not provided for in the Cash Collateral Orders or the Budget.

f)      *Reporting*.  The Debtors shall comply in all respects with the covenants contained in the Loan Documents, including among other things timely complying with the financial and other reporting obligations imposed on them in the Loan Documents and obtaining and maintaining insurance on the Prepetition Collateral and the Adequate Protection Collateral.

g)      *Termination Rights*.  Subject to the terms of the Cash Collateral Orders, the Secured Lender shall be entitled to terminate the Debtors' use of Cash Collateral upon the occurrence of an Event of Default (as hereinafter defined).

25.     Priority of Adequate Protection Liens and Adequate Protection Claims.

a)      The Adequate Protection Liens shall immediately be binding upon the Debtors and all parties in interest in these Chapter 11 Cases, including, without limitation, any statutory or non-statutory committee appointed or formed in these Chapter 11 Cases and their respective successors and assigns, any trustee or other estate representative appointed in these Chapter 11 Cases or any case under Chapter 7 of the Bankruptcy Code upon the conversion of these Chapter 11 Cases, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, and any other fiduciary appointed as a legal representative of the Debtors in these Chapter 11 Cases or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases").

24

b)      Subject to the Carve-Out, the Prepetition Liens and the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereafter granted in these cases or any Successor Cases and shall be valid and enforceable upon the conversion or dismissal of these cases and in any Successor Cases.

c)      Except to the extent of the Carve-Out, the Debtors shall not create, incur or suffer to exist any postpetition liens on or security interests in the Prepetition Collateral (including Cash Collateral) and the Adequate Protection Collateral, other than: (i) those granted pursuant to the Cash Collateral Orders; (ii) carriers', mechanics', operators', warehousemen's, repairmen's or other similar ordinary course liens arising in the ordinary course of business; (iii) pledges and deposits in connection with workers' compensation, unemployment insurance and other social security legislation; (iv) deposits to secure the payment of any postpetition statutory obligations and performance bonds; and (v) such other liens or security interests existing as of the Petition Date that are permissible under the applicable Loan Documents.

26.     <u>Carve-Out</u>.  The carve-out (the "<u>Carve-Out</u>") shall include (a) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate, (b) all reasonable fees and expenses up to $20,000 incurred by a trustee under section 726(b) of the Bankruptcy Code, and (c) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, incurred but unpaid professional fees and expenses ("<u>Allowed Professional Fees</u>"), solely up to  the amount of professional fees and expenses identified in any Budget, incurred by persons or firms retained by the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code (the "<u>Professional Persons</u>").

27.     <u>Modification of Automatic Stay</u>.  The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby modified to permit (a) the Debtors to grant the Adequate Protection Liens and the Adequate Protection Claims, and to take all appropriate action to ensure that the Adequate Protection Liens granted in the Cash Collateral Orders are perfected and maintain the priority set forth in such orders, (b) the Debtors to pay all amounts referred to, required under, in accordance with, and subject to the Cash Collateral Orders, and (c) the implementation of the terms of the Cash Collateral Orders.

28.     <u>Perfection of Adequate Protection Liens</u>.

a)      This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, real property mortgage or security agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Adequate Protection Liens, or to entitle the Secured Lender to the priorities granted in this Final Order.

b)      Notwithstanding the foregoing, the Secured Lender is hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction in order to validate and perfect the liens and security interests granted to it hereunder.  Whether or not the Secured Lender shall, in its sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or

26

subordination as of the date of entry of the Interim Order. If the Secured Lender determines to file any financing statements, notice of liens or similar instruments, the Debtors will cooperate and assist in any such filings as reasonably requested by the Secured Lender, and the automatic stay is hereby modified to allow such filings.

        c)     A certified copy of this Final Order may, in the sole discretion of the Secured Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order for filing and recording.

        d)     The Debtors shall execute and deliver to the Secured Lender all such agreements, financing statements, instruments and other documents as the Secured Lender may reasonably request to evidence, confirm, validate or perfect the applicable Adequate Protection Liens.

        29.    <u>Secured Lender Adequately Protected</u>. The interests of the Secured Lender in and to the Prepetition Collateral, including the Cash Collateral, shall be deemed to be adequately protected by the terms and provisions set forth herein. Secured Lender reserves the right to not consent to the Debtors' use of Cash Collateral beyond the Final Period.

        30.    <u>Subsequent Modification of this Final Order</u>. If any or all of the provisions of this Final Order are hereafter modified, vacated, or stayed, such modification, vacation, or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtors from the Petition Date through the effective date of such modification, vacation, or stay, or the validity or enforceability of any lien or security interest authorized or created by the Cash Collateral Orders.

        31.    <u>Events of Default</u>.

a)      Upon the occurrence of any of the below events (each, an "Event of Default"), the Secured Lender may terminate and/or revoke its consent to the Debtors' use of Cash Collateral (subject to the Carve-Out) by delivering a termination notice (the "Cash Collateral Termination Notice") to the Debtors: (i) the filing of any motion or pleading by the Debtors, or the entry of an order on account of a motion filed by any other party, to stay, vacate, reverse, amend or modify the Interim Order or this Final Order in a manner materially adverse to the Secured Lender without the prior written consent of the Secured Lender (to be given or withheld in its sole discretion); (ii) the entry of an order appointing a trustee, receiver or examiner with expanded powers with respect to any of the Debtors; (iii) the Debtors shall attempt to invalidate, reduce or otherwise impair the Loan Documents and/or the Loan Obligations (other than the Disputed Loan Obligations); (iv) the dismissal of any of the Chapter 11 Cases; (v) the effective date of any plan of reorganization; (vi) the conversion of any of the Chapter 11 Cases to a case or cases under Chapter 7 of the Bankruptcy Code; (vii) the Debtors' failure to timely satisfy any of the Milestones (subject to extensions as provided herein); (viii) the Debtors' failure to materially comply with any of the terms of the Cash Collateral Orders in a manner that adversely affects the Secured Lender; (ix) the Debtors' failure to maintain required insurance for the Prepetition Collateral and the Adequate Protection Collateral; (x) the Debtors' failure to pay timely any one of the Adequate Protection Payments required under the Cash Collateral Orders; (xi) the Budget shall have been updated, supplemented, replaced, or otherwise modified without the prior written consent of the Secured Lender (to be given or withheld in its sole discretion); (xii) the Debtors make a payment or take an action that is not in material compliance with the Budget that was approved and consented to by the Secured Lender in accordance with the Cash Collateral Orders; or (xiii) the

28

occurrence of a Non-Permitted Variance (to the extent not consented to by the Secured Lender, to be given or withheld in its sole discretion).

b)      The Secured Lender may declare a termination of the Debtors' right to use Cash Collateral by delivering a Cash Collateral Termination Notice, which shall become effective four (4) business days thereafter (the "Termination Date").  On the Termination Date, the Debtors' right to use Cash Collateral shall automatically cease, except that, during such four (4) business day period (the "Remedies Notice Period"), the Debtors and/or any party in interest shall be entitled to seek an emergency hearing with the Court (and, if a request for such hearing is made prior to the end of the Remedies Notice Period, then the Remedies Notice Period shall be continued until the Court hears and rules with respect thereto) to show cause why the authorization to use Cash Collateral should continue. Unless the Court determines otherwise, upon the Termination Date, (i) the automatic stay shall automatically be terminated without further notice or order solely as to the Secured Lender, (ii) the Debtors shall no longer have the right to use Cash Collateral (subject to the Carve-Out), and (iii) the Secured Lender shall be permitted to seek applicable relief from the Court to exercise all remedies set forth herein, as applicable, and as otherwise available at law against the Prepetition Collateral and Adequate Protection Collateral.

32.    Binding Effect; Successors and Assigns.  Subject to paragraph 16, the provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the Secured Lender, any statutory or non-statutory committees appointed or formed in these cases, and the Debtors and their respective successors and assigns (including any Chapter 7 or Chapter 11 trustee hereinafter appointed or elected for the estates of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtors or with

29

respect to the property of the estates of the Debtors) and shall inure to the benefit of the Secured Lender and the Debtors and their respective successors and assigns; provided, that, the Secured Lender shall have no obligation to permit the use of the Prepetition Collateral or Cash Collateral by any Chapter 7 or Chapter 11 trustee, examiner, receiver, or similar responsible person appointed for the estates of the Debtors in these Chapter 11 Cases or in any Successor Cases.

33.     <u>Limitation of Liability</u>.

a)     Nothing in the Cash Collateral Orders, the Loan Documents, or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon the Secured Lender any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their businesses, or in connection with their restructuring efforts. The Secured Lender was not, by the Interim Order, and hereby on a final basis shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the Prepetition Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and all risk of loss, damage or destruction of the Prepetition Collateral shall be borne by the Debtors.

b)     In determining to permit the use of the Prepetition Collateral (including Cash Collateral) or in exercising any rights or remedies as and when permitted pursuant to this Final Order or Loan Documents, as applicable, none of the Secured Lender or its Representatives shall (a) have any liability to any third party or be deemed to be in "control" of the operations of the Debtors; (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" or

30

"Managing Agent" with respect to the operation or management of any of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, et seq., as amended, or any other federal or state statute, including the Internal Revenue Code). Furthermore, nothing in this Final Order shall in any way be construed or interpreted to impose or allow the imposition upon the Secured Lender or any of its Representatives of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective representatives.

34.     No Third-Party Rights.     Except as explicitly provided for herein, the Cash Collateral Orders do not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

35.     Controlling Effects of this Final Order.  To the extent any provision of this Final Order conflicts or is inconsistent with any provision of the Motion or the Interim Order, the provisions of this Final Order shall control.

36.     Effectiveness.  This Final Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of execution of effectiveness (including, without limitation, under Bankruptcy Rule 6004(h)) of this Final Order. To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be so deemed and vice versa.

37.     Headings.  The headings in this Final Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Final Order.

38.     Jurisdiction.  This Court retains jurisdiction to enforce the terms of this Final Order and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Final Order.

314143248v.3

\#        \#        \#

314143248v.3

Prepared by:

**TROUTMAN PEPPER LOCKE LLP**

*/s/ Stephen J. Humeniuk*
Daniel Durell (Tex. Bar No. 24078450)
Stephen J. Humeniuk (Tex. Bar No. 24087770)
300 Colorado St., Suite 2100
Austin, TX 78701
T: (512) 305-4700
F: (512) 205-4800
daniel.durell@troutman.com
stephen.humeniuk@troutman.com

Michael A. Sabino (admitted *pro hac vice*)
875 Third Avenue
New York, NY 10022
T: (212) 704-6000
F: (212) 704-6288
michael.sabino@troutman.com

*Proposed Attorneys for Debtors*
*and Debtors in Possession*


Agreed as to Form and Substance:

*/s/ Benjamin Mintz*
Benjamin Mintz (admitted *pro hac vice*)
Justin Imperato (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
T: (212) 836-8500
F: (212) 836-6550
Benjamin.Mintz@arnoldporter.com
Justin.Imperato@arnoldporter.com

-and

33

Ryan E. Manns
NORTON ROSE FULBRIGHT US LLP
2200 Ross Ave, Ste. 3600
Dallas, TX 75201-7932
T: (241) 855-8000
F: (241) 855-8200
ryan.manns@nortonrosefulbright.com

-and

Steve A. Peirce
NORTON ROSE FULBRIGHT US LLP
Frost Tower, 111 W. Houston Street
Suite 1800
San Antonio, TX 78205
T: (210) 270-7179
steve.peirce@nortonrosefulbright.com

*Counsel to Prime Finance Short Duration
Holding Company VII, LLC*

314143248v.3

## Exhibit A

*Budget*

**Shoreview**
**4/25/2025**  — Initial 13-Week End

| month / weeks | 05/12-05/18 | 05/19-05/25 | 05/26-06/01 | 06/02-06/08 | 06/09-06/15 | 06/16-06/22 | 06/23-06/29 | 06/30-07/06 | 07/07-07/13 | 07/14-07/20 | 07/21-07/27 | 07/28-08/03 | 8/04-8/10 | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | May-25 | | | | Jun-25 | | | | Jul-25 | | | Aug-25 | |
| **Expected Cash:** | | | | | | | | | | | | | | |
| Cash Balance (in the bank) *6881 | 358,273.80 | 202,870.64 | 120,059.18 | 95,975.87 | 109,635.00 | 151,504.10 | 107,021.89 | 81,938.57 | 81,933.76 | 126,930.18 | 95,135.65 | 83,635.65 | 77,524.00 | 358,273.80 |
| Expected Revenue | 32,455.70 | | | 350,202.25 | 70,040.45 | 32,685.54 | | 353,172.25 | 70,634.45 | 32,962.74 | | 209,229.80 | 162,734.29 | 1,314,117.46 |
| Total Expected Cash | 390,729.50 | 202,870.64 | 120,059.18 | 446,178.12 | 179,675.45 | 184,189.64 | 107,021.89 | 435,110.82 | 152,568.21 | 159,892.93 | 95,135.65 | 292,865.44 | 240,258.28 | 1,672,391.26 |
| | | | | | | | | | | | | | | |
| **Expenses:** | | | | | | | | | | | | | | |
| Check register (uncleared) | | | | | | | | | | | | | | - |
| Critical Vendor Payments | 13,583.32 | 13,583.32 | 13,583.32 | 13,583.32 | 13,583.32 | 13,583.32 | 13,583.32 | | | | | | | 95,083.21 |
| ResProp Payroll (bi-weekly) | - | 21,952.00 | - | 15,577.00 | - | 16,464.00 | - | 15,577.00 | - | 16,464.00 | - | 15,577.00 | - | 101,611.00 |
| **Monthly Operating Expense:** | | | | | | | | | | | | | | |
| 1. G&A (including Petty Cash) + Marketing | 3,000.00 | 4,500.00 | 3,500.00 | 4,500.00 | 3,000.00 | 3,000.00 | 4,500.00 | 3,000.00 | 4,500.00 | 3,000.00 | 4,500.00 | 3,000.00 | 4,500.00 | 48,500.00 |
| 2. R&M & Make Ready | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 84,500.00 |
| 3. Service Contracts | 4,588.04 | | | | 4,588.04 | | | | 4,588.04 | | | | 4,588.04 | 18,352.16 |
| 4. Other Operating Expenses | 500.00 | | 500.00 | | 500.00 | | 500.00 | | 500.00 | | 500.00 | | 500.00 | 3,500.00 |
| Utilities | - | 19,535.13 | - | 13,845.30 | - | 20,767.95 | - | 14,537.57 | - | 21,806.35 | - | 15,264.44 | - | 105,756.74 |
| 2024 Tax Prep (Critical Vendor) | | | | 2,850.00 | | | | 3,875.00 | | | | | | 6,725.00 |
| Professional Fees | | | | 120,000.00 | | | | 150,000.00 | | | | 175,000.00 | | 445,000.00 |
| ResProp management Fee | - | 11,243.58 | - | - | - | 11,323.21 | - | - | - | 11,419.24 | - | | | 33,986.02 |
| Casoro Asset Management Fee | | 4,497.43 | | | | 4,529.28 | | | | 4,567.69 | | | | 13,594.41 |
| Casoro Travel | | 1,000.00 | | | | 1,000.00 | | | | 1,000.00 | | | | 3,000.00 |
| DS interest payment 3.75% APR (Pays Prime) | 159,687.50 | | | 159,687.50 | | | | 159,687.50 | | | | | 159,687.50 | 638,750.00 |
| Total Expenses | 187,858.86 | 82,811.46 | 24,083.32 | 336,543.12 | 28,171.36 | 77,167.75 | 25,083.32 | 353,177.07 | 16,088.04 | 64,757.28 | 11,500.00 | 215,341.44 | 175,775.54 | 1,598,358.53 |
| Quarterly disbursement fee | | | | | | | | | 9,549.98 | | | | 1,933.85 | 11,483.83 |
| Total funding request | 187,858.86 | 82,811.46 | 24,083.32 | 336,543.12 | 28,171.36 | 77,167.75 | 25,083.32 | 353,177.07 | 25,638.02 | 64,757.28 | 11,500.00 | 215,341.44 | 177,709.39 | 1,609,842.37 |
| | | | | | | | | | | | | | | |
| Ending Cash | 202,870.64 | 120,059.18 | 95,975.87 | 109,635.00 | 151,504.10 | 107,021.89 | 81,938.57 | 81,933.76 | 126,930.18 | 95,135.65 | 83,635.65 | 77,524.00 | 62,548.90 | |