# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| SHOREVIEW HOLDING LLC, *et al.*,[1] | ) | Case No. 25-10566 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

**TROUTMAN PEPPER LOCKE LLP**

Daniel Durell (24078450)
Stephen J. Humeniuk (24087770)
300 Colorado St., Suite 2100
Austin, TX 78701
T: (512) 305-4700
F: (512) 305-4800

**TROUTMAN PEPPER LOCKE LLP**

Michael Sabino (admitted *pro hac vice*)
875 Third Avenue
New York, NY 10022
T: (212) 704-6000
F: (212) 704-6288

*Proposed Counsel for the Debtors and Debtors in Possession*
**Dated: July 15, 2025**

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: Shoreview Holding LLC (8428), PLF Shoreview LLC (7602), MDW Shoreview LLC (8649), Shoreview Apartments LLC (6780), PLF Shoreview Mezz LLC (1270), and MDW Shoreview Mezz LLC (3408).  The notice address for the Debtors is 9050 N. Capital of Texas Hwy., Bldg. 3, Suite 320, Austin, TX 78759.

## TABLE OF CONTENTS

**Page(s)**

ARTICLE I. DEFINED TERMS AND RULES OF INTERPRETATION ................................... 1
    A.    Defined Terms ............................................................................... 1
    B.    Rules of Interpretation ................................................................ 14
    C.    Computation of Time .................................................................. 15
    D.    Reference to Monetary Figures .................................................. 15
    E.    Reference to the Debtors or the Reorganized Debtors ............... 15
    F.    Controlling Document ................................................................ 15
    G.    Incorporation ............................................................................. 16

ARTICLE II. ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY CLAIMS, AND
    RESTRUCTURING EXPENSES ................................................................. 16
    A.    General Administrative Expense Claims .................................... 16
    B.    Professional Claims ................................................................... 17
    C.    Payment of Restructuring Expenses .......................................... 18
    D.    Priority Tax Claims .................................................................... 18
    E.    Statutory Fees ............................................................................ 18

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ...... 18
    A.    Classification of Claims and Interests ....................................... 18
    B.    Treatment of Claims and Interests ............................................ 19
    C.    Special Provision Governing Unimpaired Claims ..................... 23
    D.    Elimination of Vacant Classes .................................................. 24
    E.    Controversy Concerning Impairment ........................................ 24
    F.    Subordinated Claims ................................................................. 24
    G.    Discharge of Claims .................................................................. 24

ARTICLE IV. ACCEPTANCE OR REJECTION OF PLAN ................................................. 24
    A.    Presumed Acceptance by Non-Voting Classes .......................... 24
    B.    Voting Classes ........................................................................... 25
    C.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the
    Bankruptcy Code ....................................................................... 25

ARTICLE V. MEANS FOR IMPLEMENTATION OF THIS PLAN ....................................... 25
    A.    No Substantive Consolidation .................................................... 25
    B.    General Settlement of Claims and Interests ............................... 25
    C.    Restructuring Transactions ........................................................ 25
    D.    Reorganized Debtors .................................................................. 26
    E.    Sources for Plan Distributions ................................................... 26
    F.    New Equity Interests .................................................................. 28
    G.    Corporate Existence ................................................................... 29
    H.    Vesting of Assets in the Reorganized Debtors ........................... 29
    I.    Cancellation of Existing Securities and Agreements ................. 30
    J.    Corporate Action ....................................................................... 30
    K.    New Organizational Documents ................................................ 31

317391044v1

L.     Indemnification Provisions in Organizational Documents .................................. 31
M.    Managers, General Partners, Directors and Officers of the Reorganized
Debtors ........................................................................................................ 31
N.     Effectuating Documents; Further Transactions ................................................ 32
O.     Section 1146 Exemption ............................................................................... 32
P.     Preservation of Causes of Action .................................................................. 33

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ........................................................................................................ 34
A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ....... 34
B.    Indemnification Obligations ......................................................................... 35
C.    Claims Based on Rejection of Executory Contracts or Unexpired Leases.......... 35
D.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ....... 35
E.    Preexisting Obligations to the Debtors under Executory Contracts and
Unexpired Leases ........................................................................................ 36
F.    Insurance Policies ....................................................................................... 37
G.    Reservation of Rights................................................................................... 37
H.    Nonoccurrence of Effective Date................................................................... 37
I.     Contracts and Leases Entered Into after the Petition Date ................................ 38

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS ............................................ 38
A.    Distributions on Account of Claims Allowed as of the Effective Date .............. 38
B.    Disbursing Agent ........................................................................................ 38
C.    Rights and Powers of Disbursing Agent ......................................................... 38
D.    Delivery of Distributions and Undeliverable or Unclaimed Distributions .......... 39
E.    Manner of Payment...................................................................................... 40
F.    Exemption from Registration Requirements .................................................... 40

ARTICLE VIII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED,
AND DISPUTED CLAIMS ............................................................................... 43
A.    Disputed Claims Process................................................................................ 43
B.    Allowance of Claims.................................................................................... 44
C.    Claims Administration Responsibilities.......................................................... 44
D.    Adjustment to Claims without Objection ........................................................ 44
E.    Disallowance of Claims or Interests .............................................................. 44
F.    No Distributions Pending Allowance.............................................................. 45
G.    Distributions after Allowance ....................................................................... 45

ARTICLE IX. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED
PROVISIONS ................................................................................................. 45
A.    Discharge of Claims and Termination of Interests............................................ 45
B.    Release of Liens.......................................................................................... 46
C.    Releases by the Debtors and their Estates (the "Debtor Release")..................... 46
D.    Releases by the Releasing Parties (the *Third-Party Release*") .......................... 47
E.    Exculpation ................................................................................................ 48
F.    Injunction .................................................................................................. 49
G.    Protections against Discriminatory Treatment.................................................. 50

H.  Waiver of Statutory Limitation on Releases ...................................................... 50
I.  Reimbursement or Contribution ................................................................... 51
J.  Integral Part of Plan ...................................................................................... 51

ARTICLE X. CONDITIONS PRECEDENT TO CONFIRMATION AND
CONSUMMATION OF THIS PLAN ....................................................................... 51
A.  Condition Precedent to Confirmation .................................................... 51
B.  Conditions Precedent to the Effective Date ......................................... 51
C.  Waiver of Conditions ................................................................................ 53
D.  Effect of Failure of Conditions .............................................................. 53
E.  Substantial Consummation ...................................................................... 53

ARTICLE XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THIS PLAN ...... 54
A.  Modification and Amendments................................................................ 54
B.  Effect of Confirmation on Modifications ............................................ 54
C.  Revocation, Withdrawal, and Voidance of Plan................................... 54

ARTICLE XII. RETENTION OF JURISDICTION................................................... 54

ARTICLE XIII. MISCELLANEOUS PROVISIONS ................................................ 57
A.  Immediate Binding Effect........................................................................ 57
B.  Additional Documents .............................................................................. 57
C.  Reservation of Rights................................................................................ 57
D.  Successors and Assigns............................................................................. 58
E.  Notices ......................................................................................................... 58
F.  Term of Injunctions or Stays................................................................... 58
G.  Entire Agreement ...................................................................................... 58
H.  Exhibits and Annexes................................................................................ 59
I.  Non-severability of Plan Provisions ....................................................... 59
J.  Votes Solicited in Good Faith ................................................................. 59
K.  Governing Law ........................................................................................... 60
L.  Closing of Chapter 11 Cases................................................................... 60
M.  Waiver or Estoppel.................................................................................... 60

317391044v1

## INTRODUCTION

Shoreview Holding LLC ("<u>Shoreview Holding</u>"), PLF Shoreview LLC ("<u>PLF Shoreview</u>"), MDW Shoreview LLC ("<u>MDW Shoreview</u>"), Shoreview Apartments LLC ("<u>Shoreview Mezz</u>"), PLF Shoreview Mezz LLC ("<u>PLF Mezz</u>"), and MDW Shoreview Mezz LLC ("<u>MDW Mezz</u>") (each a "<u>Debtor</u>" and, collectively, the "<u>Debtors</u>"), propose this joint plan of reorganization (this "<u>Plan</u>") for the resolution of the outstanding claims against, and equity interests in, the Debtors. Capitalized terms used herein and not otherwise defined have the meanings ascribed to them in Section I.A. of this Plan. Although proposed jointly for administrative purposes, this Plan constitutes a separate Plan of each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. Holders of Claims or Interests may refer to the Lee-Wen Declaration and the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, risk factors, a summary and analysis of this Plan, the Restructuring Transactions, and certain related matters. The Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

## ARTICLE I.
## DEFINED TERMS AND RULES OF INTERPRETATION

A.    <u>Defined Terms</u>

As used in this Plan, capitalized terms have the meanings set forth below.

1.    "<u>510(b) Equity Claim</u>" means any Claim subordinated pursuant to section 510(b) of the Bankruptcy Code.

2.    "<u>Adequate Protection Claim(s)</u>" has the meaning set forth in the Cash Collateral Order.

3.    "<u>Administrative Expense Claims Bar Date</u>" means the deadline for Filing requests for payment of Administrative Expense Claims, which: (a) with respect to General Administrative Expense Claims other than those that were accrued in the ordinary course of business, shall be 30 days after the Effective Date; and (b) with respect to Professional Claims, shall be 45 days after the Effective Date.

4.    "<u>Administrative Expense Claim</u>" means a Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses, incurred on or after the Petition Date until and including the Effective Date, of preserving the Estates and operating the Debtors' businesses; (b) Professional Claims; (c) Adequate Protection Claims (if any); and (d) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911 - 1930.

1

5.      "<u>Affiliate</u>" has the meaning set forth in section 101(2) of the Bankruptcy Code. With respect to any Person or Entity that is not a Debtor, the term "Affiliate" shall apply to such person as if the Person or Entity were a Debtor.

6.      "<u>Agreed Lift Stay Order</u>" means the agreed order among the Debtors, Pearlmark, and Prime that the Bankruptcy Court entered on June 9, 2025 at Docket No. 126 in these Chapter 11 Cases.

7.      "<u>Allowed</u>" means, as to a Claim or an Interest, a Claim or an Interest allowed under this Plan, under the Bankruptcy Code, or by a Final Order, as applicable. For the avoidance of doubt, (a) there is no requirement to File a Proof of Claim (or move the Bankruptcy Court for allowance) to be an Allowed Claim under this Plan, and (b) the Debtors may affirmatively determine to deem Unimpaired Claims as Allowed.

8.      "<u>Alternative Equity Investment</u>" means, collectively, a contribution provided by or caused to be provided by Shoreview JV LP, consisting of Cash in an aggregate amount of not less than $70 million, the proceeds of which shall first be used solely to indefeasibly pay in full in Cash the Allowed Mortgage Loan Claim and the Allowed Mezzanine Loan Claim.

9.      "<u>Alternative Equity Restructuring</u>" means a restructuring under the Plan pursuant to which, among other things, the Reorganized Debtors shall issue New Equity Interests in connection with the Alternative Equity Investment.

10.      "<u>Alternative Equity Restructuring Notice</u>" means a notice Filed with the Bankruptcy Court indicting that the Debtors, in consultation with the Mezzanine Lender and Mortgage Lender, have elected to pursue the Alternative Equity Restructuring.

11.      "<u>Avoidance Actions</u>" means any and all actual or potential avoidance, recovery, subordination, or other Claims, Causes of Action, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including Claims, Causes of Action, or remedies under sections 502, 510, 542, 544, 545, 547 through and including 553, and 724(a) of the Bankruptcy Code or under similar local, state, federal, or foreign statutes and common law, including fraudulent and voidable transfer laws.

12.      "<u>Bankruptcy Code</u>" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect on the Petition Date, together with all amendments, modifications, and replacements of the foregoing that are made retroactive to the Petition Date, as the same may exist on any relevant date to the extent applicable to the Chapter 11 Cases.

13.      "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Western District of Texas, Austin Division.

14.      "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of title 28 of the United States Code and the general, local, and chambers rules of the Bankruptcy Court, each, as amended from time to time.

2

15.    "<u>Business Day</u>" means any day other than a Saturday, Sunday, or legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

16.    "<u>Cash</u>" means cash in legal tender of the United States of America and cash equivalents, including bank deposits, checks, and other similar items.

17.    "<u>Cash Collateral Order</u>" means the *Agreed Final Order (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to the Secured Lender, and (III) Granting Related Relief* [Dkt. No. 103] entered on May 28, 2025 in these Chapter 11 Cases.

18.    "<u>Cash Management Account</u>" means the account maintained at Wells Fargo Bank, National Association (account no. *7313) in the name of Debtor Shoreview Holding LLC.

19.    "<u>Cause of Action</u>" or "<u>Causes of Action</u>" means any claims, interests, damages, remedies, causes of action (including Avoidance Actions), demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through and including 550, or 553 of the Bankruptcy Code; (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any claim under any state or foreign law, including, without limitation, any fraudulent transfer or similar claim.

20.    "<u>Chapter 11 Cases</u>" means the bankruptcy cases filed by the Debtors under chapter 11 of the Bankruptcy Code on the Petition Date.

21.    "<u>Claim</u>" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

22.    "<u>Claims Register</u>" means the official register of Claims maintained by the Clerk for the Bankruptcy Court.

23.    "<u>Class</u>" means a category of Holders of Claims or Interests pursuant to section 1122(a) and 1123(a)(1) of the Bankruptcy Code.

24.    "<u>CM/ECF</u>" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

25.    "<u>Conditions Precedent</u>" has the meaning ascribed to such term in Article X of this Plan.

26.    "<u>Confirmation</u>" means entry of the Confirmation Order on the docket of the Chapter 11 Cases.

27.    "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

28.    "Confirmation Hearing" means the hearing(s) before the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtors seek entry of the Confirmation Order.

29.    "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan under section 1129 of the Bankruptcy Code, which order shall be in form and substance acceptable to the Debtors, Prime, and the Exit Facility Lenders.

30.    "Consummation" means the occurrence of the Effective Date.

31.    "Cure" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) that is to be assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

32.    "Debtor Release" means the releases provided for in Section IX.C of this Plan.

33.    "Debtor-Related Matters" means any and all Claims or Causes of Action, and anything related to the Debtors or their Affiliates (including the management, ownership, or operation thereof), the purchase, sale, amendment, or rescission of any Claim against or Interest in the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in-or out-of-court restructuring efforts, the Debtors' intercompany transactions, the Chapter 11 Cases and any related adversary proceedings, the restructuring of Claims or Interests prior to or during the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Interest of the Debtors or the Reorganized Debtors, the Confirmation or Consummation of this Plan or the solicitation of votes on this Plan, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or Filing of, as applicable, the Chapter 11 Cases, the Mortgage Loan Documents, Mezzanine Loan Documents, the Exit Facilities, the Exit Facilities Documents, the Definitive Documentation, the Disclosure Statement, the New Organizational Documents, this Plan (including, for the avoidance of doubt, the Plan Supplement), the Restructuring Transactions, or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing (including, for the avoidance of doubt, any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by this Plan or the reliance by any Released Party on this Plan or the Confirmation Order in lieu of such legal opinion), the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, including the issuance or distribution of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date.

34.    "Debtors" has the meaning set forth in the Introduction.

4

35. "<u>Definitive Documentation</u>" means the definitive documents and agreements governing the Restructuring Transactions, in each case, in form and substance acceptable to Prime (solely with respect to (a)-(d) and (h)) and the Exit Facility Lenders, as applicable, (with respect to (a)-(h) consisting of: (a) this Plan (and all exhibits and annexes thereto); (b) the Confirmation Order and pleadings in support of entry of the Confirmation Order; (c) the Disclosure Statement and the other solicitation materials in respect of this Plan; (d) the order of the Bankruptcy Court approving the Disclosure Statement and such other solicitation materials; (e) in the case of an Exit Facility Restructuring, documentation in respect of the Exit Facilities (including the Exit Facilities Documents); (f) in the case of an Alternative Equity Restructuring, documentation in respect to the Alternative Equity Investment; (g) the certificates of incorporation, limited liability agreements, bylaws, and other organizational documents (as applicable) of the Reorganized Debtors; and (h) all other documents that will comprise the Plan Supplement or that are otherwise related to this Plan.

36. "<u>Disallowed</u>" means, as to a Claim or an Interest, a Claim or an Interest (or portion thereof) that has been disallowed, denied, dismissed, or overruled pursuant to this Plan or a Final Order of the Bankruptcy Court, or any other court of competent jurisdiction.

37. "<u>Disbursing Agent</u>" means the Reorganized Debtors or such other Entity designated by the Debtors or Reorganized Debtors to hold and disburse the Plan Distributions to Holders of Allowed Claims pursuant to the terms of this Plan.

38. "<u>Disclosure Statement</u>" means the disclosure statement for this Plan, including all exhibits and schedules thereto, which shall be in form and substance acceptable to the Debtors, Prime, and the Exit Facility Lenders.

39. "<u>Disputed</u>" means, as to a Claim or an Interest, a Claim or an Interest (or portion thereof) that is neither an Allowed Claim nor a Disallowed Claim.

40. "<u>Distribution Date</u>" means, except as otherwise set forth herein, the date or dates determined by the Debtors or the Reorganized Debtors, on or after the Effective Date, with the first such date occurring on or as soon as is reasonably practicable after the Effective Date, upon which the Disbursing Agent shall make distributions to Holders of Allowed Claims entitled to receive distributions under this Plan.

41. "<u>Distribution Record Date</u>" means the record date for purposes of making distributions under this Plan on account of Allowed Claims, which date shall be the Effective Date.

42. "<u>Effective Date</u>" means the date that is the first Business Day on which all Conditions Precedent have been satisfied or waived in accordance with this Plan and the Confirmation Order; provided, however, the Effective Date shall occur on or before July 23, 2025 (unless the Mortgage Lender and the Mezzanine Lender consent in writing to an extension of such date).

43. "<u>Entity</u>" has the meaning set forth in section 101(15) of the Bankruptcy Code.

5

44. "Equity Investment" means, collectively, a contribution provided by or caused to be provided by Shoreview JV LP, consisting of Cash in an aggregate approximate amount of $19 million.

45. "Estate" means the estate of any Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

46. "Exchange Act" means the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*, as amended from time to time.

47. "Exculpated Parties" means collectively, and in each case, in its capacity as such, the Debtors.

48. "Executory Contract" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

49. "Existing Equity Interest" means the Interest of any Holder of equity securities of any Debtor represented by any issued and outstanding shares of such Debtor's common or preferred stock, whether or not transferable, or any options, warrants, or rights, contractual or otherwise, obligating a Debtor to issue, transfer, purchase, redeem, or sell any shares of common or preferred stock, any rights under any stock option plans, stockholder rights agreements, voting agreements, and registration rights agreements regarding common or preferred stock of a Debtor, any Claim arising from the rescission of a purchase, sale or other acquisition of common or preferred stock (or any right, claim or interest in and to any common stock) of a Debtor, any 510(b) Equity Claim, any Claims for the payment of dividends on any shares of common or preferred stock of a Debtor, and any Claims for damages or any other relief arising from the purchase, sale, disposition, holding or other acquisition of a Debtor's common or preferred stock.

50. "Exit Facilities" means, collectively, the Exit Mezzanine Loan, Exit Mortgage Loan, and the Equity Investment.

51. "Exit Facilities Documents" means, collectively, Exit Mezzanine Loan Documents and Exit Mortgage Loan Documents, and all agreements, documents and instruments delivered or entered into in connection with the Equity Investment.

52. "Exit Facility Lenders" means, collectively, the Exit Mezzanine Lender and the Exit Mortgage Lender.

53. "Exit Facility Restructuring" means a restructuring under the Plan pursuant to which, among other things, the Reorganized Debtors shall enter into the Exit Facilities and related Exit Facilities Documents.

54. "Exit Mortgage Lender" means those certain lender(s) under the Exit Mortgage Loan in accordance with the Exit Mortgage Loan Documents, as may be identified in the Plan Supplement.

317391044v1

55. "Exit Mortgage Loan" means that exit financing provided to Reorganized Shoreview Holding LLC under the Exit Mortgage Loan Documents.

56. "Exit Mortgage Loan Agreement" means those certain financing and related documents by and between Reorganized Shoreview Holding LLC and the Exit Mortgage Lender, on such terms and conditions satisfactory to Reorganized Shoreview Holding LLC and the Exit Mortgage Lenders.

57. "Exit Mortgage Loan Documents" means collectively, all agreements, documents, and instruments delivered or entered into in connection with the Exit Mortgage Loan Agreement and those certain financing and related documents by and between the Reorganized Shoreview Holding LLC and the Exit Mortgage Lender, on such terms and conditions satisfactory to the Debtors and the Exit Mortgage Lender.

58. "Exit Mezzanine Lender" means those lender(s) under the Exit Mezzanine Loan in accordance with the Exit Mezzanine Loan Documents, as may be identified in the Plan Supplement.

59. "Exit Mezzanine Loan" means that exit financing provided to the New Mezzanine Borrowers under the Exit Mezzanine Loan Documents.

60. "Exit Mezzanine Loan Agreement" means those certain financing and related documents by and between the New Mezzanine Borrower and the Exit Mezzanine Lender, on such terms and conditions satisfactory to the New Mezzanine Borrower and the Exit Mezzanine Lender.

61. "Exit Mezzanine Loan Documents" means collectively, all agreements, documents, and instruments delivered or entered into in connection with the Exit Mezzanine Loan Agreement those certain financing and related documents by and between the Reorganized Mezzanine Debtors and the Exit Mezzanine Lender, on such terms and conditions satisfactory to the Debtors and the Exit Mezzanine Lender.

62. "Federal Judgment Rate" means the federal judgment rate in effect as of the Petition Date.

63. "File," "Filed," or "Filing" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

64. "Final Order" means as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

7

65. "<u>General Administrative Expense Claim</u>" means an Administrative Expense Claim other than an Adequate Protection Claim, Professional Claim, or Claim for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

66. "<u>General Unsecured Claim</u>" means any Claim other than an Administrative Expense Claim, an Other Secured Claim, a Priority Tax Claim, an Other Priority Claim, a Mezzanine Loan Claim, a Mortgage Loan Claim, an Intercompany Claim, or a 510(b) Equity Claim.

67. "<u>Governing Body</u>" means, in each case in its capacity as such, the board of directors, board of managers, manager, general partner, investment committee, special committee, or such similar governing body of any of the Debtors or the Reorganized Debtors, as applicable.

68. "<u>Governmental Unit</u>" has the meaning set forth in section 101(27) of the Bankruptcy Code.

69. "<u>Holder</u>" means an Entity holding a Claim or Interest, as applicable.

70. "<u>Impaired</u>" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

71. "<u>Indemnification Provisions</u>" means, collectively, each of the Debtors' indemnification obligations in place immediately prior to the Effective Date, whether in the respective Debtors' bylaws, certificates of incorporation, limited partnership agreements, other formation documents, or contracts, to the current and former members of any Governing Body, directors, officers, managers, employees, attorneys, others professionals, and respective agents of, or acting on behalf of, the Debtors.

72. "<u>Insider</u>" has the meaning set forth in section 101(31) of the Bankruptcy Code.

73. "<u>Insurance Contracts</u>" means all insurance policies that have been issued (or provide coverage) at any time to any of the Debtors (or any of their predecessors) and all agreements, documents, or instruments relating thereto.

74. "<u>Insurer</u>" means any company or other Entity that issued an Insurance Contract and includes any third-party administrator of or for any Insurance Contract, and any respective predecessors, successors, and/or Affiliates of any of these.

75. "<u>Intercompany Claim</u>" means a Claim held by a Debtor against another Debtor or an Affiliate.

76. "<u>Interest</u>" means Equity any Security (as defined in section 101(16) of the Bankruptcy Code) in any Debtor and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor.

8

77.  "Lee-Wen Declaration" means the *Declaration of Monte Lee-Wen in Support of Debtors' Petitions and First Day Pleadings* [Dkt. No. 10] filed in these Chapter 11 Cases.

78.  "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

79.  "Loan Obligations" has the meaning set forth in the Cash Collateral Order.

80.  "Mezzanine Debtors" means, collectively, Debtors Shoreview Mezz, PLF Mezz, and MDW Mezz.

81.  "Mezzanine Lender" means Pearlmark.

82.  "Mezzanine Loan" means that financing provided to the Mezzanine Debtors under the Mezzanine Loan Documents in the original principal amount of $13.5 million.

83.  "Mezzanine Loan Claim" means that Claim of the Mezzanine Lender against the Mezzanine Debtors in the amount of $13,664,126.37 as set forth in the Agreed Lift Stay Order.

84.  "Mezzanine Loan Documents" means those certain financing and related documents by and between the Mezzanine Debtors and Pearlmark, including that certain "Loan Agreement" dated as of December 15, 2021.

85.  "Mortgage Debtors" means, collectively, Debtors Shoreview Holding, PLF Shoreview, and MDW Shoreview.

86.  "Mortgage Lender" means Prime.

87.  "Mortgage Loan" means that financing provided to the Mortgage Debtors under the Mortgage Loan Documents in the original principal amount of $51.1 million.

88.  "Mortgage Loan Claim" means the Secured Claim of the Mortgage Lender against the Mortgage Debtors pursuant to the Mortgage Loan Documents and the Cash Collateral Order through the Effective Date in the amount of the Loan Obligations, such Secured Claim not less than $53,561,174.30 as of the Petition Date, plus postpetition interest at the default rate and all other fees, expenses, and charges due under the Mortgage Loan Documents, including without limitation the Mortgage Lender's prepetition and postpetition professional fees and expenses.

89.  "Mortgage Loan Documents" means those certain financing, security, and related documents by and between the Mortgage Debtors and Mortgage Lender related to the Property, including the Loan Documents (as defined in the Cash Collateral Order).

90.  "New Board" means the board of directors of Reorganized Shoreview Holding LLC.  The identities of the members of the New Board shall be Filed with the Plan Supplement.

91.  "NewCo" means any Entity created in connection with the Exit Facility Restructuring or the Alternative Equity Structuring, as applicable, to hold any direct or indirect

9

ownership interest in Reorganized Shoreview Holding LLC (including without limitation, New Mezzanine Borrower).

92.     "New Equity Interests" means direct and indirect equity interests of Reorganized Shoreview Holding LLC authorized to be issued and outstanding on or after the Effective Date pursuant to this Plan and the New Organizational Documents.

93.     "New Mezzanine Borrower" means that certain borrower identified in the Plan Supplement.

94.     "New Organizational Documents" means the documents providing for corporate governance of the Reorganized Debtors, including charters, bylaws, operating agreements, or other organizational documents, as applicable, which shall be consistent with this Plan and section 1123(a)(6) of the Bankruptcy Code (as applicable), which New Organizational Documents shall Filed with the Plan Supplement and shall be in form and substance acceptable to the Debtors and, (a) in the case of an Exit Facility Restructuring, the Exit Mezzanine Lender and Exit Mortgage Lender or (b) in the case of an Alternative Equity Restructuring, Shoreview JV LP.

95.     "Other Priority Claim" means any Claim other than an Administrative Expense Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

96.     "Other Secured Claim" means any Secured Claim other than a Mezzanine Loan Claim or Mortgage Loan Claim. For the avoidance of doubt, Other Secured Claims includes Secured Tax Claims and any Claim arising under, derived from, or based upon any letter of credit issued in favor of one or more Debtors, the reimbursement obligation for which is either secured by a Lien on collateral or is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

97.     "Payment Deadline" mean on of before July 23, 2025, as defined in the Agreed Lift Stay Order.

98.     "Pearlmark" means PMRP V Holdings, LLC, and its successors, assigns, Affiliates and anyone claiming by or through them.

99.     "Person" has the meaning set forth in section 101(41) of the Bankruptcy Code.

100.    "Petition Date" means the date on which the Debtors commenced the Chapter 11 Cases.

101.    "Plan" has the meaning set forth in the Introduction.

102.    "Plan Distribution" means a payment or distribution to Holders of Allowed Claims, Allowed Interests, or other eligible Entities under this Plan.

103.    "Plan Objection Deadline" means the date the Bankruptcy Court establishes as the deadline to File an objection to Confirmation of this Plan.

104. "Plan Supplement" means the compilation of documents and forms of documents, agreements, schedules, exhibits, and annexes to this Plan, which shall be Filed by the Debtors no later than two (2) business days before the Confirmation Hearing or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, including: (i) New Organizational Documents, (ii) the Rejected Executory Contracts and Unexpired Leases Schedule, (iii) the Retained Causes of Action Schedule, (iv) in the case of an Exit Facility Restructuring, the Exit Mezzanine Loan Agreement, the Exit Mortgage Loan Agreement, and all agreements, documents and instruments delivered or entered into in connection with the Equity Investment, (v) in the case of an Alternative Equity Restructuring, all agreements, documents and instruments delivered or entered into in connection with the Alternative Equity Investment, and (vi) additional documents Filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement, each of which shall be consistent in all respects with, and shall otherwise contain, the terms and conditions set forth in this Plan, and shall be in form and substance acceptable to the Debtors and, (a) in the case of an Exit Facility Restructuring, the Exit Mezzanine Lender and Exit Mortgage Lender or (b) in the case of an Alternative Equity Restructuring, Shoreview JV LP.

105. "Prime" means PFP VII SUB VIII, LLC and its successors, assigns, Affiliates and anyone claiming by or through them.

106. "Priority Tax Claim" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

107. "Property" means the 216-unit multifamily residential development in Bradenton, Florida, known as the Shoreview Waterfront Apartments, owned by the Mortgage Debtors as tenants in common.

108. "Property Manager" means Resprop Management Company, LLC.

109. "Pro Rata" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

110. "Professional" means an Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

111. "Professional Claim" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

112. "Professional Claim Escrow Account" means an interest-bearing escrow account in an amount equal to the Professional Claim Reserve Amount funded and maintained by the

Reorganized Debtors after the Effective Date solely for purposes of paying Allowed but unpaid Professional Claims.

113.    "Professional Claim Reserve Amount" means the aggregate amount of Allowed and estimated Professional Claims on account of Professionals (including, for the avoidance of doubt, any transaction fees of financial advisors and/or mortgage brokers) incurred upon, and after giving effect to the occurrence of, the Effective Date to be paid by the Debtors' estates *less* the total of any retainers held by the Professionals.

114.    "Proof of Claim" a proof means of claim Filed against any of the Debtors in the Chapter 11 Cases.

115.    "Reinstate," "Reinstated," or "Reinstatement" means, with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code.

116.    "Rejected Executory Contracts and Unexpired Leases Schedule" means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to this Plan, which schedule shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time; *provided* that such schedule shall be in form and substance acceptable to the Debtors and the Exit Facility Lenders.

117.    "Rejection Damages Claim" means a Claim arising from the rejection of an Executory Contract or Unexpired Lease for which the holder is required to file a Proof of Claim pursuant to Article VI of this Plan.

118.    "Related Party" means each of, and in each case in its capacity as such, current and former directors, managers, officers, committee members, members of any governing body, advisory board members, members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, management companies, fund advisors or managers, predecessors, participants, successors, assigns, representatives, subsidiaries, Affiliates, partners, limited partners, general partners, principals, employees, agents, trustees, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an entity), accountants, investment bankers, investment advisors, consultants, and other professionals and advisors and any such Related Party's respective heirs, executors, estates, and nominees.

119.    "Released Party" means each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) Pearlmark; (d) Prime; (e) each lender under the Exit Facilities or the sponsor(s) of the Alternative Equity Investment; (f) each current and former Affiliate of each Entity in clause (a) through the following clause (g); and (g) each Related Party of each Entity in clause (a) through this clause (g); *provided* that, in each case, an Entity shall not be a Released Party if it (x) elects to opt out of the releases provided by this Plan or (y) timely objects to the releases provided by this Plan through a formal objection Filed on the docket of the Chapter 11 Cases that is not resolved before Confirmation.

120.   "<u>Releasing Parties</u>" means each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) Pearlmark; (d) Prime; (e) each lender under the Exit Facilities or the sponsor(s) of the Alternative Equity Investment; (f) any statutory committee appointed in these Chapter 11 Cases and its members; (g) all Holders of Claims or Interests that vote to accept this Plan and who do not affirmatively opt out of the releases provided in this Plan; (h) all Holders of Claims or Interests that are deemed to accept this Plan and who do not affirmatively opt out of the releases provided in this Plan; (i) all Holders of Claims or Interests that vote to reject this Plan or are deemed to reject this Plan and who do not affirmatively opt out of the releases provided by the Plan; (j) all Holders of Claims or Interests whose vote to accept or reject this Plan is solicited but who do not vote either to accept or to reject this Plan and do not affirmatively opt out of the releases provided in the Plan; (k) each current and former Affiliate of each Entity in clause (a) through the following clause (l); and (l) each Related Party of each Entity in clause (a) through this clause (l) solely to the extent such Related Party may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clause (a) through clause (l); *provided* that, in each case, an Entity shall not be a Releasing Party if it (x) elects to opt out of the Third-Party Release or (y) timely objects to the Third-Party Release through a formal objection Filed on the docket of the Chapter 11 Cases that is not resolved before Confirmation.

121.   "<u>Reorganized Debtors</u>" means a Debtor, or any successor or assign thereto, by merger, consolidation, or otherwise, on and after the Effective Date.

122.   "<u>Restructuring Transactions</u>" means all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan, whether through either the Exit Facility Restructuring or the Alternative Equity Restructuring, including the indefeasible payment in full in Cash of the Allowed Mortgage Loan Claim and the Allowed Mezzanine Loan Claim in accordance with the terms of this Plan, the Confirmation Order, the Exit Facilities or the Alternative Equity Investment, as applicable, and the issuance of all securities, notes, instruments, certificates, and other documents required to be issued pursuant to this Plan, in each case in a manner acceptable to the Debtors, Prime, and, (a) in the case of an Exit Facility Restructuring, the Exit Mezzanine Lender and Exit Mortgage Lender or (b) in the case of an Alternative Equity Restructuring, Shoreview JV LP. The Mortgage Lender shall apply the amounts held by it in the Cash Management Account, other amounts held by it in capital expenditure tax, and insurance reserves, and payments made to it on account of its Adequate Protection Claims to reduce the amounts due to it on account of its Allowed Mortgage Loan Claim.

123.   "<u>Retained Causes of Action Schedule</u>" means the schedule of specifically enumerated Causes of Action of the Debtors to be retained by the Debtors on and after the Effective Date, as the same may be amended, modified, or supplemented from time to time; *provided* that such schedule shall be in form and substance acceptable to the Debtors.

124.   "<u>SEC</u>" means the United States Securities and Exchange Commission.

125.   "<u>Section 1125(e) Parties</u>" means each of the following, solely in their respective capacities as such: (a) each of the Exculpated Parties; (b) the directors and officers of any of the Debtors; (c) the Reorganized Debtors, (d) each lender under the Exit Facilities, (e) Pearlmark,

13

(f) Prime, and with respect to each of the foregoing, such Entity's Related Parties, each in their capacity as such, to the extent permitted under section 1125(e) of the Bankruptcy Code.

126.    "Secured" means, when referring to a Claim, (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

127.    "Secured Claim" means a Claim: (a) secured by a valid, perfected, and enforceable Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

128.    "Secured Tax Claim" means any Secured Claim that, absent its Secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

129.    "Securities Act" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a-77aa, or any similar federal, state, or local law.

130.    "Security" means any security, as defined in section 2(a)(1) of the Securities Act.

131.    "Unexpired Lease" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

132.    "Unimpaired" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Impaired.

B.    Rules of Interpretation

For purposes of this Plan, unless otherwise provided herein: (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (2) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (3) any reference herein to an existing document, schedule, exhibit, or annex, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, exhibit, or annex, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (6) all references in this Plan to Articles or Section are references to Articles or Sections of this Plan, as the same may be amended, waived or modified from time to time in accordance with the terms hereof; (7) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular Article, Section, paragraph, or clause contained in this Plan; (8) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation and shall be deemed to be followed by the words "without limitation;" (9) subject to the provisions of any

14

contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising pursuant to this Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (10) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) any immaterial effectuating provisions may be interpreted by the Reorganized Debtors, with the reasonable consent of Prime (until the Allowed Mortgage Loan Claim is indefeasibly paid in full), the Exit Mezzanine Lender and Exit Mortgage Lender, in such a manner that is consistent with the overall purpose and intent of this Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (13) captions and headings to Articles or Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; and (14) any reference to an Entity's "subsidiaries" means its direct and indirect subsidiaries.

C.    Computation of Time

In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply. In the event that any payment, distribution, act or deadline under this Plan is required to be made or performed or occurs on a day that is not a Business Day, then such payment, distribution, act or deadline shall be deemed to occur on the next succeeding Business Day, but if so made, performed or completed by such next succeeding Business Day, shall be deemed to have been completed or to have occurred as of the required date. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.    Reference to Monetary Figures

All references in this Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

E.    Reference to the Debtors or the Reorganized Debtors

Except as otherwise specifically provided in this Plan to the contrary, references in this Plan to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

F.    Controlling Document

Except as set forth in this Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in this Plan (or any exhibits, annexes, schedules, appendices, supplements, or amendments to any of the foregoing), conflicts with or is in any way inconsistent with any provision of this Plan, this Plan

15

shall govern and control. In the event of an inconsistency between the Confirmation Order and this Plan, the Confirmation Order shall control.

G.      Incorporation

Notwithstanding anything herein to the contrary, all exhibits and annexes to this Plan, the Plan Supplement, and all other Definitive Documentation, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Section I.A hereof) and fully enforceable as if stated in full herein.

## ARTICLE II.
## ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY CLAIMS, AND RESTRUCTURING EXPENSES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

A.      General Administrative Expense Claims

Unless otherwise agreed to by the Holder of an Allowed General Administrative Expense Claim and, in the event of an Exit Facility Restructuring, with the reasonable consent of the Exit Mezzanine Lender and Exit Mortgage Lender, the Debtors or the Reorganized Debtors, as applicable, each Holder of an Allowed General Administrative Expense Claim will receive in full and final satisfaction of its General Administrative Expense Claim, at the option of the Debtors (with, in the event of an exit Facility Restructuring, the reasonable consent of the Exit Mezzanine Lender and Exit Mortgage Lender,), (A) an amount of Cash equal to the unpaid amount of such Allowed Administrative Expense Claim in accordance with the following: (1) if a General Administrative Expense Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed General Administrative Expense Claim is due or as soon as reasonably practicable thereafter); (2) if such General Administrative Expense Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such General Administrative Expense Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed General Administrative Expense Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed General Administrative Expense Claim without any further action by the Holders of such Allowed General Administrative Expense Claim; (4) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Reorganized Debtors, as applicable (with the reasonable consent of the Required Consenting Lenders); or (5) at such time and upon such terms as set forth in an order of the Bankruptcy Court or (B) such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

B.     <u>Professional Claims</u>

     1.      <u>Final Fee Applications and Payment of Professional Claims</u>

All requests for payment of Professional Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be Filed no later than the Administrative Expense Claims Bar Date. The Reorganized Debtors shall pay Professional Claims in Cash in the amount the Bankruptcy Court allows, including from the Professional Claim Escrow Account, which the Reorganized Debtors will establish in trust for the Professionals and fund with Cash equal to the Professional Claim Reserve Amount on the Effective Date.

     2.      <u>Professional Claim Escrow Account</u>

On the Effective Date, the Reorganized Debtors shall fund the Professional Claim Escrow Account with Cash equal to the aggregate Professional Claim Reserve Amount for all Professionals. The Professional Claim Escrow Account shall be maintained in trust for the Professionals. Such funds in the Professional Claim Escrow Account shall not constitute property of the Debtors' Estates or property of the Reorganized Debtors, except as otherwise expressly set forth in the last sentence of this paragraph. The amount of Professional Claims owing to the Professionals on and after the Effective Date shall be paid in Cash to such Professionals from funds held in the Professional Claim Escrow Account, without interest or other earnings therefrom, as soon as reasonably practicable after such Claims are Allowed by a Bankruptcy Court order. When all Allowed Professional Claims have been indefeasibly paid in full, amounts remaining in the Professional Claim Escrow Account, if any, shall revert to the Reorganized Debtors.

     3.      <u>Professional Claim Reserve Amount</u>

Professionals shall reasonably estimate their unpaid Professional Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date, and shall deliver such estimate to the Debtors no later than five days before the Effective Date; *provided*, *however*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of each Professional's final request for payment in the Chapter 11 Cases. If a Professional does not provide an estimate, the Debtors or Reorganized Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

     4.      <u>Post-Confirmation Date Fees and Expenses</u>

Except as otherwise specifically provided in this Plan, from and after the Confirmation Date, the Debtors or Reorganized Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of this Plan and Consummation incurred by the Debtors or Reorganized Debtors. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in

17

the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

C.      Payment of Restructuring Expenses

In the event of an Exit Facility Restructuring, prior to or on the Effective Date, the Debtors shall promptly and indefeasibly pay in full in Cash any and all accrued but unpaid reasonable fees and expenses of the Exit Mezzanine Lender and Exit Mortgage Lender for which the Debtors have received invoices or estimates prior to the Effective Date (in each case whether accrued prepetition or postpetition and to the extent not otherwise paid during the Chapter 11 Cases) without application by any such parties to the Bankruptcy Court, and without notice and a hearing, pursuant to section 1129(a)(4) of the Bankruptcy Code or otherwise. Following the Effective Date, the Reorganized Debtors shall pay the reasonable fees and expenses of the Exit Mezzanine Lender and Exit Mortgage Lender in the ordinary course of business for all reasonable and documented fees incurred in connection with the Chapter 11 Cases, this Plan and the Restructuring Transactions, including the implementation and consummation thereof, without further Bankruptcy Court order.

D.      Priority Tax Claims

Except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtors agree to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

E.      Statutory Fees

All fees payable pursuant to section 1930(a) of the chapter 123 of title 28 of the United States Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by each of the Reorganized Debtors (or the Disbursing Agent on behalf of each of the Reorganized Debtors) for each quarter (including any fraction thereof) until the earlier of entry of a final decree closing such Chapter 11 Cases or an order of dismissal or conversion, whichever comes first.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      Classification of Claims and Interests

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, Confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a) of the Bankruptcy Code. This Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class for purposes of distribution only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date. In

18

accordance with section 1123(a)(1) of the Bankruptcy Code and as described in Article II, the Debtors have not classified Administrative Expense Claims (including Adequate Protection Claims and Professional Claims) and Priority Tax Claims.

The classification of Claims and Interests against the Debtors pursuant to this Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | Mortgage Loan Claim | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 4 | Mezzanine Loan Claim | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 5 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 6 | Intercompany Claims | Impaired/ Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 7 | Existing Mortgage Debtor Equity Interests | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 8 | Existing Mezzanine Debtor Equity Interests | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

B.      Treatment of Claims and Interests

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under this Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Reorganized Debtors and the Holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

     1.      Class 1 – Other Secured Claims

       (a)      *Classification*: Class 1 consists of all Other Secured Claims.

       (b)      *Treatment*: Subject to Article VIII hereof, except to the extent that a Holder of an Allowed Other Secured Claim against any of the Debtors has agreed to less favorable treatment of such Claim, on, or as soon as reasonably practicable after, the later of (i) the Effective Date if such Other Secured Claim is an Allowed Other Secured Claim as of the Effective Date or (ii) the date on which such Other Secured Claim becomes an Allowed Other

19

Secured Claim, each Holder of an Allowed Other Secured Claim shall receive, at the option of the applicable Debtor, in each case:

(i)     Indefeasible payment in full in Cash of its Allowed Other Secured Claim;

(ii)    Reinstatement of its Allowed Other Secured Claim; or

(iii)   such other treatment that renders its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code; *provided*, *however*, that Other Secured Claims arising out of obligations incurred by any Debtor in the ordinary course of business may be paid in the ordinary course of business by such applicable Debtor or Reorganized Debtor in accordance with the terms and conditions of any agreements relating thereto without further notice to or order of the Bankruptcy Court.

(c)     *Voting*: Class 1 is Unimpaired under this Plan. Holders of Claims in Class 1 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

2.      Class 2 – Other Priority Claims

(a)     *Classification*: Class 2 consists of all Other Priority Claims.

(b)     *Treatment*: Subject to Article VIII hereof, except to the extent that a Holder of an Allowed Other Priority Claim against any of the Debtors has agreed to less favorable treatment of such Claim, on, or as soon as reasonably practicable after, the later of (i) the Effective Date if such Other Priority Claim is an Allowed Other Priority Claim as of the Effective Date or (ii) the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall receive, at the option of the applicable Debtor, in each case:

(i)     Indefeasible payment in full in Cash of its Allowed Other Priority Claim;

(ii)    Reinstatement of its Allowed Other Priority Claim; or

(iii)   such other treatment that renders its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code; *provided*, *however*, that Other Priority Claims arising out of obligations incurred by any Debtor in the ordinary course of business may be paid in the ordinary course of business by such applicable Debtor or Reorganized Debtor in accordance with the

20

terms and conditions of any agreements relating thereto without further notice to or order of the Bankruptcy Court.

(c) *Voting*: Class 2 is Unimpaired under this Plan. Holders of Claims in Class 2 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

3. Class 3 – Mortgage Loan Claim

(a) *Classification*: Class 3 consists of the Mortgage Loan Claim.

(b) *Allowance*: As of the date hereof, pursuant hereto and the Cash Collateral Order, the Mortgage Lender shall have an Allowed Claim, without avoidance, disallowance, recharacterization, subordination (whether equitable, contractual, or otherwise), attachment, counterclaim, defense, impairment, Claim, offset, recoupment, reduction, deduction or any other challenge of any kind by any Person or Entity, against the Debtors' estates in the amount of the Mortgage Loan Claim, including without limitation postpetition interest on such Claim at the default rate plus all other fees, expenses and charges due under the Mortgage Loan Documents, including without limitation the Mortgage Lender's prepetition and postpetition professional fees and expenses.

(c) *Treatment*: On the Effective Date, the Debtors shall indefeasibly pay in full to the Mortgage Lender or its designee in Cash the Allowed Mortgage Loan Claim in full and final satisfaction, compromise, settlement and release of such claim without avoidance, disallowance, recharacterization, subordination (whether equitable, contractual, or otherwise), attachment, counterclaim, defense, impairment, Claim, offset, recoupment, reduction, deduction or any other challenge of any kind by any Person or Entity. The Mortgage Lender shall apply the amounts held by it in the Cash Management Account, other amounts held by it in capital expenditure tax, and insurance reserves, and payments made to it on account of its Adequate Protection Claims to reduce the amounts due to it on account of its Allowed Mortgage Loan Claim. Following the Debtors' indefeasible payment in full of the Allowed Mortgage Loan Claim, and only thereafter, shall the Mortgage Lender release all Liens securing the Mortgage Loan Claim, including, but not limited to, those Liens pursuant to the Mortgage Loan Documents.

(d) *Voting*: Class 3 is Unimpaired under this Plan. Holders of Claims in Class 3 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

317391044v1

4.      Class 4 – Mezzanine Loan Claim

(a)      *Classification*: Class 4 consists of all Mezzanine Loan Claim.

(b)      *Allowance*: As defined in the Agreed Lift Stay Order and subject to the same terms and conditions set forth in the Agreed Lift Stay Order, the Mezzanine Loan Claim shall be Allowed without offset, recoupment, reductions, or deductions of any kind in the amount of $13,664,126.37, without any accrued and unpaid interest payable, fees, or costs on such amounts through the date that each Holder of an Allowed Mezzanine Loan Claim receives the treatment provided under this Plan.

(c)      *Treatment*: On or before the Payment Deadline (as defined in the Agreed Lift Stay Order) and subject to the same terms and conditions set forth in the Agreed Lift Stay Order, the Mezzanine Lender will receive indefeasible payment in full in Cash of its Allowed Mezzanine Loan Claim in full and final satisfaction, compromise, settlement and release of such claims without offset, recoupment, reductions, or deductions of any kind, and the Mezzanine Lender shall release all Liens securing the Mezzanine Loan Claims, including, but not limited to, those Liens pursuant to the Mezzanine Loan Documents, and release all claims against any guarantors under the Mezzanine Loan Documents.

(d)      *Voting*: Class 4 is Unimpaired under this Plan. Holders of Claims in Class 4 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject this Plan.

5.      Class 5 – General Unsecured Claims

(a)      *Classification*: Class 5 consists of all General Unsecured Claims against the Debtors.

(b)      *Treatment*: The legal, equitable, and contractual rights of the Holders of General Unsecured Claims are unaltered by this Plan. On or as soon as practicable after the earliest to occur of the Effective Date and the date such Claim becomes due in the ordinary course of business, each Holder of an Allowed General Unsecured Claim shall receive indefeasible payment in full in Cash on account of its Allowed General Unsecured Claim or such other treatment as would render such Claim Unimpaired (in each case except to the extent that a holder of a General Unsecured Claim agrees to less favorable treatment with the prior written consent of the Exit Facility Lenders).

(c)      *Voting*: Class 5 is Unimpaired under this Plan. Holders of Claims in Class 5 are conclusively presumed to have accepted this Plan pursuant to section

22

1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

6.    Class 6 – Intercompany Claims

   (a)    *Classification*: Class 6 consists of all Intercompany Claims.

   (b)    *Treatment*: On the Effective Date, each Intercompany Claim shall be, at the option of the applicable Debtor, either:

      (i)    Reinstated on the Effective Date; or

      (ii)   canceled, released, and extinguished, and will be of no further force or effect without any distribution.

   (c)    *Voting*: Pursuant to sections 1126(f) and 1126(g) of the Bankruptcy Code, Holders of Intercompany Claims against the Debtors are not entitled to vote to accept or reject this Plan.

7.    Class 7 – Existing Mortgage Debtor Equity Interests

   (a)    *Classification*: Class 7 consists of all Existing Mortgage Debtor Equity Interests.

   (b)    *Treatment*: On the Effective Date, each of the Mortgage Debtors shall contribute 100% of their Existing Equity Interests to Reorganized Shoreview Holding, which shall be subject to dilution by the Equity Investment, and 100% of the respective interests in the Property to Reorganized Debtor Shoreview Holding.

   (c)    *Voting*: Class 7 is Unimpaired under this Plan. Holders of Existing Mortgage Debtor Equity Interests in Class 7 are deemed to accept this Plan.

8.    Class 8 – Existing Mezzanine Debtor Equity Interests

   (a)    *Classification*:  Class 8 consists of all Existing Mezzanine Debtor Equity Interests.

   (b)    *Treatment*:  On the Effective Date, each of the Mezzanine Debtors shall contribute 100% of their Existing Equity Interests to Shoreview JV LP, which shall be subordinate to the Equity Investment.

   (c)    *Voting*: Class 8 is Unimpaired under this Plan. Holders of Existing Mezzanine Debtor Equity Interests in Class 8 are deemed to accept this Plan.

C.    <u>Special Provision Governing Unimpaired Claims</u>

23

Except as otherwise provided in this Plan, nothing under this Plan shall affect or limit the Debtors' or the Reorganized Debtors' rights and defenses (whether legal or equitable) regarding any Unimpaired or Reinstated Claim, including, without limitation, all rights regarding legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired or Reinstated Claim.

D.     Elimination of Vacant Classes

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.     Controversy Concerning Impairment

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

F.     Subordinated Claims

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests (as applicable) and the respective distributions and treatments under this Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtors reserve the right to re-classify any Allowed Claim or Allowed Interest (as applicable) in accordance with any contractual, legal, or equitable subordination relating thereto.

G.     Discharge of Claims

Pursuant to section 1141(c) of the Bankruptcy Code, all Claims and Interests that are not expressly provided for and preserved herein (or in any contract, instrument, release or other agreement or document created pursuant to this Plan) shall be discharged and extinguished upon the Effective Date, and the Debtors and all property dealt with herein shall be free and clear of all such Claims and Interests, including, without limitation, liens, security interests and any and all other encumbrances.

## ARTICLE IV.
## ACCEPTANCE OR REJECTION OF PLAN

A.     Presumed Acceptance by Non-Voting Classes

No Classes of Claims or Interests are Impaired under the Plan. Accordingly, each Class is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

24

B.      Voting Classes

No Classes of Claims or Interests are Impaired under the Plan.  Accordingly, not Classes of Claims or Interests are entitled to vote to accept or reject the Plan.

C.      Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code

As no Classes of Claims or Interests are Impaired under the Plan, section 1129(a)(10) of the Bankruptcy Code is in applicable for the purposes of Confirmation. The Debtors reserve the right to modify this Plan in accordance with Article XI hereof to the extent that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules. If a controversy arises as to whether any Claims or Interests, or any class of Claims or Interests, are Impaired, the Court shall, after notice and a hearing, determine such controversy on or before Confirmation.

## ARTICLE V.
## MEANS FOR IMPLEMENTATION OF THIS PLAN

A.      No Substantive Consolidation

This Plan is being proposed as a joint plan of reorganization of the Debtors for administrative purposes only and constitutes a separate chapter 11 plan or reorganization of each Debtor. This Plan is not premised upon the substantive consolidation of the Debtors with respect to the Classes of Claims or Interests set forth in this Plan; *provided* that the Reorganized Debtors may consolidate Allowed Claims on a per Class basis for voting purposes.

B.      General Settlement of Claims and Interests

As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to this Plan, including (1) any challenge to the amount, validity, perfection, enforceability, priority or extent of the Mezzanine Loan Claim or Mortgage Loan Claim, and (2) any claim to avoid, subordinate, or disallow any Mezzanine Loan Claim or Mortgage Loan Claim, whether under any provision of chapter 5 of the Bankruptcy Code, on any equitable theory (including equitable subordination, equitable disallowance, or unjust enrichment) or otherwise. This Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable and in the best interests of the Debtors and their Estates. Subject to Article VII hereof, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

C.      Restructuring Transactions

On or before the Effective Date, the applicable Debtors or the Reorganized Debtors and NewCo, as applicable, shall enter into and shall take any actions as may be necessary or appropriate to effect either the Alternative Equity Restructuring or the Exit Facility Restructuring, subject to the consent of the Exit Facility Lenders or Shoreview JV LP, as applicable.

The actions to implement either the Alternative Equity Restructuring or the Exit Facility Restructuring may include, among other things: (1) the execution and delivery of appropriate agreements or other documents that are consistent with the terms of this Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, contribution, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of this Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; and (4) all other actions that the applicable Entities determine to be necessary, including making filings or recordings that may be required by applicable law in connection with this Plan. The Confirmation Order shall, and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize and approve, among other things, the Restructuring Transactions and all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate this Plan.

D.    Reorganized Debtors

On the Effective Date, Reorganized Shoreview Holding LLC shall adopt its New Organizational Documents, which shall be consistent with this Plan. Reorganized Debtors and NewCo, as applicable, shall be authorized to adopt any other agreements, documents, and instruments and to take any other actions contemplated under this Plan as necessary to consummate this Plan. Cash payments to be made pursuant to this Plan will be made by the Debtors or Reorganized Debtors, as applicable. The Debtors and Reorganized Debtors, as applicable, will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Debtors or Reorganized Debtors, as applicable, to satisfy their obligations under this Plan. Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices and will not violate the terms of this Plan.

From and after the Effective Date, the Reorganized Debtors and NewCo, as applicable, subject to any applicable limitations set forth in the Definitive Documentation, shall have the right and authority without further order of the Bankruptcy Court to raise additional capital and obtain additional financing as the boards of directors or members of the Reorganized Debtors and NewCo, as applicable, deems appropriate.

E.    Sources for Plan Distributions

The Debtors, the Reorganized Debtors and NewCo, as applicable, shall fund distributions under this Plan with: (1) Cash on hand, including Cash from operations and Cash in the Cash

Management Account and in insurance, tax, and capital expenditure reserves held by Prime pursuant to the Mortgage Loan Documents and (2) proceeds from the Exit Facilities.

1.  <u>Exit Facilities</u>

Unless the Debtors determine that the pursuit of the Alternative Equity Restructuring is in the best interests of the Debtors' Estates and their stakeholders, on the Effective Date, Reorganized Shoreview Holding LLC shall enter into the Exit Facilities, the terms of which will be set forth in the Exit Facilities Documents.

In accordance with the terms and conditions set forth in the Exit Facilities Documents, and to the extent applicable, Confirmation of this Plan shall be deemed (a) an approval of the Exit Mortgage Loan and Exit Mezzanine Loan (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees paid (at any time) by the Debtors, New Mezzanine Borrower or Reorganized Shoreview Holding LLC, as applicable, in connection therewith and subject to all conditions set forth therein), to the extent not approved by the Bankruptcy Court previously, and (b) an authorization for the Debtors, New Mezzanine Borrower or Reorganized Shoreview Holding LLC, as applicable, to, without further notice to or order of the Bankruptcy Court, (i) execute and deliver those documents necessary or appropriate to obtain the Exit Facilities, including the Exit Mortgage Loan and Exit Mezzanine Loan and (ii) act or take action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the Debtors, New Mezzanine Borrower or Reorganized Shoreview Holding LLC, as applicable, may deem to be necessary to consummate the Exit Facilities.

On the Effective Date, the Exit Facilities Documents shall constitute legal, valid, binding, and authorized obligations of Reorganized Shoreview Holding LLC or New Mezzanine Borrower, as applicable, enforceable in accordance with their respective terms. The financial accommodations to be extended pursuant to the Exit Facilities Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law. On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Facilities Documents (1) shall be deemed to be granted, (2) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Facilities Documents, (3) shall be deemed automatically perfected on the Effective Date (without any further action being required by the Debtors, New Mezzanine Borrower, Reorganized Shoreview Holding LLC, or any of the applicable Exit Facility Lenders), having the priority set forth in the Exit Facilities Documents and subject only to such Liens and security interests as may be permitted under the Exit Facilities Documents, and (4) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law. Reorganized Shoreview Holding LLC, New Mezzanine Borrower and any other the Entity  granted such Liens and security interests are

27

authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of this Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.  For the avoidance of doubt, the Liens of the Mortgage Lender and Mezzanine Lender shall not be released and shall remain in full force and effect and senior to the Liens of the Exit Facility Lenders until the Allowed Mortgage Loan Claim and the Allowed Mezzanine Loan Claim are indefeasibly paid in full.

     2.     <u>Alternative Equity Restructuring</u>

Upon the Debtors' election to pursue the Alternative Equity Restructuring and Filing of the Alternative Equity Restructuring Notice, on the Effective Date, Reorganized Shoreview Holding LLC shall issue (or caused to be issued) New Equity Interests in connection with the Alternative Equity Investment, pursuant to the Alternative Equity Restructuring.

In accordance with the terms and conditions set forth in the Definitive Documentation with respect to the Alternative Equity Investment, and to the extent applicable, Confirmation of this Plan shall be deemed (a) an approval of the Alternative Equity Investment (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees paid (at any time) by the Debtors or Reorganized Shoreview Holding LLC, as applicable, in connection therewith and subject to all conditions set forth therein), to the extent not approved by the Bankruptcy Court previously, and (b) an authorization for the Debtors or Reorganized Shoreview Holding LLC, as applicable, to, without further notice to or order of the Bankruptcy Court, (i) execute and deliver those documents necessary or appropriate to obtain the Alternative Equity Investment and (ii) act or take action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the Debtors or Reorganized Shoreview Holding LLC, as applicable, may deem to be necessary to consummate the Alternative Equity Restructuring.

F.     <u>New Equity Interests</u>

The issuance of the New Equity Interests by Reorganized Shoreview Holding LLC, shall be authorized without any further action by the Holders of Claims or Interests. The Reorganized Debtors and NewCo, as applicable, shall be authorized to issue a certain number of New Equity Interests issued under this Plan and pursuant to their New Organizational Documents. On the Effective Date, the New Equity Interests in Reorganized Shoreview Holding LLC shall be issued to Shoreview JV LP on account of: (i), in the case of an Exit Facility Restructuring, the Equity Investment in accordance with the Plan, or (ii) in case of an Alternative Equity Restructuring, the Alternative Equity Investment in accordance with the Plan,  which New Equity Interests shall be duly authorized, validly issued, fully paid and non-assessable when issued. On the Effective Date, the Debtors or Reorganized Debtors, as applicable, shall issue all Securities, notes, instruments, certificates, and other documents required to be issued pursuant to this Plan.

All of the New Equity Interests issued pursuant to this Plan shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance referred to herein shall be governed by the terms and conditions set forth in this Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

G.    Corporate Existence

Except as otherwise provided in this Plan or any agreement, instrument, or other document incorporated in this Plan or the Plan Supplement, each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other New Organizational Documents) are amended under this Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to this Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law). After the Effective Date, the respective certificate of incorporation and bylaws (or other New Organizational Documents) of one or more of the Reorganized Debtors or NewCo, as applicable, may be amended or modified without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. After the Effective Date, one or more of the Reorganized Debtors and/or NewCo, as applicable, may be disposed of, dissolved, wound down, or liquidated without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

H.    Vesting of Assets in the Reorganized Debtors

Except as otherwise provided in this Plan or any agreement, instrument, or other document incorporated in, or entered into in connection with or pursuant to, this Plan or Plan Supplement, pursuant to sections 1123(a)(5), 1123(b)(3), 1141(b) and (c) and other applicable provisions of the Bankruptcy Code, on or after the Effective Date, all property and assets of each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to this Plan shall vest in each applicable Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances subject to (a) Liens that survive the occurrence of the Effective Date (including, without limitation, Liens that secure the Exit Facilities and all other obligations of the applicable Reorganized Debtors and/or NewCo, as applicable, under the Exit Facilities Documents) and (b) Liens of the Mortgage Lender and the Mezzanine Lender until the Allowed Mortgage Loan Claim and the Allowed Mezzanine Loan Claim are indefeasibly paid in full. On and after the Effective Date, except as otherwise provided in this Plan, each Reorganized Debtor and NewCo, as applicable, may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than restrictions expressly imposed by this Plan or the Confirmation Order.

29

I.       Cancellation of Existing Securities and Agreements

On the Effective Date, except to the extent otherwise provided in this Plan, all notes, instruments, certificates, credit agreements, indentures, and other similar documents evidencing Claims or Interests, shall be cancelled and the obligations of the Debtors thereunder or in any way related thereto shall be deemed satisfied in full, cancelled, discharged, and of no force or effect. Holders of or parties to such canceled instruments, Securities, and other documentation will have no rights arising from or relating to such instruments, Securities, and other documentation, or the cancellation thereof, except the rights provided for pursuant to this Plan. Notwithstanding the occurrence of the Confirmation Date, Effective Date, or anything to the contrary herein, but subject to any applicable provisions of Article VII hereof, the Mezzanine Loan Documents and Mortgage Loan Documents, as applicable, shall continue in effect until the Allowed Mortgage Loan Claim and the Allowed Mezzanine Loan Claim are indefeasibly paid in full and solely to the extent necessary to: (1) permit Holders of Claims under the Mezzanine Loan and Mortgage Loan to receive their respective Plan Distributions, as applicable; (2) permit the Reorganized Debtors, and/or NewCo, as applicable, lenders under the Mezzanine Loan, and lenders under the Mortgage Loan to make or assist in making, as applicable, Plan Distributions on account of the Mezzanine Loan and Mortgage Loan, and deduct therefrom such reasonable compensation, fees, and expenses as may be due. Except as provided in this Plan (including Article VII hereof), on the Effective Date, the Mezzanine Lenders and Mortgage Lenders, and their respective agents, successors, and assigns shall be automatically and fully discharged of all of their duties and obligations associated with the Mezzanine Loan and Mortgage Loan, as applicable. The commitments and obligations (if any) of the Mezzanine Lender and Mortgage Lender to extend any further or future credit or financial accommodations to any of the Debtors, any of their respective subsidiaries, or any of their respective successors or assigns under the Mezzanine Loan and Mortgage Loan, as applicable, shall fully terminate and be of no further force or effect on the Effective Date.

J.       Corporate Action

Upon the Effective Date, all actions contemplated under this Plan shall be deemed authorized and approved in all respects, including: (1) selection of the governing authority of the Reorganized Shoreview Holding LLC; (2) the issuance and distribution of the New Equity Interests; (3) implementation of the Restructuring Transactions, as applicable; (4) entry into the Exit Facilities Documents, as applicable; (5) all other actions contemplated under this Plan (whether to occur before, on, or after the Effective Date); (6) adoption of the New Organizational Documents; (7) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; and (8) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions contemplated by this Plan (whether to occur before, on, or after the Effective Date). All matters provided for in this Plan involving the corporate structure of the Debtors,  the Reorganized Debtors, or NewCo, and any corporate, partnership, limited liability company, or other governance action required by the Debtors, the Reorganized Debtor or NewCo, as applicable, in connection with this Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the holders of Securities, members, directors, managers, partners or officers of the Debtors, the Reorganized Debtors or NewCo, as applicable, unless otherwise required by

30

applicable law. On or prior to the Effective Date, as applicable, the appropriate officers, managers or partners of the Debtors, the Reorganized Debtors or NewCo, as applicable, shall be authorized and directed to issue, execute, and deliver the agreements, documents, Securities, and instruments contemplated under this Plan (or necessary or desirable to effect the Restructuring Transactions contemplated under this Plan) in the name of and on behalf of the Reorganized Debtors, including the New Equity Interests, the New Organizational Documents, the Exit Facilities Documents, as applicable, and any and all other agreements, documents, Securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Section V.J shall be effective notwithstanding any requirements under non-bankruptcy law, in each case in accordance with applicable law.

K.      New Organizational Documents

On or immediately prior to the Effective Date, the New Organizational Documents shall be automatically adopted by the applicable Reorganized Debtors or NewCo. To the extent required under this Plan or applicable non-bankruptcy law, each of the Reorganized Debtors or NewCo, as applicable, will file its New Organizational Documents, as applicable, with the applicable Secretaries of State and/or other applicable authorities in its respective state or country of organization if and to the extent required in accordance with the applicable laws of the respective state or country of organization. The New Organizational Documents will prohibit the issuance of non-voting equity Securities, to the extent required under section 1123(a)(6) of the Bankruptcy Code. For the avoidance of doubt, the New Organizational Documents shall be consistent with this Plan and in form and substance reasonably acceptable to the Debtors and, in the case of an Exit Facility Restructuring, the Exit Facility Lenders. After the Effective Date, the Reorganized Debtors and NewCo, as applicable,  may amend and restate their respective New Organizational Documents, and the Reorganized Debtors and NewCo, as applicable, may file such amended certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent documents as permitted by the laws of the respective states, provinces, or countries of incorporation and the New Organizational Documents, in each case in accordance with applicable law.

L.      Indemnification Provisions in Organizational Documents

As of the Effective Date, the New Organizational Documents of each Reorganized Debtor shall, to the fullest extent permitted by applicable law, provide for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of, and advancement of fees and expenses to, current and former managers, directors, officers, employees, or agents at least to the same extent as the certificate of incorporation, bylaws, or similar organizational document of each of the respective Debtors on the Petition Date, against any claims or causes of action whether direct or derivative, liquidated or unliquidated, fixed, or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted.

M.      Managers, General Partners, Directors and Officers of the Reorganized Debtors

The governing authority of Reorganized Shoreview Holding LLC shall be appointed in compliance with section 1129(a)(5) of the Bankruptcy Code. To the extent known, the identity of

31

the members of the governing authority of Reorganized Shoreview Holding LLC will be disclosed in the Plan Supplement or prior to the Confirmation Hearing, consistent with section 1129(a)(5) of the Bankruptcy Code.

Each manager, general partner, director and/or officer of any Reorganized Debtors and NewCo, as applicable, shall serve from and after the Effective Date pursuant to the terms of the applicable New Organizational Documents and other constituent documents. In subsequent terms, the managers, general partners, directors and officers of the Reorganized Debtors shall be selected in accordance with the New Organizational Documents.

N.      Effectuating Documents; Further Transactions

On and after the Effective Date, the Reorganized Debtors, and their respective general partners, officers, directors, members, or managers (as applicable), are authorized to and may issue, execute, deliver, File, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan and the Securities issued pursuant to this Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to this Plan.

O.      Section 1146 Exemption

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under or in connection with this Plan, including pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity Security, or other interest in the Debtors or the Reorganized Debtors; (2) the Restructuring Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; (5) the grant of collateral as security for the Reorganized Debtors' obligations under and in connection with the Exit Facilities; or (6) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146 of the Bankruptcy Code, shall forego the collection of any such tax

32

or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

P.      Preservation of Causes of Action

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article IX hereof, each Reorganized Debtor, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors, whether arising before or after the Petition Date, including any actions specifically enumerated in the Retained Causes of Action Schedule, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than (i) the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in this Plan, including in Article IX hereof, and (ii) any preference actions under section 547(b) of the Bankruptcy Code, which shall be deemed released and waived by the Debtors and the Reorganized Debtors as of the Effective Date.

The Reorganized Debtors may pursue such retained Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. **No Entity (other than the Released Parties) may rely on the absence of a specific reference in this Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action of the Debtors against it. The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in this Plan, including Article IX hereof. Unless otherwise agreed upon in writing by the parties to the applicable Cause of Action, all objections to the Retained Causes of Action Schedule must be Filed with the Bankruptcy Court on or before thirty (30) days after the Effective Date. Any such objection that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion against any Reorganized Debtor, without the need for any objection or responsive pleading by the Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.** The Reorganized Debtors may settle any such objection without any further notice to or action, order, or approval of the Bankruptcy Court. If there is any dispute regarding the inclusion of any Cause of Action on the Retained Causes of Action Schedule that remains unresolved by the Debtors or Reorganized Debtors, as applicable, and the objection party for thirty (30) days, such objection shall be resolved by the Bankruptcy Court. Unless any Causes of Action of the Debtors against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in this Plan (including in Article IX hereof) or a Final Order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Reorganized Debtors reserve and shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to this Plan. In accordance with section 1123(b)(3) of the

33

Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors, except as otherwise expressly provided in this Plan, including Article IX hereof. The applicable Reorganized Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, File, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. For the avoidance of doubt, no Causes of Action are preserved against the Mortgage Lender, the Mezzanine Lender, or their Related Parties under this Plan and all such claims are released and waived as herein provided.

## ARTICLE VI.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>

On the Effective Date, except as otherwise provided in Section VI.H.1 and elsewhere herein, all Executory Contracts or Unexpired Leases not otherwise assumed or rejected will be deemed assumed by the applicable Reorganized Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that: (1) are identified on the Rejected Executory Contracts and Unexpired Leases Schedule; (2) previously expired or terminated pursuant to their own terms; (3) have been previously assumed or rejected by the Debtors pursuant to a Final Order; (4) are the subject of a motion to reject that is pending on the Effective Date; or (5) have an ordered or requested effective date of rejection that is after the Effective Date.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in this Plan or the Rejected Executory Contracts and Unexpired Leases Schedule, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Except as otherwise specifically set forth herein, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to this Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to this Plan or by Final Order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of this Plan or any Final Order authorizing and providing for its assumption. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by the Reorganized Debtors.

To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to this Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the

34

transactions contemplated by this Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Notwithstanding anything to the contrary in this Plan, the Debtors or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Rejected Executory Contracts and Unexpired Leases Schedule at any time up to thirty (30) days after the Effective Date, so long as such allocation, amendment, modification, or supplement is acceptable to the Exit Facility Lenders.

B.     Indemnification Obligations

On the Effective Date, all Indemnification Provisions shall be deemed and treated as Executory Contracts that are and shall be assumed by the Debtors (and assigned to the applicable Reorganized Debtors, if necessary) on terms no less favorable to the applicable counterparty pursuant to section 365(a) and section 1123 of the Bankruptcy Code as to which no proof of Claim, request for administrative expense, or cure claim need be Filed, and all Claims arising from the Indemnification Provisions shall survive the Effective Date and be Unimpaired. Unless previously effectuated by separate order entered by the Bankruptcy Court, entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' assumption of each of the Indemnification Provisions. Confirmation and Consummation of this Plan shall not impair or otherwise modify any available defenses of the Reorganized Debtors or other applicable parties under the Indemnification Provisions. For the avoidance of doubt, the Indemnification Provisions shall continue to apply with respect to actions, or failures to act, that occurred on or prior to the Effective Date, subject to the terms and conditions of the Indemnification Provisions.

C.     Claims Based on Rejection of Executory Contracts or Unexpired Leases

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Rejection Damages Claims, pursuant to this Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date. **Any Rejection Damages Claims not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Rejection Damage Claim shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Proof of Claim to the contrary.** All Allowed Rejection Damages Claims shall be classified as General Unsecured Claims and shall be treated in accordance with Section III.B.5 of this Plan.

D.     Cure of Defaults for Assumed Executory Contracts and Unexpired Leases

The Debtors or the Reorganized Debtors, as applicable, shall pay Cures, if any, on the Effective Date or as soon as reasonably practicable thereafter. Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure that differ from the amounts paid or proposed to be paid by the Debtors or the

Reorganized Debtors to a counterparty must be Filed with the Bankruptcy Court on or before thirty (30) days after the Effective Date. Any such request that is not timely filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court. Any Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Reorganized Debtors of the Cure; provided that nothing herein shall prevent the Reorganized Debtors from paying any Cure despite the failure of the relevant counterparty to File such request for payment of such Cure. The Reorganized Debtors also may settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court. In addition, any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan, must be Filed with the Bankruptcy Court on or before thirty (30) days after the Effective Date. Any such objection will be scheduled to be heard by the Bankruptcy Court at the Debtors' or Reorganized Debtors', as applicable, first scheduled omnibus hearing for which such objection is timely filed. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.

If there is any dispute regarding any Cure, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of further performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors or the Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.

Assumption of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise and full payment of any applicable Cure pursuant to this Section VI.D shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, and for which any Cure has been fully paid pursuant to this Section VI.D, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.

E.      Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases

Rejection of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Reorganized Debtors, as applicable, under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to

36

provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts or Unexpired Leases.

F.      Insurance Policies

Notwithstanding anything to the contrary in the Definitive Documentation, the Plan Supplement, any other document related to any of the foregoing, or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction or release or requires a party to opt out of any releases): on and after the Effective Date (i) each of the Debtors' Insurance Contracts, if any, shall be treated as Executory Contracts under this Plan and the Debtors and Reorganized Debtors jointly and severally shall be deemed to have assumed the Insurance Contracts pursuant to sections 105 and 365 of the Bankruptcy Code; (ii) nothing shall alter, amend or otherwise modify the terms and conditions of the Insurance Contracts, if any, except that, on and after the Effective Date, the Reorganized Debtors shall become and remain jointly and severally liable in full for all of their and the Debtors' obligations under the Insurance Contracts, regardless of whether such obligations arise before or after the Effective Date, without the requirement or need for any Insurer to file a Proof of Claim or an Administrative Expense Claim, or to object to any Cure; and (iii) the automatic stay of Bankruptcy Code section 362(a) and the injunction set forth in Section IX.F hereof, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit: (a) claimants with valid workers' compensation claims or with valid direct action claims against an Insurer under applicable non-bankruptcy law to proceed with their claims; (b) Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (1) claims where a claimant asserts a direct claim against any Insurer under applicable non-bankruptcy law, or an order has been entered by this Bankruptcy Court granting a claimant relief from the automatic stay or the injunction set forth in Section IX.F hereof to proceed with its claim, and (2) all costs in relation to each of the foregoing; and (c) the Insurers to cancel any Insurance Contracts, and take other actions relating thereto, to the extent permissible under applicable non-bankruptcy law, and in accordance with the terms of the Insurance Contracts.

G.      Reservation of Rights

Nothing contained in this Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

H.      Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

I.      Contracts and Leases Entered Into after the Petition Date

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtor or the Reorganized Debtors in the ordinary course of their business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VII.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      Distributions on Account of Claims Allowed as of the Effective Date

Except as otherwise provided herein, in a Final Order, or as otherwise agreed to by the Debtors or the Reorganized Debtors, as the case may be, and the Holder of the applicable Allowed Claim, on the first Distribution Date, the Reorganized Debtors shall make initial distributions under this Plan on account of Claims Allowed as of the Effective Date, subject to the Reorganized Debtors' right to object to Claims; *provided* that (1) Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice; (2) Allowed Professional Claims shall be paid in accordance with Section II.C of this Plan; (3) Allowed Priority Tax Claims shall be paid in accordance with Section II.E of this Plan, and (4) Allowed General Unsecured Claims against Debtors shall be paid in accordance with Section III.B.5 of this Plan. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be indefeasibly paid in full in Cash in accordance with the terms of any agreement between the Debtors and the Holder of such Claim or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

B.      Disbursing Agent

All distributions under this Plan shall be made by the Disbursing Agent. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors.

C.      Rights and Powers of Disbursing Agent

1.      Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent

38

by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.    Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, to the extent the Disbursing Agent is an Entity other than the Reorganized Debtors, the amount of any reasonable fees and expenses incurred by such Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses), made by such Disbursing Agent shall be paid in Cash by the Reorganized Debtors.

D.    Delivery of Distributions and Undeliverable or Unclaimed Distributions

1.    Record Date for Distribution

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date. If a Claim, other than one based on a publicly traded Security, is transferred 20 or fewer days before the Distribution Record Date, the Disbursing Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.    Delivery of Distributions in General

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims and Allowed Interests (as applicable) as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Reorganized Debtors.

3.    Minimum Distributions

No fractional shares of New Equity Interests shall be distributed and no Cash shall be distributed in lieu of such fractional amounts. When any distribution pursuant to this Plan on account of an Allowed Claim would otherwise result in the issuance of a number of shares of New Equity Interests that is not a whole number, the actual distribution of shares of New Equity Interests shall be rounded as follows: (a) fractions of one-half (1/2) or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half (1/2) shall be rounded to the next lower whole number with no further payment therefor. The total number of authorized shares of New Equity Interests to be distributed to Holders of Allowed Claims hereunder shall be adjusted as necessary to account for the foregoing rounding.

4.    Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder of Allowed Claims is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder of Claims to such property or Interest in property shall be discharged and forever barred.

5.     Surrender of Canceled Instruments or Securities

On the Effective Date or as soon as reasonably practicable thereafter, each Holder of a certificate or instrument evidencing a Claim or an Interest shall be deemed to have surrendered such certificate or instrument to the Disbursing Agent. Such surrendered certificate or instrument shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim or Interest or a trustee or agent under such documents, which shall continue in effect for purposes of allowing Holders to receive distributions under this Plan and maintaining priority of payment, and to preserve any applicable charging liens and reimbursement and/or indemnification rights, in each case as set forth in the applicable certificates or instruments. Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims that are Unimpaired under this Plan.

E.     Manner of Payment

All distributions of the New Equity Interests or Cash to the Holders of the applicable Allowed Claims under this Plan shall be made by the Disbursing Agent on behalf of the Debtors or Reorganized Debtors, as applicable.

At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements. The Disbursing Agent shall, however, make Cash payments to the Mortgage Lender and the Mezzanine Lender on account of the Mortgage Loan Claim and the Mezzanine Loan Claim, respectively, solely by wire transfer.

F.     Exemption from Registration Requirements

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the New Equity Interests, as contemplated by Section III.B hereof, shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution, or sale of Securities. In addition, under section 1145 of the Bankruptcy Code, such New Equity Interests will be freely tradable in the U.S. by the recipients thereof, subject to the provisions of (i) section

40

1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act; (ii) compliance with applicable securities laws and any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; and (iii) any restrictions in the Reorganized Debtors' New Organizational Documents.

G.      Compliance with Tax Requirements

In connection with this Plan, to the extent applicable, the Debtors, Reorganized Debtors, Disbursing Agent, and any applicable withholding agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to this Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in this Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they

believe are reasonable and appropriate. The Debtors and Reorganized Debtors reserve the right to allocate all distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

H.      Allocations

Plan Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

I.      No Postpetition Interest on Claims

Unless otherwise specifically provided for in this Plan, the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on such Claim or right. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period form the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes and Allowed Claim.  For the avoidance of doubt, postpetition interest shall accrue and be indefeasibly paid in full in Cash on account of the Mortgage Loan Claim.

J.      Foreign Currency Exchange Rate

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal*, National Edition, on the Effective Date.

K.      Setoffs and Recoupment

Except as expressly provided in this Plan, each Reorganized Debtor may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Reorganized Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Reorganized Debtor(s) and the Holder of the Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided*, *however*, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Reorganized Debtor or its successor of any and all claims, rights, and Causes of Action that such Reorganized Debtor or its successor may possess against the applicable Holder. In no event shall any Holder of a Claim be entitled to recoup such Claim against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Section XIII.F hereof on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

L.      Claims Paid or Payable by Third Parties

1.      Claims Paid by Third Parties

The Debtors or the Reorganized Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives indefeasible payment in full on account of such Claim from a party that is not a Debtor or a Reorganized Debtor. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of such Claim as of the date of any such distribution under this Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen (14) day grace period specified above until the amount is repaid.

2.      Claims Payable by Third Parties

No distributions under this Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Contracts until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Contract. To the extent that one or more of the Debtors' Insurers agrees to indefeasibly pay in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), then immediately upon such Insurers' agreement, the applicable portion of such Claim may be expunged without a

42

Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.       <u>Applicability of Insurance Policies</u>

Except as otherwise provided in this Plan, payments to Holders of Claims covered by Insurance Contracts shall be in accordance with the provisions of the applicable Insurance Contract and this Plan. Nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including Insurers under any Insurance Contract, nor shall anything contained herein constitute or be deemed a waiver by such Insurers of any defenses, including coverage defenses, held by such Insurers.

# ARTICLE VIII.
# PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.     <u>Disputed Claims Process</u>

Notwithstanding section 502(a) of the Bankruptcy Code, and in light of the Unimpaired status of all Allowed General Unsecured Claims under this Plan, except as required by this Plan, Holders of Claims, need not File Proofs of Claim, and the Reorganized Debtors and the Holders of Claims shall determine, adjudicate, and resolve any disputes over the validity and amounts of such Claims in the ordinary course of business as if the Chapter 11 Cases had not been commenced except that (unless expressly waived pursuant to this Plan) the Allowed amount of such Claims shall be subject to the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 and 503 of the Bankruptcy Code, to the extent applicable. All Proofs of Claim filed in the Chapter 11 Cases shall be considered objected to and Disputed without further action by the Debtors. Upon the Effective Date, all Proofs of Claim filed against the Debtors, regardless of the time of filing, and including Proofs of Claim filed after the Effective Date, shall be deemed withdrawn and expunged, other than Rejection Damages Claims and as provided below. Notwithstanding anything in this Plan to the contrary, disputes regarding the amount of any Cure pursuant to section 365 of the Bankruptcy Code and Claims that the Debtors seek to have determined by the Bankruptcy Court, shall in all cases be determined by the Bankruptcy Court.

For the avoidance of doubt, there is no requirement to File a Proof of Claim or Proof of Interest (or move the Bankruptcy Court for allowance) to be an Allowed Claim or Allowed Interest, as applicable, under the Plan. Notwithstanding the foregoing, Entities must File Proofs of Claim for Rejection Damages Claims as set forth in Section VI.C of this Plan and Cure objections as set forth in Section VI.D of this Plan to the extent such Entity disputes the amount of the Cure paid or proposed to be paid by the Debtors or the Reorganized Debtors to a counterparty. **Except as otherwise provided herein, all Proofs of Claim filed after the Effective Date shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court.**

43

B.     Allowance of Claims

Except as otherwise set forth in this Plan, after the Effective Date, the Reorganized Debtors shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim immediately before the Effective Date, including the Causes of Action retained pursuant to Section V.S of this Plan. Except as specifically provided in this Plan or an order entered by the Bankruptcy Court in the Chapter 11 Cases, no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed in accordance with this Plan.

C.     Claims Administration Responsibilities

Except as otherwise specifically provided in this Plan, after the Effective Date, the Reorganized Debtors shall have the sole authority: (1) to File, withdraw, or litigate to judgment, objections to Claims; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

Any objections to Claims and Interests other than General Unsecured Claims shall be served and Filed on or before the 30th day after the Effective Date or by such later date as ordered by the Bankruptcy Court. All Claims and Interests other than General Unsecured Claims not objected to by the end of such 30-day period shall be deemed Allowed unless such period is extended upon approval of the Bankruptcy Court.

Any objections to Rejection Damages Claims shall be served and Filed on or before the 30th day after the Effective Date or by such later date as ordered by the Bankruptcy Court. All Rejection Damages Claims not objected to by the end of such 30-day period shall be deemed Allowed unless such period is extended upon approval of the Bankruptcy Court.

Notwithstanding the foregoing, the Debtors and Reorganized Debtors shall be entitled to dispute and/or otherwise object to any General Unsecured Claim in accordance with applicable nonbankruptcy law. If the Debtors, or Reorganized Debtors dispute any General Unsecured Claim, such dispute shall be determined, resolved, or adjudicated, as the case may be, in the manner as if the Chapter 11 Cases had not been commenced. In any action or proceeding to determine the existence, validity, or amount of any General Unsecured Claim, any and all claims or defenses that could have been asserted by the applicable Debtor(s) or the Entity holding such General Unsecured Claim are preserved as if the Chapter 11 Cases had not been commenced.

D.     Adjustment to Claims without Objection

Any duplicate Claim or any Claim that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Reorganized Debtors without the Reorganized Debtors having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.     Disallowance of Claims or Interests

All Claims of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Reorganized Debtors allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be Disallowed pursuant to section 502(d) of the Bankruptcy Code if: (a) the Entity, on the one hand, and the Debtors or the Reorganized Debtors, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

F.      No Distributions Pending Allowance

Notwithstanding any other provision of this Plan, if any portion of a Claim is a Disputed Claim, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim; *provided* that if only the Allowed amount of an otherwise valid Claim is Disputed, such Claim shall be deemed Allowed in the amount not Disputed and payment or distribution shall be made on account of such undisputed amount.

G.      Distributions after Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution to which such Holder is entitled under this Plan as of the Effective Date, without any interest to be paid on account of such Claim.

## ARTICLE IX.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      Discharge of Claims and Termination of Interests

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in this Plan (including with respect to Reinstated Claims), the Confirmation Order or in any contract, instrument, or other agreement or document created pursuant to this Plan, the distributions, rights, and treatment that are provided in this Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective

45

Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted this Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

B.  Release of Liens

**Except as otherwise provided in this Plan (including Section III.B and Section V.E hereof), the Confirmation Order, or in any contract, instrument, or other agreement or document created pursuant to this Plan (including, for the avoidance of doubt, the Exit Facilities Documents), promptly following the applicable distributions made pursuant to this Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Confirmation Date or Effective Date, as applicable, except for (i) with respect to any Lien securing any Allowed Mezzanine Loan Claim or Mortgage Loan Claim, in each case, that are amended and restated under the Exit Facilities, and (ii) Allowed Other Secured Claims that the Debtors elect to Reinstate in accordance with this Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns. Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Lien, including the execution, delivery, and Filing or recording of such releases. The presentation or Filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

**To the extent that any Holder of a Secured Claim, including a Holder of any Mezzanine Loan Claim or Mortgage Loan Claim, that has been satisfied or discharged in full pursuant to this Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps reasonably requested by the Debtors, the Reorganized Debtors, if any, that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.**

C.  Releases by the Debtors and their Estates (the "Debtor Release")

Effective as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration (including, without limitation, the service of the Released Parties to facilitate the expeditious reorganization of the Debtors, the implementation of the restructuring contemplated by this Plan, and the waiver of certain Claims of certain of the Released Parties against the Debtors) the adequacy of which is hereby confirmed, to the fullest extent allowed by applicable law, each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Debtors, their Estates, and the Reorganized Debtors, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action, and liabilities whatsoever, including any derivative claims, asserted by or assertable on behalf of any of the Debtors, their Estates, or the Reorganized Debtors, as applicable, whether known or unknown, foreseen or unforeseen, matured or unmatured, suspected or unsuspected, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, in law (or any applicable rule, statute, regulation, treaty, right, duty or requirement), equity, contract, tort, violations of federal or state securities laws, or otherwise, that the Debtors, their Estates, or the Reorganized Debtors would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to, the Debtor-Related Matters. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any obligations arising pursuant to or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (b) any Causes of Action included in the Retained Causes of Action Schedule, or (c) actual fraud, willful misconduct, or gross negligence as determined by a Final Order.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in this Plan and, further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the claims or Causes of Action released by the Debtor Release; (c) in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after reasonable investigation by the Debtors and after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, their Estates, or the Reorganized Debtors asserting any claim or Cause of Action released pursuant to the Debtor Release.

D.     Releases by the Releasing Parties (the "*Third-Party Release*")

47

Effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent allowed by applicable law, each of the Releasing Parties shall be deemed to have to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each of the Released Parties from any and all claims, Causes of Action, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, suspected or unsuspected, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, in law (or any applicable rule, statute, regulation, treaty, right, duty or requirement), equity, contract, tort, violations of federal or state securities laws, or otherwise, that such Releasing Party would have been legally entitled to assert in its own right (whether individually or collectively) or otherwise based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to, the Debtor-Related Matters. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) (i) any obligations, which have not been terminated, and are deemed continued, ratified, reaffirmed, amended and restated (including without limitation, any Existing Letters of Credit and any indemnification rights) under the Mezzanine Loan Documents and the Mortgage Loan Documents, as amended and restated by and in accordance with the Exit Mezzanine Loan Documents and the Exit Mortgage Loan Documents), and (ii) any obligations arising pursuant to or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (b) any Causes of Action included in the Retained Causes of Action Schedule, or (c) actual fraud, willful misconduct, or gross negligence as determined by a Final Order.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (d) a good faith settlement and compromise of the claims or Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

E.    Exculpation

Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or the Third-Party Release, and except as otherwise specifically provided in this Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party hereby is exculpated from any obligation, claim or Cause of Action related to, any act or omission in connection with, relating to, or arising out of the negotiation, solicitation, confirmation,

48

execution, or implementation (to the extent on or prior to the Effective Date) of, as applicable, the Debtor-Related Matters except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted bad faith, fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to this Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of securities hereunder. The exculpation hereunder will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability. Notwithstanding anything to the contrary in the foregoing, an Exculpated Party shall be entitled to exculpation solely for actions taken from the Petition Date through the Effective Date, and the exculpation set forth above does not exculpate any obligations arising pursuant to or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Solely with respect to the exculpation provisions, notwithstanding anything to the contrary in this Plan, each of the Section 1125(e) Parties shall not incur liability for any Cause of Action or Claim related to any act or omission in connection with, relating to, or arising out of, in whole or in part, (a) the solicitation of acceptance or rejection of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code or (b) the participation, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under this Plan.

F.   <u>Injunction</u>

Except as otherwise expressly provided in this Plan, or the Confirmation Order, or for obligations issued or required to be paid pursuant this Plan and the Confirmation Order, all Entities and Persons are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Claims or Interests; (b) enforcing, attaching, collecting, or recovering in any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any Claims or Interests; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment, or other similar legal or equitable right of any kind, in each case in the foregoing classes (a) through (d) on account of or in connection with or with respect to any claim, demand, liability, obligation, debt, right, cause of action, equity interest, or remedy released or to be

49

**released, exculpated or to be exculpated, settled or to be settled or discharged or to be discharged pursuant to this Plan or the Confirmation order against any Person or Entity so released, discharged, or exculpated (or the property or estate of any Person or Entity so released, discharged, or exculpated) unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, discharged, or settled pursuant to this Plan. All injunctions or stays provided for in the Chapter 11 Cases under section 105 or section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.**

**Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of this Plan. Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to this Plan, shall be deemed to have consented to the injunction provisions set forth in this Section IX.F.**

G.      Protections against Discriminatory Treatment

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

H.      Waiver of Statutory Limitation on Releases

Each of the Releasing Parties in each of the releases contained above expressly acknowledges that although ordinarily a general release may not extend to Claims which the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, each Releasing Party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of providing the release, which if known by it may have materially affected its settlement with the released party. The releases contained in this Plan are effective regardless of

50

whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

I.      Reimbursement or Contribution

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

J.      Integral Part of Plan

Each of the provisions set forth in this Plan with respect to the settlement, release, discharge, exculpation, injunction, indemnification and insurance of, for or with respect to Claims and/or Causes of Action are an integral part of this Plan and essential to its implementation. Accordingly, each Entity that is a beneficiary of such provision shall have the right to independently seek to enforce such provision and such provision may not be amended, modified, or waived after the Effective Date without the prior written consent of such beneficiary.

# ARTICLE X.
# CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THIS PLAN

A.      Condition Precedent to Confirmation

It shall be a condition to Confirmation of this Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Section X.C hereof:

(a)      This Plan and the Definitive Documentation shall be in form and substance consistent in all material respects with this Plan and otherwise acceptable to the Debtors, Prime, and, in the case of an Exit Facility Restructuring, the Exit Facility Lenders;

(b)      The Plan Supplement shall have been Filed, not later than two days prior to the Confirmation Hearing; and

(c)      The Confirmation Order have been entered by the Bankruptcy Court which shall be in form and substance acceptable to Prime and, in the case of an Exit Facility Restructuring, the Exit Facility Lenders.

B.      Conditions Precedent to the Effective Date

The following shall be conditions to the Effective Date (the "Conditions Precedent"):

51

(a)     the Bankruptcy Court shall have entered the Confirmation Order, which shall be in form and substance acceptable to the Debtors, Prime, and, in the case of an Exit Facility Restructuring, the Exit Facility Lenders, shall be a Final Order, and shall:

   (i)      authorize the Debtors to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with this Plan;

   (ii)     decree that the provisions of the Confirmation Order and this Plan are nonseverable and mutually dependent;

   (iii)    authorize the Debtors, as applicable/necessary, to: (A) implement the Restructuring Transactions, as applicable; (B) distribute the New Equity Interests pursuant to the exemption from registration under the Securities Act provided by section 1145 of the Bankruptcy Code or other exemption from such registration or pursuant to one or more registration statements; (C) make all distributions and issuances as required under this Plan, including Cash and the New Equity Interests; and (D) enter into any agreements, transactions, and sales of property as set forth in this Plan and Plan Supplement, including, in the case of an Exit Facility Restructuring, the Exit Facilities Documents;

   (iv)    authorize the implementation of this Plan in accordance with its terms;

   (v)     provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with this Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under this Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax;

(b)     the Debtors shall have obtained all authorizations, consents, governmental approvals and consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate this Plan;

(c)     this Plan, the Disclosure Statement, and the other Definitive Documentation, and all other documents contained in any supplement to this Plan, including any exhibits, schedules, amendments, modifications, or supplements thereto or other documents contained therein, shall have been executed or Filed, as applicable, in form and substance consistent in all material respects with his Plan, shall be in form and substance acceptable to the Debtors and, in the case of an Exit Facility Restructuring, the Exit Facility Lenders, and shall be in full force and effect;

(d)     in the case of an Exit Facility Restructuring, the Exit Facilities shall be in full force and effect and be consummated concurrently with the Effective Date (with all

52

conditions precedent (other than any conditions related to the Effective Date) to the effectiveness of the Exit Facilities having been satisfied or waived in accordance with the terms thereof, including, but not limited to, that all documents related to the Exit Facilities shall have been duly executed and delivered by all the relevant parties thereto);

(e) the Debtors shall have implemented the Restructuring Transactions, as applicable, and all transactions contemplated by this Plan, in a manner consistent in all respects this Plan, pursuant to documentation acceptable to the Debtors and, in the case of an Exit Facility Restructuring, the Exit Facility Lenders;

(f) this Plan shall not have been materially amended, altered, or modified from this Plan confirmed by the Confirmation Order, unless such material amendment, alteration, or modification has been made in accordance with Article XI of this Plan and is otherwise reasonably acceptable to the Debtors, Prime and, in the case of an Exit Facility Restructuring, the Exit Facility Lenders;

(g) the Debtors shall have paid in Cash to the Mortgage Lender and the Mezzanine Lender the amounts required to indefeasibly pay in full the Allowed Mortgage Loan Claim and the Allowed Mezzanine Loan Claim, respectively; and

(h) each of the foregoing Conditions Precedent shall have been satisfied on or before July, 23, 2025 (or such later date agreed to in writing by Mortgage Lender and Mezzanine Lender).

## C. Waiver of Conditions

The conditions to Confirmation and consummation set forth in this Article X may be waived by the Debtors only with the prior written consent of the Exit Facility Lenders, in the case of an Exit Facility Restructuring, and Prime (email shall suffice), without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan; provided, however, that the Condition Precedent set forth above in Article X.B(h) may be extended with the prior written consent of the Debtors, the Mortgage Lender, and the Mezzanine Lender, without consent from the Exit Facility Lenders, in the case of an Exit Facility Restructuring.

## D. Effect of Failure of Conditions

If Consummation does not occur, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtors, or Claims against, or Interests in, the Debtors; (2) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity.

## E. Substantial Consummation

317391044v1

"Substantial Consummation" of this Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

# ARTICLE XI.
# MODIFICATION, REVOCATION, OR WITHDRAWAL OF THIS PLAN

### A.  Modification and Amendments

Except as otherwise specifically provided in this Plan, with the consent of Prime and the Exit Facility Lenders, the Debtors reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to those restrictions on modifications set forth in this Plan and the requirements of section 1127 of the Bankruptcy Code, Rule 3019 of the Federal Rules of Bankruptcy Procedure, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, each of the Debtors expressly reserves its respective rights to revoke or withdraw, or, to alter, amend, or modify this Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify this Plan, or remedy any defect or omission, or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of this Plan.

### B.  Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to this Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### C.  Revocation, Withdrawal, and Voidance of Plan

The Debtors reserve the right to revoke or withdraw this Plan prior to the Confirmation Date and to File subsequent plans of reorganization. If the Debtors (i) revoke or withdraw this Plan, or (ii) if Confirmation or Consummation does not occur, or (iii) if the Mezzanine Lender does not receive indefeasible payment in full in Cash of its Allowed Mezzanine Loan Claim on or before the Payment Deadline and subject to the same terms and conditions set forth in the Agreed Lift Stay Order (absent the Mezzanine Lender's consent in writing to an extension of the Payment Deadline), then: (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (3) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

# ARTICLE XII.
# RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and this Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

(a)     allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

(b)     decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or this Plan;

(c)     resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cures pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article VI hereof, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

(d)     ensure that distributions to Holders of Allowed Claims and Allowed Interests (as applicable) are accomplished pursuant to the provisions of this Plan;

(e)     adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

(f)     adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(g)     enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of this Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with this Plan or the Disclosure Statement, except to the extent that the Definitive Documentation provide for exclusive jurisdiction and venue in another forum;

(h)     enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

55

(i)     resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

(j)     issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of this Plan;

(k)     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, exculpations, and other provisions contained in Article IX hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

(l)     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Section VII.L hereof;

(m)     enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(n)     determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan, the Plan Supplement, or the Disclosure Statement;

(o)     enter an order concluding or closing the Chapter 11 Cases;

(p)     adjudicate any and all disputes arising from or relating to distributions under this Plan;

(q)     consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(r)     determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

(s)     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with this Plan, except to the extent that any Definitive Documentation provide for exclusive jurisdiction and venue in another forum;

(t)     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

56

<table>
<tbody>
<tr><td>(u)</td><td>hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in this Plan, including under Article IX hereof;</td></tr>
<tr><td>(v)</td><td>enforce all orders previously entered by the Bankruptcy Court; and</td></tr>
<tr><td>(w)</td><td>hear any other matter not inconsistent with the Bankruptcy Code.</td></tr>
</tbody>
</table>

As of the Effective Date, notwithstanding anything in this Article XII to the contrary, the New Organizational Documents and the Exit Facilities, as applicable, and any documents related thereto shall be governed by the jurisdictional provisions therein and the Bankruptcy Court shall not retain jurisdiction with respect thereto.

# ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

A.  Immediate Binding Effect

Subject to Section X.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of this Plan (including, for the avoidance of doubt, the documents and instruments contained in the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted this Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in this Plan, each Entity acquiring property under this Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.  Additional Documents

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of this Plan. The Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to this Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

C.  Reservation of Rights

Except as expressly set forth in this Plan, this Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by any Debtor with respect to this Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

D.     Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

E.     Notices

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

| Debtors | Counsel to the Debtors |
|---|---|
| Shoreview Holding LLC<br>9050 N. Capital of Texas Hwy.<br>Bldg. 3, Suite 320<br>Austin, Texas 78759<br>Attention: Legal Dept | Troutman Pepper Locke LLP<br>300 Colorado St., Suite 2100<br>Austin, TX 78701<br>Attention:  Daniel Durell<br>          Stephen J. Humeniuk |
| **United States Trustee** | |
| Office of The United States Trustee<br>903 San Jacinto Blvd<br>Room 230<br>Austin, TX 78701 | |

After the Effective Date, the Reorganized Debtors have the authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

F.     Term of Injunctions or Stays

Unless otherwise provided in this Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

G.     Entire Agreement

58

Except as otherwise indicated, and without limiting the effectiveness of this Plan (including, for the avoidance of doubt, the documents and instruments in the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

H.      Exhibits and Annexes

All exhibits, annexes, and documents attached hereto or included in the Plan Supplement are incorporated into and are a part of this Plan as if set forth in full in this Plan. After the exhibits, annexes, and documents are Filed, copies of such exhibits, annexes, and documents shall be available upon written request to the Debtors' counsel at the address above. To the extent any exhibit, annex, or document is inconsistent with the terms of this Plan, unless otherwise ordered by the Bankruptcy Court or otherwise specifically provided for in such exhibit, annex, or document, the non-exhibit, non-annex, or non-document portion of this Plan shall control.

I.      Non-severability of Plan Provisions

If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to this Plan and may not be deleted or modified without the Debtors' or Reorganized Debtors' consent, as applicable; *provided* that, in the case of an Exit Facility Restructuring, any such deletion or modification must be acceptable to the Exit Facility Lenders; and (3) non-severable and mutually dependent.

J.      Votes Solicited in Good Faith

Upon entry of the Confirmation Order, the Released Parties will be deemed to have solicited votes on this Plan in good faith and in compliance with section 1125(g) of the Bankruptcy Code and any applicable non-bankruptcy law, and pursuant to section 1125(e) of the Bankruptcy Code, the Released Parties and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under this Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on this Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under this Plan and any previous plan.

59

K.      Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of this Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; *provided*, *however*, that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated in Texas shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or the Reorganized Debtors, as applicable.

L.      Closing of Chapter 11 Cases

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

M.      Waiver or Estoppel

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in this Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

[Remainder of page intentionally left blank.]

60

Dated this 15th day of July, 2025

*/s/ Monte Lee-Wen*

Monte Lee-Wen
Manager of the Debtors and Debtors in Possession

61