**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SHOREVIEW HOLDING, LLC et al.,[1] | ) | Case No. 25-10566 |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**TROUTMAN PEPPER LOCKE LLP'S SUPPLEMENTAL BRIEF ON**
**ACQUIESCENCE, WAIVER, AND RELATED DOCTRINES**

Troutman Pepper Locke LLP ("Troutman"), counsel to the debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors") submits this *Supplemental Brief* on acquiescence, waiver, and related doctrines barring certain objections to the *Final Fee Application of Troutman Pepper Locke LLP for Compensation and Reimbursement of Expenses as Counsel for the Debtors for the Period of April 24, 2025 Through October 23, 2025* [Dkt. No. 210] (the "Fee Application"), pursuant to the *Order Setting Hearing on Troutman Pepper Locke LLP's Fee Application* [Dkt. No. 315], and respectfully states the following:

## I. INTRODUCTION

1. This brief addresses acquiescence, along with related and equally applicable doctrines of waiver, forfeiture, and ratification that all bar the DHKW Interested Parties' and the Feikema/Wilson Parties' (collectively, the "Guarantors") objections to the Fee Application on their single theory that the Debtors lacked corporate authority to commence these cases. Each of these doctrines apply here to prevent the Guarantors from contending that Troutman should not be paid

---

[1] The Debtors in these jointly administered chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: Shoreview Holding LLC (8428), PLF Shoreview LLC (7602), MDW Shoreview LLC (8649), Shoreview Apartments LLC (8428), PLF Shoreview Mezz LLC (1270), and MDW Shoreview Mezz LLC (3408). The Debtors' notice address is 9050 N. Capital of Texas Hwy., Bldg. 3 Suite 320, Austin, Texas 78759.

1

for its services. If the Guarantors' authority concerns had merit, they should have said so sooner.

2. Should the Court consider whether the retrospective merit of the authority question has any relevancy to the Fee Application,[2] the Court must apply Fifth Circuit precedent from the *Supply* Cases (defined below) dating back a century, that acquiescence (a/k/a ratification) applies to the Guarantors' conduct and inaction here. The Guarantors all ratified these chapter 11 filings, and acquiesced to them, because (a) they all quickly knew these cases had been filed, (b) were served with notices, pleadings, motions, orders and (most importantly) the Plan and failed to object based on alleged lack of authority, (c) accepted the benefits and potential upside of the Plan, and (d) stayed involved in these cases, directly engaging in the process of structuring and supporting the Plan and its confirmation, and working toward closing. *See* Dkt. No. 167; Pearlmark Ex. 54.

3. Cases considering acquiescence and ratification often consider related doctrines of waiver and forfeiture because similar facts apply to all of these theories. The Guarantors waived and forfeited any rights they had to seek relief in these cases under their corporate authority theory by failing to timely assert those rights. Their waiver and forfeiture of the right to challenge corporate authority applies to requesting relief under section 1112, certainly, and applies equally to requesting relief under any other section of the Bankruptcy Code, including section 330.

4. The Guarantors waited until the ***end*** of these cases to make an objection that relates only to how the cases ***started***. That type of gamesmanship is impermissible in the Fifth Circuit. Especially not after Guarantors embraced and supported the hard work Troutman and the Debtors undertook to confirm a Plan that unquestionably would have benefitted the Guarantors' interests.

---

[2] For reasons already submitted to the Court, *e.g.*, Dkt. No. 286 at ¶¶ 8, 11, 39-41, Troutman believes that (1) each of the bankruptcy cases were filed with requisite corporate authority, and (2) the ultimate retrospective-facing merit of the authority issue is not outcome determinative for an inquiry under 11 U.S.C. § 330, which instead centers on whether, prospectively, Troutman's choice to commence these cases was "reasonable" as required in *Barron & Newburger, P.C. v. Tex. Skyline, Ltd. (In re Woerner)*, 783 F.3d 266, 273-74 (5th Cir. 2015) and its progeny.

329081006v3

## II.     ARGUMENT AND AUTHORITIES[3]

**A.     The Guarantors acquiesced to, and otherwise ratified, the bankruptcy filings due to their prolonged knowledge of the case and simultaneous inaction.**

5.     In the Fifth Circuit, the consequence of inaction to an allegedly unauthorized bankruptcy filing "with full knowledge of what was going on" establishes that the Guarantors "acquiesced" to the bankruptcy filings. *See Alexander v. Farmers' Supply Co.*, 275 F. 824, 826 (5th Cir. 1921). In *Farmers' Supply Co.*, the Fifth Circuit held that a shareholder "lost" the "right to defeat the voluntary petition in bankruptcy [on grounds that] there was no proper corporate action authorizing the institution of the proceeding" due to "his silence and inaction" for four months after the bankruptcy was filed. *Id.* Years later, the Fifth Circuit affirmed the mandatory precedential value of *Farmers' Supply Co.*'s "acquiescence" holding, and once again found that a shareholder lost the ability to challenge a bankruptcy filing due to knowledge of the bankruptcy for over a year, taking actions consistent with the proceeding, and failing to object to the alleged lack of authority. *Peterson v. Atlas Supply Corp., (In re Atlas Supply Corp.)*, 857 F.2d 1061, 1064 (5th Cir. 1988) (recognizing the precedential holding in *Farmers' Supply Co.*).

6.     The "acquiescence" holdings of *Farmers Supply Co.* and *Atlas Supply Corp.* (collectively, the "*Supply* Cases") are binding precedent and prohibit delayed authority challenges like the Guarantors now assert. *See id.* Other circuit courts have similarly concluded that a delayed authority challenge may establish "acquiescence" or "ratification" of a case's filing. *See Hager v. Gibson*, 108 F.3d 35, 40 (4th Cir. 1997) (finding shareholder "ratified" allegedly unauthorized

---

[3] Recital of the relevant factual background is omitted pursuant to the Court's directive that additional pre-trial briefs "shall be limited to legal argument only." Dkt. No. 315. Where legal argument involves factual application, Troutman cites to the record previously submitted to the Court. Notably, Troutman has not had the opportunity to introduce its own evidence of acquiescence, ratification, waiver, and forfeiture into the record, and would utilize Pearlmark Exs. 44-50, and Troutman Exs. 8 and 12 marked for the April 29, 2026, hearing on the Fee Application, *see* Dkt. No. 283 at 3, among other additional evidence. Troutman submits this evidence should also be considered and reserves the right to introduce evidence on these key issues.

329081006v3

bankruptcy filing by not objecting for over four months after he was made a party and a year after learning of the filing); *In re Martin-Trigona*, 760 F.2d 1334, 1341 (2d Cir. 1985) (holding party both "acquiesced" and "ratified" bankruptcy filing by failing to timely object and participating in the proceedings). The Guarantors' timing delay is critical because ratification "may be found to exist by implication from a principal's failure to dissent within a reasonable time after learning what had been done. 'If a corporation acquires or is charged with knowledge of an unauthorized act undertaken by someone on its behalf, and does not repudiate that act within a reasonable time, but instead acquiesces in it, the corporation is bound by the act.'" *IBJ Schroder Bank & Tr. Co. v. Resol. Tr. Corp.*, 26 F.3d 370, 375 (2d Cir. 1994) (quoting *In re Martin–Trigona*, 760 F.2d at 1341). Stated succinctly, "[a] principal's silence or acquiescence in the face of knowledge of an unauthorized act can also constitute ratification of the act." *In re First Republic Grp. Realty, LLC*, 421 B.R. 659, 683 (Bankr. S.D.N.Y. 2009) (citations omitted).

7.      Here, it is undisputed the Guarantors knew about the bankruptcy filings within *days* of the petition date,[4] received weekly and monthly updates about the cases,[5] worked directly with Monte Lee-Wen and Casoro Group's legal team to document and facilitate the Plan closing and the equity restructuring it was to accomplish,[6] and the Feikema/Wilson Parties even attended multiple hearings and supported confirmation of the Plan because it would resolve their guaranty liabilities.[7] Yet the Guarantors waited over five-and-a-half months (or exactly 24 weeks) before

---

[4] Nov. 13, 2025, Hr'g. Tr. 47:20-22, 52:24-53:1 (P. Feikema); 65:21-24 (L. Feikema); 72:15-19, 73:14-20 (M. Wilson); 101:24-102:9 (R. Webster); Pearlmark Ex. 41 (email from M. Lee-Wen to DHKW Interested Parties informing them of the bankruptcy on April 24, 2025).

[5] Nov. 13, 2025, Hr'g. Tr. 54:8-13, 55:2-3; 72:8-10, 104:10-24; Pearlmark Exs. 41-43, 52-54. While not reflected on Dkt. No. 261, the record from the motions to dismiss hearings establishes Pearlmark Exhibits 51-54 were admitted into evidence and are part of this record. *See* Jan. 23, 2026, Hr'g. Tr. 104:7-19.

[6] Pearlmark Ex. 54 (various emails about the Plan involving *all* of the Guarantors other than L. Feikema).

[7] Dkt. No. 167. Additionally, none of the Feikema/Wilson parties informed Mr. Lee-Wen about his alleged lack of authority to file these cases or took any steps to revoke his authority prior to challenging his authority in their motion to dismiss.  *See* 55:4-21; 65:10-13; and 72:1-4.

4

objecting to authority to first see whether the Plan would successfully resolve their guaranty liabilities and preserve their investment upside.[8] The Plan unfortunately was not consummated, but the Guarantors chose that risk in accepting the benefits that these cases and the Plan presented, and cannot now challenge authority after second-guessing their tactical decisions. *See Rudebeck v. Sanderson*, 227 F. 575, 578 (9th Cir. 1915) (holding parties challenging authority "could not stand idly by and permit the administration of the estate to proceed in the bankruptcy court until some step was taken that did not meet their approval"); *In re Ives*, 113 F. 911, 914 (6th Cir. 1902) ("[O]ne may not stand by and wait until . . . other rights have intervened, before [objecting to authority].").

8.      The Guarantors' five-and-a-half-month delay, knowledge of the proceedings and receiving regular updates, and allowing the Plan to proceed to confirmation while ***participating in that process*** before bringing their authority challenge demonstrates their "acquiescence" or "ratification" of the bankruptcy filings. *See Farmers' Supply Co.*, 275 F. at 826; *Atlas Supply Corp.*, 857 F.2d at 1064. Courts have applied ratification and acquiescence (along with waiver and forfeiture doctrines discussed below) to parties that waited similar and ***even less*** amounts of time than the Guarantors before challenging bankruptcy authority. *See Farmers' Supply Co.*, 275 F. at 826 (four month delay was acquiescence); *In re Mojo Brands Media, LLC*, No. 6:15–BK–03871–CCJ, 2016 WL 1072508, at *1–2 (Bankr. M.D. Fla. Mar. 16, 2016) (nearly three month delay resulted in ratification); *In re Scotto*, No. 809-75956-REG, 2010 WL 1688743, at *10 (Bankr. E.D.N.Y. Apr. 26, 2010) (four month delay constituted ratification); *In re Amir*, 436 B.R. 1, 18 (B.A.P. 6th Cir. 2010) (five month delay supported ratification finding); *In re Sterling Mining Co.*, No. 09-20178TLM, 2009 WL 2475302, at *8 (Bankr. D. Idaho Aug. 11, 2009) (five month delay established both waiver and ratification); *In re Willis*, 345 B.R. 647, 652–54 (B.A.P. 8th Cir. 2006)

---

[8] *E.g.*, Dkt. No. 167; Pearlmark Ex. 54; Dkt. No. 317 at ¶¶ 10-14 (Feikemas/Wilson acknowledging intentional decision not to pursue authority objection and support Plan confirmation instead).

329081006v3

(finding estoppel and ratification applied after nearly ten week delay). Should the Court entertain any doubt about the actual authority to file these cases, consistent with the *Supply* Cases, the Court should affirmatively find the Guarantors acquiesced and ratified the filings.

**B.      The Guarantors also waived and forfeited their right to challenge corporate authority for these cases for any purpose, including the Fee Application.**

9.      The Guarantors have also waived and forfeited the right to invoke an authority-based challenge for purposes of seeking any relief in these cases, including in objecting to the Fee Application. "[F]orfeiture is the failure to make the timely assertion of a right, [and] waiver is the 'intentional relinquishment or abandonment of a known right.'" *U.S. v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). In addition, "[w]aiver may be also established by showing that a party intentionally engaged in conduct inconsistent with claiming a right." *In re Langston*, 159 F.4th 346, 354 (5th Cir. 2025). While waiver and forfeiture are not synonymous, *Hamer v. Neighborhood Hous. Servs. of Chicago*, 583 U.S. 17, 20 n.1 (2017), both doctrines apply under the facts of these cases, *see Biziko v. Van Horne*, 981 F.3d 418, 420 n.1 (5th Cir. 2020) (recognizing that both waiver and forfeiture may simultaneously apply); *In re SeaQuest Diving, LP*, 579 F.3d 411, 425-26 (5th Cir. 2009) (same).

10.      Consistent with the Fifth Circuit's decisions in the *Supply* Cases, the Guarantors forfeited their arguments related to authorization by failing to raise them timely. *Cf. Atlas Supply Corp.*, 857 F.2d at 1064. Waiver applies with equal force because the Guarantors knew of both the bankruptcy filings and the basis for their authority objection, yet (as the Feikema/Wilson parties now readily admit, *see* Dkt. 317 at ¶¶ 10-14) they made the strategic choice to allow the Plan process to proceed to obtain its benefits instead of timely raising their authority concerns.[9] Relying

---

[9] The Feikema/Wilson Parties even supported the Plan on the record without mention that the filing of these cases was allegedly unauthorized. *See* Dkt. No. 167. They also now admit all facts necessary to establish forfeiture and waiver. *See* Dkt. No. 317 at ¶¶ 10-14. As of this filing, the DHKW Interested Parties have

329081006v3

on the Plan to resolve all open issues is sharply inconsistent with claiming the Debtors had no authority to file these cases (or the Plan) in the first instance. *See In re Langston*, 159 F.4th at 354.

11.     The Guarantors' suggestion that section 330 proceedings are exempt from waiver and forfeiture principles lacks real support. In contrast, the U.S. Supreme Court and Fifth Circuit have applied waiver and forfeiture (along with ratification and implied consent) principles to bankruptcy cases on numerous occasions and in a variety of contexts. *E.g.*, *id.* at 355 (party waived "right to insist that the objection deadline in Bankruptcy Rule 4003(b) be enforced" through conduct inconsistent with claiming that right); *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 679, 683-84 (2015) (holding bankruptcy litigants may "waive the right to Article III adjudication of *Stern* claims" and that such waiver, or consent, may be implied); *U.S. v. Spurlin*, 664 F.3d 954, 959–60 (5th Cir. 2011) (holding in a criminal case that co-debtor "ratified" bankruptcy filing she did not personally authorize based on knowledge of the case and "never objecting to the bankruptcy's [sic] going forward"); *Kontrick v. Ryan*, 540 U.S. 443, 457-60 & n.13 (2004) (holding party forfeited timeliness challenge to bankruptcy nondischargeability action by raising it too late); *Atlas Supply Corp.*, 857 F.2d at 1064 (holding "lack of corporate authorization is not an available objection to the bankruptcy petition" due to shareholder's failure to timely object after knowledge of the bankruptcy); *Royal Indem. Co. v. Am. Bond & Mortg. Co.*, 289 U.S. 165, 171 (1933) (recognizing stockholders may "cho[o]se to waive" rights intended to protect them from unauthorized bankruptcy filings even after such rights had been "infringed"); *Farmers' Supply Co.*, 275 F. at 826 (holding shareholder lost "right to defeat the voluntary petition in bankruptcy" on lack of authority theory due to "his silence and inaction" for four months after the bankruptcy was

---

not disputed or explained their failure to object to authority despite being served with all necessary motions, pleadings, and orders in these cases. *E.g.*, Dkt. Nos. 84–85, 122, 140, 158–159, 187 (certificates of service).

7

329081006v3

filed).[10] A section 330 objection is waivable and forfeitable like any of these aforementioned rights.

12.     Facing this authority, apart from their jurisdictional arguments (that the Court resolved against the Guarantors in ruling on the motions to dismiss), the Guarantors have no basis to overcome the applicability of waiver and forfeiture to their conduct and inaction in these bankruptcy cases. Moreover, because the Guarantors' authority objection challenged the Court's ability to enter *any* orders in these cases, including granting the Fee Application, their failure to challenge authority until *after* they participated in the Plan confirmation process is even more troubling. "Failure to object to the bankruptcy court's statutory authority in a timely manner results in a forfeiture of *any argument* to the contrary." *In re Washington Coast I, L.L.C.*, 485 B.R. 393, 410 (B.A.P. 9th Cir. 2012) (emphasis added). The same facts demonstrating the Guarantors' acquiescence and ratification of these cases also support findings of waiver and forfeiture,[11] and their authority-based objections to the Fee Application cannot survive.

**C.      The Guarantors' waiver and forfeiture of their right to challenge authority, and their ratification and acquiescence of the filings, prohibit them from objecting to the Fee Application based on alleged lack of authority.**

13.     Again, the Guarantors all quickly knew of the bankruptcy filings and of the authority arguments they believe they possess, were updated throughout the cases, and were aware that the Plan proposed to resolve their guaranty liabilities and preserve their investment upside.[12] They all still intentionally waited to challenge authority until *after* the benefits that these cases and the Plan offered had dissipated, and *after* Troutman had performed all of the hard work that they waited to watch unfold. Whatever rights the Guarantors believe they possessed as direct or indirect

---

[10] To the extent Guarantors assert their authority challenge cannot be waived or forfeited because it is couched as a jurisdictional challenge, the Fifth Circuit has nonetheless applied forfeiture to jurisdictional challenges in the bankruptcy context. *See In re Gilchrist*, 891 F.2d 559, 561 (5th Cir. 1990) (finding party "forfeited the opportunity to contest [bankruptcy] jurisdiction and cannot . . . complain at this late date").

[11] *See supra* notes 4-9 and accompanying text.

[12] *E.g.*, Dkt. No. 167; Pearlmark Ex. 54; *see also supra* notes 4-9 and accompanying text.

8

shareholders and former manager were both waived and forfeited, and were also exercised through their acquiescence and ratification of these cases. *See Atlas Supply Corp.*, 857 F.2d at 1064.

14.    The Court cannot entertain their late-hour objections premised on an authority theory that should have been raised ***immediately***, if it had any merit. In the landmark *Stern v. Marshall* bankruptcy case, the U.S. Supreme Court cautioned "the consequences of 'a litigant . . . 'sandbagging' the court—remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor,' can be particularly severe." *Stern v. Marshall*, 564 U.S. 462, 482 (2011) (quoting *Puckett v. U.S.*, 556 U.S. 129, 134 (2009)). The *Stern* court found forfeiture in holding that "[i]f [the bankruptcy litigant] believed that the Bankruptcy Court lacked the authority to decide his claim. . . , then he should have said so—and said so promptly." *Id.* The U.S. Supreme Court has further observed that "'[n]o procedural principle is more familiar to [federal courts] than that a constitutional right,' *or a right of any other sort*, 'may be forfeited in . . . civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.'" *Olano*, 507 U.S. at 731 (emphasis added) (quoting *Yakus v. U.S.*, 321 U.S. 414, 444 (1944)). Specific to the "bankruptcy context," the U.S. Supreme Court observed applying an implied consent standard (akin to ratification) to failure to timely assert rights has the "pragmatic virtues" of "increasing judicial efficiency and checking gamesmanship." *Sharif*, 575 U.S. at 685.

15.    Such "sandbagging" and "gamesmanship" the U.S. Supreme Court disapproved in bankruptcy cases, *e.g.*, *id.*, is precisely what is happening here. The Guarantors wish to use a finding on the authority issue to gain a litigation advantage in Pearlmark's lawsuit against them in Illinois.[13] After Pearlmark completed the U.C.C. sale and became manager and owner of the Mortgage Debtors, the Guarantors' equity interests in the Mezzanine Debtors are now effectively

---

[13] *See* DHKW Interested Parties' Exs. 20 (Pearlmark's Illinois complaint against Guarantors) & 21 at ¶ 62 (R. Webster declaration explaining Illinois litigation strategy to challenge authority); Dkt. No. 317 at ¶ 7.

329081006v3

worthless. The Mezzanine Debtors have no remaining assets and, due to Pearlmark's takeover, will never receive any distribution from the Mortgage Debtors—the only Debtors that still have an interest in the cash that would pay Troutman's fees. Any adjustment of Troutman's fees serves no economic benefit to the Guarantors in connection with these cases.[14]

16.     The Guarantors' waiver and forfeiture of their authorization-based arguments, as well as their acquiescence and ratification of the bankruptcy filings, bars their ability to raise an authority-based objection in the context of case dismissal or the Fee Application, *U.S. v. Cooper*, 38 F.4th 428, 438 (5th Cir. 2022) ("If a party intentionally relinquishes a known right, he has waived that right and generally cannot reassert it later."), or even under Bankruptcy Rule 9011, *see In re Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 230 (2d Cir. 1991) (finding in Bankruptcy Rule 9011 proceeding that party "is estopped from asserting that the Chapter 11 petition was frivolously filed" due in part to failing to timely "alert[] the court to the purported frivolity of the petition"). In sum, the consequence of the Guarantors' failure to timely challenge authority is that they are now barred from asserting that Troutman should not be awarded fees based on that theory.

### III.     CONCLUSION

WHEREFORE, Troutman requests that this Court decide the Fee Application on a final basis without preserving future claims for any party, overrule the Guarantors' objections on the basis of acquiescence, ratification, waiver, and forfeiture, enter an order granting Troutman's requested fees and expenses in their entirety and order that the Carve-Out be paid to Troutman immediately upon entry, and granting such further and other relief as the Court deems appropriate.

---

[14] *E.g.*, Dkt. No. 317 at ¶ 7. Because the Guarantors no longer possess any pecuniary interest in these cases, they cannot satisfy the "person aggrieved" standard to even have standing to appeal any order granting the Fee Application. *See In re Highland Cap. Mgmt., L.P.*, 74 F.4th 361, 366-71 (5th Cir. 2023) (concluding "person aggrieved" standard prevented standing to appeal an order awarding attorneys' fees under section 330). The Guarantors' lack of pecuniary interest in these cases and collective lack of standing on appeal further underscores their gamesmanship in advancing an authority challenge at such a late time.

329081006v3

Dated: May 26, 2026.

**TROUTMAN PEPPER LOCKE LLP**

*/s/ Stephen Humeniuk*

Daniel Durell (Tex. Bar No. 24078450)
Stephen J. Humeniuk (Tex. Bar No. 24087770)
300 Colorado St., Suite 2100
Austin, TX 78701
T: (512) 305-4700
F: (512) 305-4800
daniel.durell@troutman.com
stephen.humeniuk@troutman.com

Michael A. Sabino (admitted *pro hac vice*)
875 Third Avenue
New York, NY 10022
T: (212) 704-6000
F: (212) 704-6288
Email: michael.sabino@troutman.com

*Attorneys for Debtors*
*and Debtors in Possession*

329081006v3

## CERTIFICATE OF SERVICE

I hereby certify on May 26, 2026, a true and correct copy of the foregoing document was filed with the Court and served electronically upon those parties registered to receive electronic notice via the Court's CM/ECF system, including the parties identified below.

**Debtors**
Shoreview Holding, LLC
PLF Shoreview, LLC
MDW Shoreview, LLC
Shoreview Apartments, LLC
PLF Shoreview Mezz, LLC
MDW Shoreview Mezz, LLC
9050 N. Capital of Texas Hwy.
Bldg. 3, Suite 320
Austin, TX 78759

**U.S. Trustee**
Attn: Shane Tobin
903 San Jacinto Blvd., Room 230
Austin, TX 78701
Shane.P.Tobin@usdoj.gov

**Senior Secured Lender**
PFP VII SUB VIII, LLC
c/o Arnold & Porter LLP
Attn: Benjamin Mintz and Justin Imperato
250 West 55th Street
New York, NY 10019
Benjamin.Mintz@arnoldporter.com
Justin.Imperato@arnoldporter.com

**Warren Dresner, Ryan Webster, Colin Kilgore, and Justin Hobson**
Bradley J. Purcell
Reed Smith LLP
2850 N. Harwood Street, Suite 1500
Dallas, Texas 75201
bpurcell@reedsmith.com

Anthony J. Napolitano
Thomas P. Yardley, Jr.
Buchalter LLP
anapolitano@buchalter.com
tyardley@buchalter.com

**Mezzanine Lender**
PMRP V Holdings, L.L.C.
c/o Haynes & Boone LLP
Attn: Stephen Pezanosky and Jordan Chavez
2801 N. Harwood Street, Suite 2300
Dallas, TX 75201
stephen.pezanosky@haynesboone.com
jordan.chavez@haynesboone.com

**Laura and Paul Feikema; Meisha Wilson**
Elena Paras Ketchum
Harley E. Riedel
Stichter Riedel Blain & Postler
110 E. Madison Street, Suite 200
Tampa, FL 33602-4700
eketchum@srbp.com
hriedel@srbp.com

Jameson Joseph Watts
Husch Blackwell LLP
111 Congress Ave., Suite 1400
Austin, TX 78701
Jameson.watts@huschblacwell.com

**Casoro Group**
Jennifer F. Wertz
Jackson Walker LLP
100 Congress, Suite 1100
Austin, Texas 78701
jwertz@jw.com

J. Machir Stull
Jackson Walker LLP
2323 Ross Avenue, Suite 600
Dallas, TX 75201
mstull@jw.com

*/s/ Stephen J. Humeniuk*
Stephen J. Humeniuk

12

329081006v3