**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SHOREVIEW HOLDING, LLC et al.,[1] | ) | Case No. 25-10566 |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**TROUTMAN PEPPER LOCKE LLP'S MOTION FOR**
**RECONSIDERATION OF JUNE 12, 2026 ORAL RULING**

Troutman Pepper Locke LLP ("Troutman"), counsel to the debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors") files this *Motion for Reconsideration of June 12, 2026 Oral Ruling* (this "Motion")[2] seeking reconsideration of the oral ruling issued by the Court on June 12, 2026 concerning the Debtors' corporate authority to commence the above-captioned chapter 11 cases (the "Oral Ruling"), attached as **Exhibit A**, that relates to certain objections to the *Final Fee Application of Troutman Pepper Locke LLP for Compensation and Reimbursement of Expenses as Counsel for the Debtors for the Period of April 24, 2025 Through October 23, 2025* [Dkt. No. 210] (the "Fee Application"), and respectfully states the following:

## I.    INTRODUCTION

1.    The Court must reconsider the Oral Ruling because it (i) incorrectly found that Monte Lee-Wen ("Lee-Wen") was not the manager of Debtors Shoreview Apartments LLC and

---

[1] The Debtors in these jointly administered chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: Shoreview Holding LLC (8428), PLF Shoreview LLC (7602), MDW Shoreview LLC (8649), Shoreview Apartments LLC (8428), PLF Shoreview Mezz LLC (1270), and MDW Shoreview Mezz LLC (3408). The Debtors' notice address is 9050 N. Capital of Texas Hwy., Bldg. 3 Suite 320, Austin, Texas 78759.

[2] Pursuant to Local Rule 9014-1(a) and (d), this Motion is being filed without negative notice language because it seeks relief subject to Local Rule 9014-1(d) that may be granted without a hearing.

1

Shoreview Holding LLC, (2) incorrectly applied Delaware law in finding that the members of Debtors MDW Shoreview Mezz LLC and PLF Shoreview Mezz LLC did not consent to Lee-Wen commencing bankruptcy on those entities' behalf, and (3) created a bright-line rule that consent to a bankruptcy filing must be specific without consideration of Delaware law to the specific language used in the Mezz Borrowers' (defined below) operating agreements concerning member consent for "Material Actions."

2.      *First*, the Oral Ruling must be reconsidered because it did not mention, address, or consider Section 6.01 of the company agreement for 1161 Shoreview LLC ("1161 Shoreview"), which is the parent entity of Debtor Shoreview Apartments LLC and indirect parent entity of Debtor Shoreview Holding LLC.  Section 6.01 of the 1161 Shoreview company agreement provided that its manager "shall have the ***sole and exclusive control*** of the management, business and affairs of the Company and ***the Subsidiaries***." Pearlmark Ex. 2 at p. 10, § 6.01 (emphasis added).[3]  Although the Court correctly found that Lee-Wen was appointed as the sole manager of 1161 Shoreview, the Court must reconsider the Oral Ruling to take into account how section 6.01 of the 1161 Company Agreement also vested Lee-Wen with the sole and exclusive management of the "Subsidiaries," defined as Debtors Shoreview Apartments and Shoreview Holdings.

3.      *Second*, the Oral Ruling must also be reconsidered because it did not apply Delaware law, and specifically the Delaware Limited Liability Company Act (the "Delaware LLC Act"), to the September 2024 consent resolutions executed by members of Debtors MDW Shoreview Mezz LLC and PLF Shoreview Mezz LLC. Section 18-302(d) of the Delaware LLC Act provides, in relevant part, "[u]nless otherwise provided in a limited liability company

---

[3] Because the Oral Ruling referenced the exhibits Pearlmark submitted in connection with the motion to dismiss briefing to cite to the record before the Court, *see* June 12, 2026, Hr'g Tr. 31:23-32:6, this Motion similarly references only the Pearlmark exhibits.

2

agreement, if a person (whether or not then a member) consenting as a member to any matter provides that such consent will be effective at a future time (including a time determined upon the happening of an event), then such person shall be deemed to have consented as a member at such future time so long as such person is then a member." 6 DEL. CODE § 18-302. The Oral Ruling did not apply this provision of the Delaware LLC Act, along with others discussed below, in interpreting the September 2024 consent resolutions and their authorization and ratification for Lee-Wen to implement a recapitalization, refinancing, and *restructuring* of the Debtors, and accordingly the Oral Ruling must be reconsidered for this reason as well.

4.      *Third*, the Oral Ruling should be reconsidered because it creates a bright-line rule that consent to filing chapter 11 bankruptcy to implement a restructuring must be specific and "direct."  June 12, 2026, Hr'g Tr. 41:12-14. The definition of "Material Action" in the Mezz Borrowers' (defined below) consent resolutions reaches much broader than just chapter 11 bankruptcy, and the "restructuring" language that appears in the September 2024 consent resolutions falls within the scope of a "Material Action."  The Oral Ruling should be reconsidered because it did not apply the broad definition of "Material Action" in the operating agreements, as required under Delaware law, to the broad language in the September 2024 consent resolutions

5.      Troutman does not file this Motion lightly.  Given the contentious nature of the cases and the likelihood of review, the Court should be given an opportunity to address the pure legal questions of contract and statutory interpretation  raised in this Motion now rather than later. Further, given the Court's *sua sponte* raising the issue  of possible Bankruptcy Rule 9011 proceedings against Troutman solely related to the commencement of these cases, and the scrutiny the Oral Ruling will receive, Troutman urges this Court to address the issues raised in this Motion prior to the issuance of a written order.  Such an approach would certainly further the interests of

330875033v2

justice and judicial economy in these cases, and Troutman also requests that, given the predominantly legal issues and interpretations at issue, and the opportunities for reasonable minds to disagree about pure interpretations of law, that the Court also reconsider the necessity of proceeding with any possible Bankruptcy Rule 9011 proceedings as well.

## II. ARGUMENT AND AUTHORITIES

### A. Legal Standard

6. The Oral Ruling is best viewed as an interlocutory order that remains subject to reconsideration and revision "at any time" until the Fee Application the Oral Ruling relates to is finally resolved. The Fee Application is a contested matter, subject to Bankruptcy Rule 9014, which in turn incorporates Bankruptcy Rule 7054. *See* FED. R. BANKR. P. 9014(c). Bankruptcy Rule 7054(a) incorporates Federal Rule of Civil Procedure 54(b), among other subparts. *See* FED. R. BANKR. P. 7054(a). Federal Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and *may be revised at any time* before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b) (emphasis added).

7. Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision *for any reason it deems sufficient*, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (emphasis added) (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)). Because the Oral Ruling did not finally resolve the Fee Application, which is the only contested matter pending in these dismissed bankruptcy cases, and remains subject to the forthcoming additional rulings on the parties' waiver, forfeiture acquiescence, and ratification briefing, Troutman believes the Oral Ruling is an interlocutory order subject to reconsideration for

4

"any reason" under Bankruptcy Rule 7054 and Federal Rule 54(b). *See id.*[4]

8.      In an abundance of caution, however, to the extent that the Oral Ruling might be considered a final order, Troutman is filing this Motion within fourteen days of the Oral Ruling pursuant to Bankruptcy Rule 9023(b).  Bankruptcy Rule 9023(a) incorporates Rule 59 of the Federal Rules of Civil Procedure, which applies to "final judgments," into bankruptcy cases. *See* FED. R. BANK. P. 9023(a); *Austin*, 864 F.3d at 336 (recognizing that Federal Rule 59(e) applies to final judgments while Federal Rule 54(b) applies to interlocutory orders).  "A Rule 59(e) motion is a motion that calls into question the correctness of a judgment." *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002).  Under Rule 59, "amending a judgment is appropriate: (1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact." *In re SAL ATX LLC*, 660 B.R. 795, 813 (Bankr. W.D. Tex. 2024) (citing *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012)).

9.      Because the Oral Ruling includes both errors of law and of fact that require correction, reconsideration is appropriate.  Under the circumstances, with further rulings relating to the Fee Application forthcoming both on the merits and concerning the waiver, forfeiture, acquiescence, and ratification issues,[5] Troutman respectfully submits that the standard for relief requested in this Motion be resolved pursuant to Rule 54(b).

---

[4] The Oral Ruling also noted that it only addressed a "preliminary issue" in connection with the Fee Application. *See* June 12, 2026, Hr'g Tr. 29:2-4 ("This is the Court's oral ruling on a preliminary issue related to the final fee application of Troutman Pepper Locke.").

[5] Troutman also respectfully requests that the Court consider vacating the Oral Ruling altogether, both for the reasons requested in this Motion and also to the extent to Court's forthcoming ruling on waiver, forfeiture, acquiescence, and ratification moot any issues pertaining to corporate authority to commence these chapter 11 cases.

330875033v2

**B. The Oral Ruling Should be Reconsidered Because the 1161 Shoreview Company Agreement is Dispositive of the Identity of the Manager for "Subsidiary" Debtors Shoreview Apartments and Shoreview Holdings.**

10. Because the operating agreement for non-Debtor 1161 Shoreview establishes that the manager is the person or entity that serves as the manager for Debtor Shoreview Apartments, and the Oral Ruling did not consider or discuss the impact of the operating agreement for 1161 Shoreview, the Oral Ruling should be altered and amended. *See Austin*, 864 F.3d at 336.

11. To begin, the Oral Ruling correctly found that Lee-Wen became the manager of 1161 Shoreview after exercising his step-in rights. *See* June 12, 2026, Hr'g Tr. 33:11-17. By virtue of that finding, and due to the language of the 1161 Shoreview operating agreement, the Oral Ruling should have necessarily also found that Lee-Wen was the manager of Shoreview Apartments (and because Debtor Shoreview Holding is member-managed, Lee-Wen was also effectively the manager of Debtor Shoreview Holding). Section 6.01 of the 1161 Shoreview operating agreement provides that the manager of 1161 Shoreview—who is undisputably Lee-Wen—"shall have the *sole and exclusive control of the management*, business and affairs of the Company *and the Subsidiaries*, and the Managers shall make all decisions and take all actions for the Company *and the Subsidiaries* not otherwise provided for in this Agreement." Pearlmark Ex. 2 at p. 10, § 6.01 (emphasis added).[6]

12. Notwithstanding the Oral Ruling's finding that Lee-Wen was the manager of 1161 Shoreview, the Oral Ruling contradictorily found "[t]he evidence shows that Ryan Webster was the manager of Shoreview Apartments LLC." June 12, 2026, Hr'g Tr. 40:2-3. Without reference to, or discussion of, the 1161 Shoreview company agreement, the Oral Ruling also stated "[t]here was no documentation or resolution to show that that Lee-Wen was appointed as the manager of

---

[6] The 1161 Shoreview operating agreement defined "Subsidiaries" as both Shoreview Apartments LLC and Shoreview Holding LLC (which the operating agreement defined as the "Property Owner"). Pearlmark Ex. 2 at p. 4.

330875033v2

Shoreview Apartments LLC." *Id.* at 40:3-5.

13.     The record contains only one piece of evidence bearing on the manager appointment process -- the 1161 Shoreview operating agreement -- and that evidence does not support the Oral Ruling's finding. When Lee-Wen became the undisputed sole manager of 1161 Shoreview, section 6.01 of the 1161 Shoreview operating agreement gave Lee-Wen the "the sole and exclusive control of the management, business, and affairs" of the "Subsidiaries" Shoreview Apartments and Shoreview Holding. *See* Pearlmark Ex. 2 at p. 10, § 6.01.

14.     The Delaware LLC Act supports this reading.  Section 18-401 provides that "[a] person may be named or designated as a manager of the limited liability company as provided in § 18-101(12) of this title." 6 DEL. CODE § 18-401.  In turn, section 18-101(12) provides that the "manager" of a Delaware LLC is "a person who is named as a manager of a limited liability company in, or designated as a manager of a limited liability company pursuant to, a limited liability company agreement or similar instrument under which the limited liability company is formed." *Id.* § 18-101(12).  The limited liability company agreement for 1161 Shoreview complies with this section by designating that the manager of 1161 Shoreview is also responsible for the "sole and exclusive" management of the "Subsidiaries" Shoreview Apartments and Shoreview Holdings. *See id.*

15.     Furthermore, consistent with section 6.01 of the 1161 Shoreview operating agreement, section 9(a) of the Shoreview Apartments operating agreement provided that 1161 Shoreview, as the sole "Member," "may remove and replace the Manager [of Shoreview Apartments] *at any time*." *See* Pearlmark Ex. 7 at p. 3, § 9(a) (emphasis added).  The Shoreview Apartments operating agreement did not specify any further process for removing and replacing

7

the manager—meaning that section 6.01 of the 1161 Shoreview operating agreement is operative to designate the "sole and exclusive" manager of the "Subsidiaries" at all times.

16.     This result is consistent with the Delaware LLC Act, which provides that, subject to a manager's ability to resign, "a manager shall cease to be a manager as provided in a limited liability company agreement." 6 DEL. CODE § 18-402. 1161 Shoreview's "removal and replacement" of Shoreview Apartment's manager, Ryan Webster, "at any time," Pearlmark Ex. 7 at p. 3, § 9(a), occurred automatically when Lee-Wen undisputably became sole manager of 1161 Shoreview by virtue of the plain meaning of section 6.01 of the 1161 Shoreview operating agreement, Pearlmark Ex. 2 at p. 10, § 6.01; *see also* 6 DEL. CODE § 18-402.

17.     After Lee-Wen exercised his step-in rights, when Ryan Webster signed 1161 Shoreview's September 2024 consent resolution (as the manager of 1161 Shoreview's managing entity and members) confirming Lee-Wen as the sole manager of 1161 Shoreview, *see generally* Pearlmark Ex. 1, that was all that was required under section 6.01 of the 1161 Shoreview operating agreement to designate Lee-Wen as the "sole and exclusive" manager of 1161 Shoreview and its "Subsidiaries," *see* Pearlmark Ex. 2 at p. 10, § 6.01. Nothing in the operating agreements for 1161 Shoreview or Shoreview Apartments or in the Delaware LLC Act require a different process to remove and replace Ryan Webster as manager for Shoreview Apartments and the Oral Ruling erred in holding otherwise.[7]  *See A & J Cap., Inc. v. L. Off. of Krug*, No. CV 2018-0240-JRS, 2018 WL 3471562, at *6 (Del. Ch. July 18, 2018) (rejecting former manager's request to add corporate law or common law processes onto an operating agreement's provisions for manager removal).

---

[7] Because Debtor Shoreview Holding is member-managed, and consistent with section 6.01 of the 1161 Shoreview operating agreement that the manager of 1161 Shoreview is the sole and exclusive manager of the "Subsidiaries," the manager of Debtor Shoreview Apartments is responsible for the member-management function of Debtor Shoreview Holding. *See* Pearlmark Ex. 8 at p. 3, § 9(a).

8

330875033v2

18.     Finally, for the avoidance of doubt as to Lee-Wen serving as the manager for Shoreview Apartments, the consent resolution filed along with the bankruptcy petitions included a resolution (and not just a recital) that Lee-Wen was the only manager of Debtors Shoreview Apartment and Shoreview Holdings (along with all of the other Debtors). *See* Pearlmark Ex. 12 at p. 1. Lee-Wen signed that resolution in his capacity as the undisputed manager of 1161 Shoreview, *id.* at p. 12—the sole member of Shoreview Apartments and only entity with the power to remove and replace Ryan Webster as manager of Shoreview Apartments "at any time," Pearlmark Ex. 7 at p. 3, § 9(a).

19.     In sum, Section 6.01 of the 1161 Shoreview company agreement designates the manager of 1161 Shoreview as the person responsible for the sole and exclusive management of "Subsidiaries" Debtors Shoreview Apartments and Shoreview Holdings, Pearlmark Ex. 2 at p. 10, § 6.01, Section 9.01 of the Shoreview Apartments operating agreement enables sole member 1161 Shoreview to "remove and replace" Shoreview Apartments' manager "at any time," Pearlmark Ex. 7 at p. 3, § 9(a), and Lee-Wee undisputably became the manager of 1161 Shoreview, June 12, 2026, Hr'g Tr. 33:11-17; Pearlmark Ex. 1. Section 6.01 of the 1161 Shoreview operating agreement therefore also made him the sole and exclusive manager of the "Subsidiaries" Shoreview Apartments and the subsidiary it member-managed, Shoreview Holding.

20.     The Oral Ruling must therefore be reconsidered because it contains a manifest error of law in not considering and applying the impact of Section 6.01 of the 1161 Shoreview operating agreement alongside Delaware law and a manifest error of fact in concluding that Ryan Webster remained the manager of Shoreview Apartments. *See Austin*, 864 F.3d at 336; *In re SAL ATX LLC*, 660 B.R. at 813. The Oral Ruling must be altered and amended to find that Lee-Wen is the sole and exclusive manager of Debtor Shoreview Apartments due to the plain application of section

9

6.01 of the 1161 Shoreview operating agreement and Lee-Wen was authorized to act on Shoreview Apartments' behalf as member-manager of Debtor Shoreview Holding.

### C. The Oral Ruling Should have Applied the Delaware LLC Act in Construing the September 2024 Consent Resolutions.

21. The Oral Ruling legally erred in not considering the Delaware LLC Act when construing the language of the Debtors MDW Shoreview Mezz's and PLF Shoreview Mezz's September 2024 consent resolutions to determine whether Lee-Wen, as the undisputed manager of those entities, was authorized by their members to consent to bankruptcy filings on their behalf. *See Austin*, 864 F.3d at 336; *In re SAL ATX LLC*, 660 B.R. at 813.

22. The Oral Ruling correctly observed that the September 2024 consent resolutions appointing Lee-Wen as manager of Debtors MDW Shoreview Mezz and PLF Shoreview Mezz contained "some broad language" authorizing him to take actions their members' behalf.  June 12, 2026, Hr'g Tr. 40:24-41:9.  The September 2024 consent resolutions, signed by all members of Debtors MDW Shoreview Mezz and PLF Shoreview Mezz, broadly authorized and *directed* Lee-Wen to execute "all documents" and take all actions necessary to carry out the purpose of the resolutions, which were to continue carrying out those Debtors' primary purposes of operating and managing the Property and providing for the "recapitalization or refinance of the [their] indebtedness," and "a restructured distribution waterfall to entice new capital investment in the[m]" along with restructuring the overall organizational structure for ownership of the Property. *See* Pearlmark Exs. 10 and 11.  The September 2024 consent resolutions also *ratified* Lee-Wen's actions and execution of "all documents" in continuing those Debtors' primary purposes and implementing the recapitalization, refinancing, and restructuring. *See id.*

23. Despite acknowledging the breadth of the 2024 consent resolutions, June 12, 2026, Hr'g Tr. 40:24-41:9, the Oral Ruling nonetheless cited authorities outside of the Fifth Circuit and

10

the Third Circuit for the proposition that "[i]t's well settled that a bankruptcy filing is, . . . 'a specific act requiring specific authorization.'" *Id.* at 35:12-17 (citing *In re N2N Comm's Inc.*, 405 B.R. 34 (Bankr. Mass. 2009); *In re Arkco Props., Inc.*, 207 B.R. 624 (Bankr. E.D. Ark. 1997); *In re 3P Hightstown, LLC*, 631 B.R. 205 (Bankr. D.N.J. 2021)). The Oral Ruling disagreed that the breadth of the September 2024 consent resolutions provided the specificity to consent to bankruptcy relief. *Id.* at 41:12-17.

24. The Oral Ruling stated it looked to Delaware law to determine the issue of authority to file bankruptcy. June 12, 2026, Hr'g Tr. 35:17-20. The Oral Ruling did not, however, reference or consider the Delaware LLC Act in its analysis. *See generally* June 12, 2026, Hr'g Tr. 27:11-42:23. The Oral Ruling must therefore be altered and amended to take the Delaware LLC Act into account, which demonstrates that the September 2024 consent resolutions must be applied as written—authorizing, directing, and ratifying Lee-Wen's actions and execution of "all documents" he deemed necessary to carry out the intents and purposes of the resolutions to continue the Debtors' primary purposes of operating the Property and implementing the recapitalizing, refinancing, and restructuring necessary to continue to do the same. *See* Pearlmark Exs. 10 and 11.

25. The Delaware LLC Act requires enforcement of the consent resolutions as written. "The Delaware LLC Act is grounded on principles of freedom of contract." *Haley v. Talcott*, 864 A.2d 86, 96 (Del. Ch. 2004). Under Delaware law, when construing a contract or written instrument like the consent resolutions "[c]lear and unambiguous language . . . should be given its ordinary and usual meaning." *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006) ((quoting *Rhone–Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195–96 (Del.1992)). "The true test is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *Id.* (citation

11

330875033v2

omitted). "While [Delaware courts] have recognized that contracts should be 'read in full and situated in the commercial context between the parties,' the background facts cannot be used to alter the language chosen by the parties within the four corners of their agreement." *Town of Cheswold v. Cent. Del. Bus. Park*, 188 A.3d 810, 820 (Del. 2018) (quoting *Chi. Bridge & Iron Co. N.V. v. Westinghouse Elec. Co. LLC*, 166 A.3d 912, 926-27 (Del. 2017)).

26.     While section 9.03(d)(iii) of the PLF Shoreview Mezz and MDW Shoreview Mezz operating agreements required the members' consent to file bankruptcy, Pearlmark Exs. 3 at p. 4, § 9(d)(iii); 5 at p. 4, § 9(d)(iii), the Oral Ruling did not consider the interplay between the Delaware LLC Act and the broad consents to a "restructuring" that the members provided in the September 2024 consent resolutions. Section 18-302(d) of the Delaware LLC Act provides, in relevant part, "[u]nless otherwise provided in a limited liability company agreement, if a person (whether or not then a member) consenting as a member to any matter provides *that such consent will be effective at a future time* (including a time determined upon the happening of an event), *then such person shall be deemed to have consented as a member at such future time* so long as such person is then a member." 6 DEL. CODE § 18-302(d) (emphasis added).

27.     This part of Section 18-302(d) squarely applies to the September 2024 consent resolutions because they contemplated a future recapitalization and refinancing and mandated that in connection therewith "the organizational structure and ownership of the Property *shall be restructured* in substantially the manner as shown on the organizational chart attached [to the consent resolutions]." Pearlmark Exs. 10 at p. 1; 11 at p. 1 (emphasis added). Further, consistent with binding nature of the forward-looking consent adopted in Section 18-302(d) of the Delaware LLC Act, the September 2024 consent resolutions all resolved that "any and all actions *to be taken*, caused to be taken or heretofore taken by Manager *in executing any and all documents*, . . . and

12

instruments and ***in taking any and all steps*** (including the payment of all expenses) ***deemed by him*** to be necessary or desirable ***to carry out the intents and purposes of the foregoing resolutions are authorized, ratified, adopted and confirmed***." Pearlmark Exs. 10 at p. 2; 11 at p. 2 (emphasis added). The September 2024 consent resolutions were forward looking, making the members' consent to future matters binding pursuant to 6 DEL. CODE § 18-302(d).

28. The September 2024 consent resolutions unmistakably included the PLF Shoreview Mezz and MDW Shoreview Mezz members' consent to a restructuring (along with a recapitalization and refinancing) to occur in the future, and "authorized, ratified, adopted, and confirmed" Lee-Wen's execution of "any and all documents . . . and instruments" and him taking "any and all steps" he deemed necessary to achieve those results. Pearlmark Exs. 10 at pp. 1-2; 11 at pp. 1-2. Not only must those consent resolutions be interpreted and applied as they are written, *Lorillard Tobacco Co.*, 903 A.2d at 739, but under Section 18-302(d) of the Delaware LLC Act those consents are deemed to be effective in the future upon the happening of a future event—Lee-Wen's execution of the "documents and instruments" in the form of the chapter 11 bankruptcy petitions necessary to implement the restructuring, *see* 6 DEL. CODE § 18-302(d). The Oral Ruling should be reconsidered, altered, and amended to reflect that the members of MDW Shoreview Mezz and PLF Shoreview Mezz consented to the "restructuring" and authorized Lee-Wen to execute all documents he deemed necessary to implement the same.

**D. The Oral Ruling Erred in its Interpretation of the Phrase "Material Action" in the Operating Agreements and in Construing the Broad Language of the September 2024 Consent Resolutions.**

29. Finally, to the extent that the Oral Ruling's finding that approval to file a bankruptcy petition must be "specific," and that the September 2024 consent resolutions' consent to a "restructuring" was not specific-enough, *e.g.*, June 12, 2026, Hr'g Tr. 41:12-17, the Oral Ruling erred in drawing such a bright-line rule against the plain language of the Mezz Borrowers'

330875033v2

operating agreements.  Section 9.03(d)(iii) of the operating agreements does not require member consent specifically for filing "bankruptcy petitions under Title 11 of the United States Code" or contain any other highly-specific language of that nature.  *See* Pearlmark Exs. 3 at p. 4, § 9(d)(iii); 5 at p. 4, § 9(d)(iii); 7 at p. 4, § 9(d)(iii).  Instead, member consent was required for the taking of any "***Material Action***."  *See id.* (emphasis added).

30.      The parties could have defined "Material Action" as hyper-specific as the Oral Ruling suggests it should be read, but the plain language of the definition of "Material Action" is actually, like the language in the September 2024 consent resolutions, much broader.  *See* Pearlmark Exs. 3 at pp. 14-15; 5 at pp. 14-15; 7 at pp. 14-15 (defining "Material Action").  To be sure, the word "bankruptcy" is mentioned among the many subparts of the definition for "Material Action," but so are phrases like "to file any insolvency or reorganization case or proceeding," "to seek any relief under any law relating to relief from debts or the protection of debtors," and "or to take action in furtherance of any of the foregoing."  *Id.*

31.      The "restructuring" that the September 2024 consent resolutions authorized, especially within the context of recapitalization and refinancing they contemplated, falls within the broad phrasing used in the definition of "Material Action" requiring member consent in the Mezz Borrowers' operating agreements.  A plain meaning of the word "restructuring" is "[t]he practice or an instance of changing the way in which a . . . business entity, or system is organized."  *Restructuring*, BLACK'S LAW DICTIONARY (12th ed. 2024). In other words, a "restructuring" is a "reorganization" of a business entity.  *See id.* The similarity between the two terms cannot be parsed.  For instance, Black's Law Dictionary defines "reorganization" in the bankruptcy context to mean "[a] financial ***restructuring*** of a corporation, esp. in the repayment of debts, under a plan created by a trustee and approved by a court." *Reorganization*, BLACK'S LAW DICTIONARY (12th

14

330875033v2

ed. 2024) (emphasis added).

32. Here, the bankruptcy petitions were filed under chapter 11 of the Bankruptcy Code to restructure and reorganize the Debtors while implementing the recapitalization and refinancing contemplated in the September 2024 consent resolutions. In drawing a seemingly bright-line rule between consent to "bankruptcy" and consent to "restructuring," the Oral Ruling did not attempt to harmonize the broad definition of "Material Action" together with the broad consents and authorizations given in the 2024 consent resolutions to restructure the Debtors in connection with the recapitalization and refinancing.

33. While some cases have held that authorization to file bankruptcy needs to be specific, the source of that authority must still be state law. Here, because Delaware law requires the Mezz Borrowers' consent resolutions and operating agreements *to be applied as written*, *Lorillard Tobacco Co.*, 903 A.2d at 739, and the Oral Ruling erred in not taking into account how a "restructuring" accomplished through a chapter 11 plan of reorganization fit within the definition of "Material Action," the Oral Ruling must be reconsidered for this reason as well.

## III.   CONCLUSION

WHEREFORE, Troutman requests that Court grant this Motion, alter and amend the Oral Ruling as requested herein to find that (i) Lee-Wen was the manager of Debtor Shoreview Apartments (which effectively made him manager of Debtor Shoreview Holdings and (ii) the consents of the Mezz Borrowers' members in the September 2024 consent resolutions met the standard for "Material Action" in their operating agreements to consent to the bankruptcy petitions, or in the alternative that the Court vacate the Oral Ruling altogether pending issuance of its decision on the waiver, forfeiture, acquiescence, and ratification issues, and that the Court schedule a hearing to decide the Fee Application on a final basis, enter an order granting Troutman's requested fees and expenses in their entirety without preserving future claims for any party, and

15

330875033v2

order that the Carve-Out be paid to Troutman immediately upon entry, and granting such further

and other relief as the Court deems appropriate.

Dated: June 26, 2026.                    **TROUTMAN PEPPER LOCKE LLP**

                                         */s/ Stephen Humeniuk*
                                         Daniel Durell (Tex. Bar No. 24078450)
                                         Stephen J. Humeniuk (Tex. Bar No. 24087770)
                                         300 Colorado St., Suite 2100
                                         Austin, TX 78701
                                         T: (512) 305-4700
                                         F: (512) 305-4800
                                         daniel.durell@troutman.com
                                         stephen.humeniuk@troutman.com

                                         Michael A. Sabino (admitted *pro hac vice*)
                                         875 Third Avenue
                                         New York, NY 10022
                                         T: (212) 704-6000
                                         F: (212) 704-6288
                                         Email: michael.sabino@troutman.com

                                         *Attorneys for Debtors*
                                         *and Debtors in Possession*

330875033v2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on June 26, 2026, a true and correct copy of the foregoing document was filed with the Court and served electronically upon those parties registered to receive electronic notice via the Court's CM/ECF system, including the parties identified below.

**<u>Debtors</u>**
Shoreview Holding, LLC
PLF Shoreview, LLC
MDW Shoreview, LLC
Shoreview Apartments, LLC
PLF Shoreview Mezz, LLC
MDW Shoreview Mezz, LLC
9050 N. Capital of Texas Hwy.
Bldg. 3, Suite 320
Austin, TX 78759

**<u>U.S. Trustee</u>**
Attn: Shane Tobin
903 San Jacinto Blvd., Room 230
Austin, TX 78701
Shane.P.Tobin@usdoj.gov

**<u>Senior Secured Lender</u>**
PFP VII SUB VIII, LLC
c/o Arnold & Porter LLP
Attn: Benjamin Mintz and Justin Imperato
250 West 55th Street
New York, NY 10019
Benjamin.Mintz@arnoldporter.com
Justin.Imperato@arnoldporter.com

**<u>Warren Dresner, Ryan Webster,
Colin Kilgore, and Justin Hobson</u>**
Bradley J. Purcell
Reed Smith LLP
2850 N. Harwood Street, Suite 1500
Dallas, Texas 75201
bpurcell@reedsmith.com

Anthony J. Napolitano
Thomas P. Yardley, Jr.
Buchalter LLP
anapolitano@buchalter.com
tyardley@buchalter.com

**<u>Mezzanine Lender</u>**
PMRP V Holdings, L.L.C.
c/o Haynes & Boone LLP
Attn: Stephen Pezanosky and Jordan Chavez
2801 N. Harwood Street, Suite 2300
Dallas, TX 75201
stephen.pezanosky@haynesboone.com
jordan.chavez@haynesboone.com

**<u>Laura and Paul Feikema; Meisha Wilson</u>**
Elena Paras Ketchum
Harley E. Riedel
Stichter Riedel Blain & Postler
110 E. Madison Street, Suite 200
Tampa, FL 33602-4700
eketchum@srbp.com
hriedel@srbp.com

Jameson Joseph Watts
Husch Blackwell LLP
111 Congress Ave., Suite 1400
Austin, TX 78701
Jameson.watts@huschblacwell.com

**<u>Casoro Group</u>**
Jennifer F. Wertz
Jackson Walker LLP
100 Congress, Suite 1100
Austin, Texas 78701
jwertz@jw.com

J. Machir Stull
Jackson Walker LLP
2323 Ross Avenue, Suite 600
Dallas, TX 75201
mstull@jw.com

*/s/ Stephen J. Humeniuk*
Stephen J. Humeniuk

330875033v2