**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| SHOREVIEW HOLDING, LLC et al.,[1] | ) | Case No. 25-10566 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**TROUTMAN PEPPER LOCKE LLP'S REPLY IN SUPPORT OF MOTION FOR**
**RECONSIDERATION OF JUNE 12, 2026 ORAL RULING**

Troutman Pepper Locke LLP ("Troutman"), counsel to the debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), files this reply (this "Reply") in support of its *Motion for Reconsideration of June 12, 2026 Oral Ruling* [Dkt No. 326] (the "Motion"),[2] and in response to the oppositions filed by (i) the Webster Parties [Dkt. Nos. 327 and 329] (the "Webster Parties' Objections"),[3] and (ii) the Feikema/Wilson Parties [Dkt. No. 330] (the "Feikema/Wilson Objection," and together with the Webster Parties Objections, the "Objections"), and respectfully states the following:

## I. INTRODUCTION

1. The Objections justify and support the Court granting the Motion and reconsidering its Oral Ruling to find that Monte Lee-Wen ("Lee-Wen"), and not Ryan Webster, was the manager

---

[1] The Debtors in these jointly administered chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: Shoreview Holding LLC (8428), PLF Shoreview LLC (7602), MDW Shoreview LLC (8649), Shoreview Apartments LLC (8428), PLF Shoreview Mezz LLC (1270), and MDW Shoreview Mezz LLC (3408). The Debtors' notice address is 9050 N. Capital of Texas Hwy., Bldg. 3 Suite 320, Austin, Texas 78759.

[2] Capitalized terms used but not defined in this Reply are intended to have the meanings ascribed to them in the Motion.

[3] The Webster Parties filed a cross-motion for reconsideration and request for hearing on the Motion at Dkt. No. 327 (the "Cross-Motion") that contained language objecting to the Motion in paragraphs 1-5. Troutman responds to the arguments and objections in paragraphs 1-5 of the Cross-Motion here in this reply. Troutman objected to the remainder of the Cross-Motion at Dkt. No. 332 (the "Cross-Motion Objection"), which Troutman incorporates by reference as if set forth fully in this Reply.

1

331613957v2

of Debtor Shoreview Apartments when the bankruptcy cases were filed by operation of Section 6.01 of the 1161 Shoreview LLC operating agreement.  None of the Objections attempt to refute that Section 6.01 of the 1161 Shoreview LLC ("1161 Shoreview") operating agreement made Monte Lee-Wen ("Lee-Wen") the "sole and exclusive" manager of 1161 Shoreview and its "Subsidiaries," Debtors Shoreview Apartments LLC and Shoreview Holdings LLC (together, the "Debtor-Subsidiaries").  With all parties recognizing that the Oral Ruling omitted consideration of the important Section 6.01 of the 1161 Shoreview operating agreement, the Motion should certainly be granted for this reason alone, and the Oral Ruling amended and modified accordingly.

2.      The remainder of the Objections focus on ancillary issues, arguing past the Motion instead of against it.  Critically, none of the Objections rebut Troutman's position that Bankruptcy Rule 7054 (incorporating Federal Rule 54) governs the Motion instead of Bankruptcy Rule 7059 (incorporating Federal Rule 59).  Moreover, the Webster Parties' Objections center on a completely separate challenge to the Oral Ruling—the finding Lee-Wen became manager of 1161 Shoreview after exercising his step-in rights under the 1161 Shoreview operating agreement.  Because the Oral Ruling's finding on step-in rights was correct, the Motion did not need to discuss that finding or Sections 6.07 or 6.15(l) of the 1161 Shoreview operating agreement.

3.      The bulk of the Objections focus on parol evidence matters, which miss the point of the Motion entirely.  The premise of the Motion is that the underlying operating agreements and consent resolutions must be given their plain and ordinary meanings and read together in their entirety in accordance with Delaware law.  Under Delaware law, when construing an unambiguous legal document, evidence of the parties' intent must come entirely from the words contained within the document and parol evidence has no import. *See Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006).  Prior to the Objections being filed, parties have not suggested that

331613957v2

any of the operating agreements or consent resolutions at issue are vague or ambiguous to justify consideration of parol evidence. With their new reliance on parol evidence, the Objections invite an entirely new basis for reconsidering the Oral Ruling to first make an ambiguity finding. The Court should not condone the Objecting Parties advocating ambiguity alongside urging the Court to consider sanctions against Troutman based on its purely legal interpretation and construction of the same operating agreements and consent resolutions under Delaware law.

4.       It is worth highlighting that this proceeding has blossomed far beyond the only remaining item pending in these now dismissed bankruptcy cases—Troutman's Fee Application— and how the "prospective" standard set forth in *In re Cmty. Home Fin. Servs., Inc.*, 990 F.3d 422, 427 (5th Cir. 2021) and *Barron & Newburger, P.C. v. Tex. Skyline, Ltd. (In re Woerner)*, 783 F.3d 266, 273-74 (5th Cir. 2015) applies to it. The Oral Ruling does not mention these cases, the prospective standard, of even section 330 of the Bankruptcy Code. The Oral Ruling did not resolve the Fee Application or grant or deny any of the pending objections to the Fee Application. Moreover, the Oral Ruling may become moot if the Court finds that the Objecting Parties acquiesced to or ratified the bankruptcy filings or otherwise waived or forfeited their authority-based arguments. Because the Oral Ruling did not resolve any open issues on a final basis, and only addressed the retroactive, hindsight-facing merits of the corporate authority issue (that is entirely separate than the prospective *Woerner* standard applicable to the Fee Application), Rule 54 plainly applies to the Oral Ruling and it may be reconsidered for any reason whatsoever. *See Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017).

5.       The Oral Ruling should therefore be reconsidered, modified, and amended to consider and address the overlooked Section 6.01 of the 1161 Shoreview operating agreement (which is outcome determinative as to the identify of the manager for Debtor Shoreview

331613957v2

Apartments LLC), and apply applicable Delaware law, including the Delaware LLC Act and Delaware principles of contract interpretation in construing how the September 2024 consent resolutions interact with the respective operating agreements. And because this task involves legal interpretation about questions of law (and Troutman's interpretation of the law as applied to these written instruments was both reasonable and correct), the Court should no longer consider the Objecting Parties' invitation for the Court to *sua sponte* consider sanctions proceedings.

## II.  ARGUMENT AND AUTHORITIES

### A.  The Court should apply Bankruptcy Rule 7054 (and Federal Rule 54(b)) as the applicable standard to the Motion.

6. Critically, none of the Objections attempt to argue or distinguish why Rule 54(b) should not be applied to the Motion. The Oral Ruling is an interlocutory decision because it did not finally adjudicate the Fee Application or any of its objections. The Oral Ruling itself recognized as much: "This is the Court's oral ruling on a ***preliminary issue*** related to the final fee application of Troutman Pepper Locke." *See* June 12, 2026, Hr'g Tr. 29:2-4 (emphasis added).

7. Instead, the Objecting Parties attempt to invoke Bankruptcy Rule 7059 to gain further advantage on an already unlevel playing field. They ignore that ***Troutman was not a party*** to the motion to dismiss proceedings where the authorization issue was initially litigated. Of course, Troutman was present in the capacity of Debtors' counsel during the motion to dismiss proceedings, but as the Court is undoubtedly familiar, Pearlmark, who now manages Debtors Shoreview Holding LLC, MDW Shoreview LLC, and PLF Shoreview LLC (collectively, the "Mortgage Debtors") after the U.C.C. sale, chose for Pearlmark's own counsel to have primary responsibility in the motion to dismiss litigation.

8. Troutman's minimal participation in the motion to dismiss proceedings is buttressed not only be the hearing transcripts, but also by the Court's docket. It is axiomatic that,

4

as Debtors' counsel, Troutman could only act in a representative capacity for the Debtors as instructed. Troutman, on behalf of the Mortgage Debtors, filed a limited joinder to Pearlmark's motion to dismiss pleadings. *See* Dkt. No. 226. Troutman did not file any such joinder on behalf of the Mezzanine Debtors. Troutman filed motions to dismiss the Mezzanine Debtors' cases for cause. *E.g.*, Dkt. No. 237. At no point in the motion to dismiss proceedings did Troutman prepare or file substantive briefing of its own, on behalf of itself or the Debtors. The Objecting Parties are seeking to invoke Bankruptcy Rule 7059 as a sword to take advantage of Troutman's limited, non-party participation in the motion to dismiss proceedings.

9.      The Objecting Parties fail to demonstrate how Bankruptcy Rule 7059 could be extended to a non-party, particularly when the corporate authority issue was not even resolved in connection with the motion to dismiss proceedings, and the Oral Ruling at issue was "preliminary" and did not finally resolve any of the few remaining claims and controversies at issue in these bankruptcy cases. Under the circumstances, with further rulings relating to the Fee Application forthcoming both on the merits and concerning the waiver, forfeiture, acquiescence, and ratification issues,[4] Troutman reiterates that Rule 54(b) is the standard governing the Motion.

**B.      The Objections recognize the Oral Ruling erred in not considering Section 6.01 of the 1161 Shoreview operating agreement.**

10.     The Objections also make no effort to defend the Oral Ruling's omission of Section 6.01 of the 1161 Shoreview operating agreement from the analysis. Nor do the objections attempt to defend the Oral Ruling's finding that Ryan Webster remained the manager of Debtor Shoreview Apartments LLC after Lee-Wen became the ***undisputed*** manager of 1161 Shoreview.

---

[4] Troutman also respectfully requests that the Court consider vacating the Oral Ruling altogether, both for the reasons requested in the Motion and also to the extent to Court's forthcoming ruling on waiver, forfeiture, acquiescence, and ratification moot any issues pertaining to corporate authority to commence these chapter 11 cases.

331613957v2

11. Instead, the Webster Parties offer great criticism at the Oral Ruling disputing *how* Lee-Wen became the undisputed manager of 1161 Shoreview. Troutman addresses that point in its Cross-Motion Objection. *See generally* Dkt. No. 332. Because Troutman agrees with the Court's finding that Lee-Wen became the undisputed manager of 1161 Shoreview by virtue of exercising his step-in rights—there is no other way that the September 2024 consent resolution for 1161 Shoreview could make Lee-Wen an unremovable manager, consistent with Section 6.07 of the 1161 Shoreview operating agreement—the Motion did not need to discuss Section 6.15(l) of the 1161 Shoreview operating agreement. The focus in the Webster Parties' Objections on Section 6.15(l) confuses their burden in connection with their own Cross-Motion.

12. Because no party controverts the Motion's point that the Oral Ruling erred in (i) not considering the impact of Section 6.01 of the 1161 Shoreview operating agreement, and (ii) finding that Ryan Webster could still be the manager of Debtor Shoreview Apartments after Lee-Wen became the undisputed manager of 1161 Shoreview and the "sole and exclusive" manager of the "Subsidiaries" the Oral Ruling must be reconsidered, modified, and amended for this reason.

**C.      The Objections impermissibly rely on parol evidence.**

13. The Motion sought reconsideration, in part, based upon the Oral Ruling's lack of consideration for the Delaware LLC Act and key Delaware legal principles of construing the plain language of legal instruments. In other words, the Motion was premised on issues relating to issues of legal interpretation and construction.

14. In response, rather than defend the mechanics of the Oral Ruling's legal construction or the authorities it relies upon, the Objections point to parol evidence reasons why the Oral Ruling supports their preferred outcome. The Webster Parties rely on parol evidence in the form of testimony about what was intended when the parties executed the September 2024

6

consent resolutions, the terms of the subsequent chapter 11 plan, [5] and a plethora of other documents and correspondence in connection with their challenge to the finding that Lee-Wen became manager of 1161 Shoreview due to his step-in rights. *See* Dkt. No. 329 at ¶¶ 10, 12-14. The Feikema/Wilson Parties' reliance on parol evidence is somehow more extensive—relying on facts about the outcome of the bankruptcy cases, how many lawyers the Feikema/Wilson Parties have retain to litigate the Illinois lawsuit, "all surrounding facts," "the factual backdrop that the Debtors came into existence," and never-before-seen, and unvalidated, calculation of what the internal rate of return may have been expected to be. *See* Dkt. No. 330 at ¶¶ 3, 6.C, 14, 16.

15. None of the Objections directly contend that the September 2024 consent resolutions are ambiguous, but the use of parol evidence would only come into play in the event that the Court found ambiguity. "Delaware courts start with the text. And if the text is unambiguous, Delaware courts end there too." *Gunderson v. Trade Desk, Inc.*, 326 A.3d 1264, 1280 (Del. Ch. 2024). "When applying contract interpretation principles, 'Delaware courts read the agreement as a whole and enforce the plain meaning of clear and unambiguous language.'" *Id.* (quoting *Manti Hldgs., LLC v. Authentix Acq. Co., Inc.*, 261 A.3d 1199, 1208 (Del. 2021)). "Individual words must be read together with accompanying language, as well as the other [Delaware corporate law statutory] sections addressing the same subject." *Id.* (internal quotations and citations omitted). "While [Delaware courts] have recognized that contracts should be 'read in full and situated in the commercial context between the parties,' the background facts cannot be used to alter the language chosen by the parties within the four corners of their agreement." *Town of Cheswold v. Cent. Del. Bus. Park*, 188 A.3d 810, 820 (Del. 2018) (quoting *Chi. Bridge & Iron*

---

[5] To the extent they take issue with the confirmed plan, the Webster Parties did not object to its confirmation, are bound by its terms, and their late-hour objections to it are barred. *E.g.*, *In Howe*, 913 F.2d 1138, 1147 (5th Cir. 1990) (holding confirmed chapter 11 plan has res judicata effect).

331613957v2

*Co. N.V. v. Westinghouse Elec. Co. LLC*, 166 A.3d 912, 926-27 (Del. 2017)).

16.     "The parol evidence rule bars the admission of evidence extrinsic to an unambiguous, integrated written contract for the purpose of varying or contradicting the terms of that contract." *Exit Strategy, LLC v. Festival Retail Fund BH, L.P.*, 326 A.3d 356, 364 (Del. 2024) (citation omitted). "[C]ontract terms are ambiguous only when they 'are fairly susceptible of different interpretations or may have two or more different meanings.'" *Id.* (quoting *GMG Capital Investments, LLC v. Athenian Venture Partners, I, L.P.*, 36 A.3d 776, 780 (Del. 2012)).

17.     By invoking parol evidence to support their latest positions, the Objecting Parties necessarily concede that the relevant consent resolutions and operating agreements, when read together, "are fairly susceptible of different interpretations or may have two or more different meanings." *Id.* This acknowledgement that the consent resolutions and operating agreements are susceptible to the interpretation advanced by Pearlmark (and now Troutman), and the resort to parol evidence to persuade the Court to adopt their own preferred interpretation, should permanently foreclosure any further discussion about Rule 9011 proceedings in this case. *See F.D.I.C. v. Calhoun*, 34 F.3d 1291, 1298 (5th Cir. 1994) (reversing trial court's sanctions against lawyers whose legal arguments were found "not to be implausible, unreasonable, or otherwise frivolous"); *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 989 F.2d 791, 794 (5th Cir. 1993) (holding "[A] trial court should not impose Rule 11 sanctions for advocacy of a plausible legal theory.").

**D.      The Oral Ruling must be reconsidered, modified, and amended to apply to correct legal interpretation framework under the Delaware LLC Act and Delaware law.**

18.     The Motion must be granted and the Oral Ruling reconsidered, modified, and amended to apply the Delaware LLC Act and other applicable Delaware law.  In Delaware, "the rules which are used to interpret statutes, contracts, and other written instruments are applicable when construing corporate charters and bylaws," such as the operating agreements and consent

331613957v2

resolutions at issue here. *Hibbert v. Hollywood Park, Inc.*, 457 A.2d 339, 342–43 (Del. 1983). When construing written Delaware limited liability company governance documents, "[i]ndividual words must be read together with accompanying language, as well as the other [Delaware corporate law statutory] sections addressing the same subject." *Gunderson*, 326 A.3d at 1280 (citation omitted).

19.     The Oral Ruling created a federal common law bright-line rule that any consent to file chapter 11 bankruptcy must be specific and the consents at issue here were not specific enough, June 12, 2026, Hr'g Tr. 41:12-17, notwithstanding recognition that "State law determines who has the authority to file a voluntary petition on behalf of an entity," *id.* at 35:9-11 (citing *In re Franchise Servs. of N. Am., Inc.*, 891 F.3rd 198 (5th Cir. 2018)).  The error of the creation of this federal common law bright-line rule is that it has no support in the Delaware LLC Act and is in tension with the breadth of the language in the underlying operating agreements that broadly define "Material Action" to fit a wide variety of circumstances and proceedings.  Essentially, the Oral Ruling found that consent to a "Material Action" must be specific without considering the breadth of the definition for "Material Action."

20.     Furthermore, the Oral Ruling should have taken 6 DEL. CODE § 18-302(d) into account in its analysis and how that statute applied to the broad consents, approvals, and grants of authorities in the September 2024 consent resolutions.  The Objections endeavor to distinguish away 6 DEL. CODE § 18-302(d) by contending that it only applies to consent to future conduct and "[t]he September 2024 resolutions do not designate any consent as effective at a future time."  Dkt. No. 329 at ¶ 18; *see also* Dkt. No. 330 at ¶ 20 ("Troutman is attempting to write into the Resolutions wording and concepts ('future'), which is simply not there.").

21.     Again, the plain language in the consent resolutions conclusively establishes the

9

331613957v2

opposite of these assertions. Those consent resolutions expressly authorize, ratify, adopt and confirm "any and all actions *to be taken*, *caused to be taken*. . . ." Pearlmark Exs. 10 at p. 2; 11 at p. 2 (emphasis added). Actions "to be taken" can only necessarily include actions to be taken in the future, which falls squarely within the ambit of forward-looking consents that 6 DEL. CODE § 18-302(d) requires to be enforced. And what future actions that the consent resolutions expressly authorize, ratify, adopt and confirm are "*executing any and all documents*, . . . and instruments and *in taking any and all steps* (including the payment of all expenses) *deemed by him* to be necessary or desirable *to carry out the intents and purposes of the foregoing resolutions*. . . ." Pearlmark Exs. 10 at p. 2; 11 at p. 2 (emphasis added).

22.     Here, because Delaware law requires the Mezz Borrowers' consent resolutions and operating agreements *to be applied as written*, *Lorillard Tobacco Co.*, 903 A.2d at 739, and the Oral Ruling did not take into account how a "restructuring" accomplished through a chapter 11 plan of reorganization fit within the definition of "Material Action," or how the broad future-facing consents in the resolutions were permissible and enforceable under 6 DEL. CODE § 18-302(d), the Oral Ruling must be reconsidered for these reason as well.

### III.     CONCLUSION

WHEREFORE, Troutman requests that Court grant this Motion, deny and overrule all of the Objections and the Cross-Motion, alter and amend the Oral Ruling as requested in the Motion, or in the alternative that the Court vacate the Oral Ruling altogether pending issuance of its decision on the waiver, forfeiture, acquiescence, and ratification issues, and that the Court schedule a hearing to decide the Fee Application on a final basis, enter an order granting Troutman's requested fees and expenses in their entirety without preserving future claims for any party, and order that the Carve-Out be paid to Troutman immediately upon entry, and granting such further and other relief as the Court deems appropriate.

10

331613957v2

Dated: July 17, 2026.

**TROUTMAN PEPPER LOCKE LLP**

*/s/ Stephen Humeniuk*
Daniel Durell (Tex. Bar No. 24078450)
Stephen J. Humeniuk (Tex. Bar No. 24087770)
300 Colorado St., Suite 2100
Austin, TX 78701
T: (512) 305-4700
F: (512) 305-4800
daniel.durell@troutman.com
stephen.humeniuk@troutman.com

Michael A. Sabino (admitted *pro hac vice*)
875 Third Avenue
New York, NY 10022
T: (212) 704-6000
F: (212) 704-6288
Email: michael.sabino@troutman.com

*Attorneys for Debtors*
*and Debtors in Possession*

331613957v2

## CERTIFICATE OF SERVICE

I hereby certify on July 17, 2026, a true and correct copy of the foregoing document was filed with the Court and served electronically upon those parties registered to receive electronic notice via the Court's CM/ECF system, including the parties identified below.

**Debtors**
Shoreview Holding, LLC
PLF Shoreview, LLC
MDW Shoreview, LLC
Shoreview Apartments, LLC
PLF Shoreview Mezz, LLC
MDW Shoreview Mezz, LLC
9050 N. Capital of Texas Hwy.
Bldg. 3, Suite 320
Austin, TX 78759

**U.S. Trustee**
Attn: Shane Tobin
903 San Jacinto Blvd., Room 230
Austin, TX 78701
Shane.P.Tobin@usdoj.gov

**Senior Secured Lender**
PFP VII SUB VIII, LLC
c/o Arnold & Porter LLP
Attn: Benjamin Mintz and Justin Imperato
250 West 55th Street
New York, NY 10019
Benjamin.Mintz@arnoldporter.com
Justin.Imperato@arnoldporter.com

**Warren Dresner, Ryan Webster, Colin Kilgore, and Justin Hobson**
Bradley J. Purcell
Reed Smith LLP
2850 N. Harwood Street, Suite 1500
Dallas, Texas 75201
bpurcell@reedsmith.com

Anthony J. Napolitano
Thomas P. Yardley, Jr.
Buchalter LLP
anapolitano@buchalter.com
tyardley@buchalter.com

**Mezzanine Lender**
PMRP V Holdings, L.L.C.
c/o Haynes & Boone LLP
Attn: Stephen Pezanosky and Jordan Chavez
2801 N. Harwood Street, Suite 2300
Dallas, TX 75201
stephen.pezanosky@haynesboone.com
jordan.chavez@haynesboone.com

**Laura and Paul Feikema; Meisha Wilson**
Elena Paras Ketchum
Harley E. Riedel
Stichter Riedel Blain & Postler
110 E. Madison Street, Suite 200
Tampa, FL 33602-4700
eketchum@srbp.com
hriedel@srbp.com

Jameson Joseph Watts
Husch Blackwell LLP
111 Congress Ave., Suite 1400
Austin, TX 78701
Jameson.watts@huschblacwell.com

**Casoro Group**
Jennifer F. Wertz
Jackson Walker LLP
100 Congress, Suite 1100
Austin, Texas 78701
jwertz@jw.com

J. Machir Stull
Jackson Walker LLP
2323 Ross Avenue, Suite 600
Dallas, TX 75201
mstull@jw.com

*/s/ Stephen J. Humeniuk*
Stephen J. Humeniuk

12

331613957v2